**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**FILED**

2005 JUN 27  A 10: 03

U.S. DISTRICT COURT
BRIDGEPORT, CONN

)
NATIONAL COUNCIL ON )
COMPENSATION INS. INC. )
 )
v. )          3:00 CV 1925 (AHN)
 )
CARO & GRAIFMAN, PC )
JOSEPH GALL )
_____)          JUNE 24, 2005

### OPPOSITION TO MOTION TO REOPEN DISMISSAL

Defendants, Caro & Graifman, PC ("C&G"), by and through its undersigned

counsel Caro & Associates, PC, hereby submits its Opposition to the National Council on

Compensation Ins. Inc.'s ("NCCI") June 21, 2005 Motion to Reopen this case after

dismissal was entered by the clerk on June 8, 2005 pursuant to Rule 41(b).

    1.     Attached is a true and correct copy of a cover letter, cover e-mail and

proposed contract circulated to, among others, NCCI's New York counsel Robert Tils,

Esq., four days before the NCCI filed its Motion. The suggestion that C&G misled this

Court in the statement that "on or about July 15, 2004, a settlement was reached in the

*New York* action which, contrary to the prediction of Caro & Graifman, has not resulted

in the resolution of the present action," contained in paragraph 6 or the Motion to Reopen

Dismissal, is false. The July 15, 2004 settlement was a partial settlement. Another

partial settlement was so-Ordered by a New York Supreme Court Judge in October 2004.

Most importantly, pursuant to an agreement in principal reached over the last couple of

months in one of the two pending New York actions, there shall be a final settlement of

the S&J New York action within approximately 90 days, as reflected in the attachment.

1

That settlement shall create a fund of about $2.75 million available to C&G and the NCCI to split.

2.      New York and Florida counsel for the NCCI and I have discussed numerous times that once a sum certain has been created, it is appropriate to reach a settlement dividing same.  I was informed last week by New York counsel for the NCCI that he would seek settlement authority from his clients "next week".

3.      The statement that, "if the case is not reopened NCCI will not have had a full and fair opportunity to litigate the instant case" is also incorrect, on two grounds:

a)      There remain two pending actions in New York, to which the NCCI will have the opportunity, should it decide not to settle in the New York action after the execution of the contract.  The exact same claims at issue in the Connecticut action before this Court were not dismissed but stayed pending this Court's resolution four years ago, and could also be raised in the pending S&J action in New York.

b)      Additionally, any failure to reach a settlement is certainly not be result of the dismissal, as, *inter alia,* the NCCI took over two years to determine and advise the undersigned and the Court of its decision not to accept the resolution proposed by the Court appointed mediator, Judge Zambrano, which C&G had accepted on the spot.

For the foregoing reasons defendant C&G requests that the Motion to Reopen be denied.

> **DEFENDANT:**
> **CARO & GRAIFMAN, PC**
>
> By: _____
> Chase A. Caro (CT07881)
> Caro & Associates, PC
> 399 Knollwood Road, Suite 216
> White Plains, NY 10603
> Tel. No. (914) 422-3911

2

# CARO & ASSOCIATES, PC
## ATTORNEYS AT LAW

THE LINCOLN BUILDING
60 EAST 42ND STREET • SUITE 2001 • NEW YORK, NY 10165
TELEPHONE (212) 682-6000
•
399 KNOLLWOOD ROAD • SUITE 216 • WHITE PLAINS, NY 10603
TEL (914) 422-3911 • FAX (914) 422-3915

CHASE A. CARO (NY & GA)

LITIGATION PARTNERS
CYNTHIA A. FEIGIN (NY)
ELISE SCHWARZ (NY)

SASHA C. CONROY (NY)
EZRA SIEGEL (NY)
ALLEN KAPLUN (NY)
ANNE PENARCZYK (ADM. PENDING)

OF COUNSEL
ALAN M. FRIEDMAN (NY & NJ)
RONALD GUTWIRTH (NJ ONLY)

June 17, 2005

**Via Telecopier (954) 721-5508**
Tom McLaughlin, Esq.

Re:    **Trinity Apartments**

Dear Tom:

This will confirm that in your capacity as seller of 50% of the property and principal of the purchasing entity, you approved that, separate from any issue relating to the $800,000 mortgage that Caro & Graifman has on the property, you have approved payment as a closing cost to Caro & Associates, PC of $25,000.00 for Caro & Associates, PC's role in obtaining Mr. Gall's signatures and cooperation that has led to the agreement in principal to sell the property for $4.5 million to a new entity 90 days after the contract is signed. Thank you for your help in allowing us to avoid litigation on this issue.

This amount was also approved by NCCI's counsel and by S&J's counsel.

Very Truly Yours,

Chase A. Caro

CC:    **Mark Zaffrin, Esq. (Counsel for Purchaser)**
**Robert Tils, Esq. (Counsel for the NCCI)**
**Carolyn Naranjo, Esq. (Closing Attorney)**
**Fred McGowen, Esq. and Joel Wagman, Esq. (Attorneys for S&J Realty)**
**Ronald Gutwirth, Esq.**
**Mr. Joseph Gall (Seller)**

Subj:    **Fwd: S&J v McLaughlin (Trinity Contract of Sale)**
Date:    06/17/2005 4:02:46 PM Eastern Daylight Time
From:   NaranjoLaw@aol.com
To:     TVMCLaU@hotmail.com, chase@chasecaro.com, mzafrin@abramslaw.com, rtils@moritthock.com

Via Email

To:  Tom McLaughlin, Esq.
     Chase Caro, Esq./Alan Friedman, Esq..
     Mark Zafrin, Esq.
     Robert Tils, Esq.


Dear Gentlemen:

Transmitted herewith please find the redlined version with proposed changes I received from Fred McGowen, Esq.

I would appreciate if you each would review same and advise me in letter form your own comments and/or what of Mr. McGowen's changes are not agreeable.

Due to the number of parties involved, I request I have everyone's comments no later than June 23, 2005.

Thank you for your anticipated cooperation.

Very truly yours,

*Carolyn R. Naranjo*


Return-Path: <frmcgowen@goodwinprocter.com>
Received: from  rly-xj04.mx.aol.com (rly-xj04.mail.aol.com [172.20.116.41]) by air-xj03.mail.aol.com (v106.2) with ESMTP id MAILINXJ34-51742b08ad43e0; Wed, 15 Jun 2005 16:09:15 -0400
Received: from  goodwinprocter.com (mail.goodwinprocter.com [66.181.94.100]) by rly-xj04.mx.aol.com (v106.2) with ESMTP id MAILRELAYINXJ43-51742b08ad43e0; Wed, 15 Jun 2005 16:08:52 -0400
Received: from ([172.16.1.77])
   by bosmailgw01.goodwinprocter.com with ESMTP  id KP-BPZHY.9452909;
   Wed, 15 Jun 2005 16:08:35 -0400
Received: from nylmsg01.goodwinprocter.com ([172.17.1.50]) by
bosmsgcon01.goodwinprocter.com with Microsoft SMTPSVC(5.0.2195.6713);
   Wed, 15 Jun 2005 16:08:33 -0400
content-class: urn:content-classes:message
MIME-Version: 1.0
X-MimeOLE: Produced By Microsoft Exchange V6.0.6603.0
Subject: S&J v McLaughlin (Trinity Contract of Sale)
Date: Wed, 15 Jun 2005 16:08:33 -0400
Message-ID:
<2BF6EE210E9176448FFFAFC562A4441D58A8@nylmsg01.goodwinprocter.com>
X-MS-Has-Attach: yes
X-MS-TNEF-Correlator:
Thread-Topic: S&J v McLaughlin (Trinity Contract of Sale)
Thread-Index: AcVx5fnqZcgc9/WWRbei3PvgwvFCYg==

X-Message-Flag: Review
From: "McGowen, Frederick" <FRMcGowen@goodwinprocter.com>
To: <NaranjoLaw@aol.com>
Cc: "Wagman, Joel W" <JWagman@goodwinprocter.com>
X-OriginalArrivalTime: 15 Jun 2005 20:08:33.0829 (UTC) FILETIME=[01E77550:01C571E6]
Content-Type: multipart/mixed;
    boundary="---_=_NextPart_001_01C571E6.01A3601D"
X-AOL-IP: 66.181.94.100
X-Mailer: Unknown (No Version)


Dear Carolyn,

Thank you for forwarding the draft of the contract for my review. I have attached a redlined version with my proposed changes. Please let me know if I should forward my draft to the other parties for review or whether you will do so.

Thank you.

With regards,
Fred McGowen

**Frederick R. McGowen**
**Goodwin Procter LLP**
**599 Lexington Avenue**
**New York, NY 10022**
**212.459.7418**
**212.355.3333 (Fax)**
**fmcgowen@goodwinprocter.com**


<<4430150_1.doc>>

---

**************************************************************
*****
**This message is intended only for the designated recipient(s). It may
contain confidential or proprietary information and may be subject to
the
attorney-client privilege or other confidentiality protections. If you
are
not a designated recipient, you may not review, copy or distribute
this message. If you receive this in error, please notify the sender
by
reply e-mail and delete this message. Thank you.**
**************************************************************
*****

# CONTRACT OF SALE

**This contract form does not provide for what happens in the event of fire or casualty loss before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a purchaser responsible for fire and casualty loss upon taking of title to or possession of the premises.**

CONTRACT OF SALE made as of the ____ day of _____, 2005 BETWEEN

**THOMAS MCLAUGHLIN** with an address c/o Mark Zafrin, Esq., 1111 Marcus Avenue, Lake Success, New York 11042 **and JOSEPH GALL**, with an address c/o Caro & Associates, PC, 60 East 42nd Street, Suite 2001, New York, New York  10165

hereinafter called "SELLER" and/or "SELLERS", who agrees to sell;

and **TRINITY ACQUISITION I, LLC, with an address of**

hereinafter called "PURCHASER" who agrees to buy the property, with the building and improvements thereon erected (the "Premises" and/or "Property") more fully described on a separate page marked "**Schedule A**", and also known as

 Street Address:          2105 Daly Avenue, Bronx, New York

 Tax Map Designation:

1.      The purchase price is FOUR MILLION FIVE HUNDRED THOUSAND AND NO/100  DOLLARS ($4,500,000.00) payable as follows:

   (a) On the signing of this contract, by check subject to collection, TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00) ("deposit"); and

   (b) The sum of FOUR MILLION FOUR HUNDRED SEVENTY-FIVE THOUSAND AND NO/100 DOLLARS ($4,475,000.00) to be delivered to ~~Seller's~~ Escrow Agent upon delivery of the Deed as set forth herein ("closing").

2.      All money payable under this contract unless otherwise specified, shall be either:

   a.      Cash, but not over One Thousand Dollars ($1,000.00).

   b.      Good certified check of PURCHASER, or official check of any bank, savings bank, trust company, or savings and loan association having a banking office in the State of New York, payable to the order of Escrow Agent~~SELLER, or to the order of PURCHASER and duly endorsed by PURCHASER (if an individual) to the order of SELLER in the presence of SELLER or SELLER'S attorney~~.

   c.      Money other than the purchase price, payable ~~to~~for the benefit of SELLER at CLOSING, may be by check of PURCHASER up to the amount of One Thousand Dollars ($1,000.00) payable to the order of Escrow Agent.~~, or~~

      ~~d.As otherwise agreed to in writing by SELLER or SELLER'S attorney.~~

1

3.     The PREMISES are to be transferred subject to:

Laws and governmental regulations that affect the use and maintenance of the PREMISES, provided that they are not violated by the buildings and improvements erected on the PREMISES.

b.     Consents for the erection of any structures on, under or above any streets on which the PREMISES abut.

c.     Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway, of one (1) foot or less.

4.     SELLER shall give and PURCHASER shall accept such title as any reputable title company licensed, a member of The New York Board of Title Underwriters will be willing to approve and insure in accordance with their standard form of title policy; subject only to the matters provided for in this contract.

IF SELLER is a corporation, it will deliver to PURCHASER at the time of the execution of the Memorandum of Contract and CLOSING (a) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (b) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that section.

5.     This sale includes all of SELLER'S ownership and rights, if any, in any land lying in the bed of any street or highway, opened or proposed, in front of or adjoining the PREMISES to the center line thereof. It also includes any right of SELLER to any unpaid award by reason of any taking by condemnation and/or for any damage to the PREMISES by reason of change of grade of any street or highway. SELLER will deliver at no additional cost to PURCHASER, at CLOSING, or thereafter, on demand, any documents which PURCHASER may require to collect the award and damages.

6.     At CLOSING, ~~SELLER has the option to credit PURCHASER as an adjustment of the purchase price with~~ the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon shall be paid from the Escrow Account established by Justice George D. Salerno's So-Ordered Stipulation of Settlement dated July 15, 2004 or any amendment thereto, in the action captioned S&J Realty Corp. v. Thomas V. McLaughlin et al. and bearing Index Number 21438/99 (hereinafter referred to as the "Escrow Account". ~~to a date not less than five business days after CLOSING, provided that official bills therefor computed to said date are produced at CLOSING.~~

7.     If there is anything else affecting the sale which SELLER is obligated to pay and discharge at CLOSING, then at CLOSING, same shall be paid from the Escrow Account ~~SELLER may, but shall not be required, to use any portion of the balance of the purchase price to discharge it. As an alternative, SELLER shall deposit money with the title insurance company employed by PURCHASER required by it to assure its discharge, but only if the title insurance company will insure PURCHASER'S title clear of the matter or insure against its enforcement out of the PREMISES. Upon request made within a reasonable time before CLOSING, PURCHASER agrees to provide separate certified checks as requested to assist in clearing up these matters.~~

8.     If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of SELLER, SELLER shall deliver a satisfactory detailed affidavit at CLOSING showing that they are not against SELLER.

2

9.    At CLOSING, ~~SELLER shall deliver a certified check~~s shall be drawn from the Escrow Account and made payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed, and SELLER shall deliver ~~together with~~ any required tax return. PURCHASER agrees to duly complete the tax return and to cause the check(s) and the tax return to be delivered to the appropriate officer promptly after CLOSING.

10.    All money paid on account of this contract, and the reasonable expenses of examination of the title to the PREMISES and of any survey and survey inspection charges shall be paid ~~are hereby made liens on the PREMISES and collectable~~ out of the ~~PREMISES~~Escrow Account. ~~Such liens shall not continue after default in performance of the contract by PURCHASER~~.

11.    All prior understandings and agreements between SELLER and PURCHASER are merged in this contract. It completely expresses their full agreement. It has been entered into after full investigation, neither party relying upon any statements made by anyone else that are not set forth in this contract.

12.    This contract may not be changed or canceled except in writing. The contract shall also apply to and bind the distributees, heirs, executors, administrators, successors and assigns of the respective parties. Each of the parties hereby authorizes their attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

13.    Any singular word or term herein shall also be read as in the plural whenever the sense of this contract may require it.

14.    If SELLER is unable to transfer title to PURCHASER in accordance with this contract, SELLER'S sole liability shall be to refund all money paid on account of this contract, plus all charges made for: (i) examining the title, (ii) any appropriate additional searches made in accordance with this contract, and (iii) survey and survey inspection charges. Upon such refund and payment this contract shall be considered canceled, and neither SELLER nor PURCHASER shall have any further rights against the other.

15.    PURCHASER has inspected the buildings on the PREMISES and the personal property included in this sale and is thoroughly acquainted with their condition. PURCHASER agrees to purchaser them "as is" and in their present condition subject to reasonable use, wear, tear, and natural deterioration between now and CLOSING. Except as expressly set forth herein, Seller has not made any representation or warranty with respect to the property or any matter relating to or affecting the property including, without limitation, uses, zoning,      , environmental conditions.    Seller is not bound by or liable for any statements, setups, offerings or other disclosures or materials prepared by or distributed by any broker. PURCHASER shall have the right, after reasonable notice to SELLER, to inspect them before CLOSING.


*CONTINUED ON RIDER ANNEXED HERETO AND MADE A PART HEREOF*


**THOMAS MCLAUGHLIN,** Seller


**JOSEPH GALL,** Seller


**TRINITY ACQUISITION I, LLC**

3

**By:**_____

                                               **Purchaser**

4

RIDER TO CONTRACT OF SALE DATED _____, 2005, BY AND BETWEEN **THOMAS MCLAUGHLIN AND JOSEPH GALL**, as Sellers, and **TRINITY ACQUISITION I, LLC**, as Purchaser.

1.     <u>Purchaser's Obligations</u>

Purchaser's obligation to perform as provided in this Contract is conditioned on the fulfillment of each of the following:

a.     The due performance by Sellers of each and every covenant, undertaking and agreement to be performed by it hereunder, ~~and the truth of each representation and warranty made herein by Sellers at the time of the Closing~~ at the time of Closing.

b.     There shall not have occurred prior to or on the Closing Date, any loss or threatened loss of title or actual use of the Property or any material portion thereof, on a permanent basis, from eminent domain, condemnation, the result of any environmental contamination or any other cause.

c.     Sellers shall convey to Purchaser marketable title to the Property, which is to be insured at standard premiums.

d.     Requirements as set forth in Paragraph 25 herein.

~~2.     Sellers' Representations~~

~~a.     Sellers know of no actions or proceedings pending or threatened before any Court or Administrative Agency in any way connected with the Property, except action pending before the Supreme Court, Bronx County under Index #21438/98.~~

~~b.     Sellers know of no pending proceeding for the taking of all or any portion of the Property by condemnation or eminent domain, and to the best of Sellers' knowledge, no such proceeding is about to be commenced.~~

~~3~~2.     <u>State of Title</u>

Sellers shall convey and Purchaser shall accept fee simple title to the Property, showing title to the Property vested in Sellers herein, subject only to those matters shown therein as standard pre-printed exceptions and the following (collectively the "Permitted Exceptions"):

a.     All covenants, restrictions, utility easements and agreements of record, if any, provided (i)same are not violated by the current use of the Property, and (ii) do not contain a provision wherein any future violation will result in a reversion or forfeiture of title;

b.     Easements, if any, relating to maintenance and operation of public utility lines, wire poles, cables, pipes, distribution boxes and other equipment and installations on, over and under the Property; provided

5

no part of said easements lie in any area of the Premises which would prevent Purchaser's intended use of the property; and

c.    Sellers shall have the ~~obligation~~ right to attempt to remedy any objection to or defect in title, and for such purpose Sellers shall be entitled to one or more adjournments of the Closing Date, not to exceed sixty (60) days in the aggregate.  Notwithstanding any other provisions of this Agreement, Sellers shall not be obligated to spend any money in excess of $25,000.00 ("the clearance amount"), take any measure or bring any action or proceeding to remove any objection to or defect in title, except that Sellers shall satisfy or cause to be satisfied all existing mortgages and liens disclosed in such title report brought up to date at the closing, provided same are in a liquidated amount.  If Sellers are unable without expending in excess of $25,000.00 and satisfying mortgages and liens as aforesaid to remove any objection to or defect in title, Purchaser herein may elect to accept such title as Sellers may be able to convey subject to such objections, defects and non-compliance without any credit or liability on the part of Sellers herein, or reduction of the Purchase Price.  If Purchaser shall not elect to accept title subject to such objections, defects and non-compliance, Sellers' only obligation shall be to refund the down payment together with interest earned thereon to Purchaser, whereupon this Agreement and all rights of Purchaser herein shall terminate, and neither Seller nor Purchaser shall have any further claim against the other pertaining hereto. For the purposes of this Agreement, Sellers' failure or refusal to bring any action or proceeding, to make any payments or to otherwise incur any expense, except for Sellers' obligation to (i) expend the clearance amount, and (ii) satisfy mortgages and items in order to eliminate the unacceptable encumbrances shall be deemed an inability of Sellers to eliminate such unacceptable encumbrances and shall not be a default by Sellers hereunder (willful or otherwise).

<u>34</u>.    <u>Closing</u>

The closing shall take place within sixty (60) business days from the date that ~~the  Order is signed by Justice George Salerno~~'s afore-mentioned So-Ordered Stipulation of Settlement is amended to approve ~~or his successors approving~~ this Contract (the "Closing Date").  The procedure to be followed by the parties in closing the transaction contemplated hereby shall be as follows:

At the Closing, the following shall be delivered to Purchaser:

a.    A Bargain and Sale Deed with covenants against Grantor's Acts, containing the covenant required by Section 13 of the Lien Law, executed in proper form for recording, and sufficient to convey title to the Property in accordance with this Agreement.

b.    Sellers delivering to the title company all documents necessary to convey title subject only to the Permitted Exceptions.

c.    A certificate evidencing that each Seller is not a "foreign person" within the meaning of the Internal Revenue Code of 1986, as amended.  Based thereon, no portion of the Purchase Price shall be withheld by Purchaser pursuant to the Code.

d.    At the Closing Purchaser shall deliver to ~~Sellers~~ Escrow Agent such documents as reasonably may be required to consummate the transactions contemplated herein, which are not inconsistent with this Agreement, together with the purchase price in accordance with this Agreement.

6

e.    Assignment of all rights and obligations to Purchaser so as to enable Purchaser to complete the transaction as contemplated hereunder.

Closing shall take place in the office of Naranjo & Associates P.C., 746 Merrick Road, Baldwin, New York 11510.

4~~5~~.    <u>Prorations and Adjustments</u>

A. The following shall be apportioned as of midnight of the day preceding the Closing Date:

      i.      Real estate taxes, water charges and sewer rents and assessments affecting the Property, on the basis of the lien period for which assessed.

      ii.     Rents, as and when collected.

     iii.     Fuel, if any.

     iv.     Wages.

      v.     Rent stabilization dues and/or fees.

If the closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the old tax rate for the preceding rate for the preceding period applied to the latest assessed valuation.

If the adjustments result in a payment due Sellers, such payment shall be made at the closing by a certified check of Purchaser as required by ~~of~~ the printed portion of this Agreement.  If the adjustments result in a payment due Purchaser, such payment shall be <u>made from the Escrow Account</u>~~credited against the cash portion of the Purchase Price due at the closing.~~

The amount of any unpaid real estate taxes which Sellers are obligated to discharge or satisfy, with any interest or penalties thereon, <u>shall be paid from the Escrow Account</u>~~at its option may be allowed as a credit to Purchaser at the closing,~~ provided official bills therefor are furnished at the closing.  If on the Closing Date there are any liens or encumbrances which Sellers are obligated to discharge or satisfy, <u>same shall be paid from the Escrow Account</u>~~it may use any cash portion of the Purchase Price to discharge or satisfy the same, or may deposit with Purchaser's attorneys or the Title Company an amount sufficient to discharge or satisfy the same, or as otherwise required by the Title Company.~~  Purchaser agrees to provide at the closing upon written request separate certified checks to facilitate the discharge or satisfaction of items referred to in this paragraph.  The existence of liens, encumbrances, real estate taxes, assessments, water charges or sewer rent shall not be an objection to title provided Sellers comply with the provisions of this paragraph and Purchaser's title company "omits" said exceptions at closing.

If the real estate taxes affecting the Property are reduced, because of a reduction of the assessed valuation or tax rate or for any other reason, the parties shall adjust the benefits of the tax savings as of the Closing Date <u>as soon as possible</u> after payment of all actual costs incurred in obtaining the reduction.  The provisions of this paragraph shall survive the closing.

7

If there be a water meter on the Premises, Sellers shall furnish a reading to a date not more than thirty (30) days before CLOSING date and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

Any errors or omissions in computing apportionments shall be corrected. This provision shall survive closing for a period of one (1) month from closing.

B.    Purchaser shall pay all expenses for its examination of title, the premium for any title insurance policy issued to it, and all other title, survey or other expenses incurred by Purchaser in connection with this Contract or the closing of title hereunder. ~~Seller shall pay, or Purchaser shall be credited with an amount equal to a~~Any applicable transfer tax or stamp tax payable by means of the delivery of the deed <u>shall be paid from the Escrow Account</u>. <u>Purchaser shall pay its own attorney's fees in connection with this transaction and the closing of title, and Seller's attorney's fees in connection with the closing of title shall be paid from the Escrow Account</u>~~The parties hereto each shall pay their own attorney's fees in connection with this transaction and the closing of title~~. To the extent that the amounts of the items to be adjusted are not reasonably ascertainable as of the closing date, they shall be adjusted and paid as promptly thereafter as the amounts thereof can be ascertained. This paragraph shall survive the closing.

C.    The parties acknowledge that no portion of the Purchase price is allocable to personal property, if any, transferred hereunder. Purchaser agrees to indemnify and hold Seller harmless from and against any sales tax or other tax with regard to transfer of personal property. This paragraph shall survive the closing.

<u>5</u>6.    <u>Broker</u>

Purchaser and Sellers represent to each other and warrant that neither has dealt with any broker in connection this sale other than **CB RICHARD ELLIS**. The parties agree to indemnify and hold the other harmless from and against any and all liability, claim, loss, damage or expense, including reasonable attorneys fees, by any other broker claiming to have acted for or on behalf of said party. ~~Seller shall pay~~<u>All commissions due</u> ~~CB Richard Ellis, all commissions due~~ as per Agreement dated October 26, 2004 annexed hereto as **Exhibit A**<u>, shall be paid from the Escrow Account</u>. The provisions of this paragraph shall survive the closing.

<u>6</u>7.    <u>Survival</u>

All warranties, representations, covenants, obligations and agreements contained in the Agreement shall not survive the Closing hereunder unless otherwise specified in this Agreement.

<u>7</u>8.    <u>Successors and Assigns</u>

This Agreement and the terms and provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the parties hereto.

<u>8</u>9.    <u>Assignment of Contract</u>

This contract is not assignable ~~without the written consent of the Seller~~, except to an affiliate of Purchaser of which they are at least fifty percent (50%) owners.

8

~~1~~09.    Purchaser's Default

In the event that Sellers have fully performed its obligations under this contract and the Purchaser shall thereafter fail to pay the balance of the purchase price on the agreed closing date, or if Purchaser otherwise defaults in the performance of the terms of this contract and has not terminated this contract under any other provision thereof, <u>then the terms of the afore-mentioned So-Ordered Stipulation of Settlement or any amended thereto shall be applicable.</u> ~~Sellers shall have the option to terminate this contract upon notice to Purchaser's attorney, and, upon giving such notice, this contract shall be deemed cancelled, all rights and obligations of the parties hereto shall terminate and neither party hereto shall have any claim against the other, provided, however, that all amounts paid under this contract at or before the time of cancellation to the Sellers on account of the purchase price shall be retained by the Sellers as liquidated damages, it being agreed that Sellers' damages in the case of Purchaser's default would be impossible to ascertain and that the down payment constitutes a fair and reasonable amount of damages under the circumstances. If the default by Purchaser is anything other than a failure to pay the balance of the purchase price on the Closing Date, then the notice given by Sellers shall be ten (10) days prior notice, stating the nature of the default and providing Purchaser with the right to cure said default within the ten (10) day period given in the notice, and if not cured, this contract shall terminate as aforesaid upon the expiration of the ten (10) day period.~~

~~1~~10.    Notice

Any notice, demand or other communication required to be given by either party hereto, except those required to be delivered at the closing, shall be in writing and sent by certified mail, return receipt requested, or by overnight delivery utilizing Federal Express, United Parcel Service or Airborne Express, or by facsimile provided a confirmation receipt is likewise provided, to the addresses provided herein.:

If to the Seller, to:

If to the Purchaser, to:

With a courtesy copy to:        Carolyn R. Naranjo, Esq.
                                Naranjo & Associates P.C.
                                746 Merrick Road
                                Baldwin, New York  11510

With a courtesy copy to:        <u>Frederick R. McGowen</u>
_____        <u>Goodwin Procter LLP</u>
_____        <u>599 Lexington Avenue</u>
                                <u>New York, NY 10022</u>

9

Notice shall be deemed to have been given on the earlier to occur of (i) the date received, or (ii) the date delivery is refused provided however, that a notice given to meet a deadline shall be deemed given on the date mailed or otherwise given. Counsel may give notice for its client if otherwise in accordance with this paragraph.

The addresses and addressees for the purpose of this paragraph may be changed by giving written notice. Unless and until such written notice is received, the last address and addressee stated by written notice, or provided herein if written notice of change has been sent or received, shall be deemed to continue in effect for all purposes hereunder.

11<s>2</s>.    Any and all of the "Subject" clauses contained in this Contract may be omitted by the Sellers from the deed to be delivered hereunder.

13<s>2</s>.    For purposes of this Contract, the definition of "the date hereof" shall mean the date on which the Contract as executed by the Sellers and Purchaser is received by the Purchaser(s) attorney.

14<s>3</s>.    Any checks required to be delivered by Purchaser to Sellers at closing under the terms of this Contract shall be an official cashier's or certified check and shall be drawn on a bank which is a member of the New York Clearing House payable to the direct order of the ~~Sellers~~ Escrow Agent~~or by federal funds at Sellers' discretion~~. In no event shall the ~~Sellers~~ Escrow Agent be required to accept an endorsed check.

15<s>4</s>.    Any inconsistencies existing between the provisions of the printed portions of this Contract and the provisions of this Rider shall be resolved in favor of the Rider provisions.

16<s>5</s>.    The term "Purchaser" should be read as "Purchasers" if more then one person is purchasing the subject premises, in which event their obligations shall be deemed joint and several. The use of the masculine gender shall be deemed to refer to the feminine or neuter gender and the use of the singular shall be deemed to refer to the plural and vice versa, whenever the context so requires. Purchaser hereby represents that the signature of one spouse on behalf of and as agent for the other spouse is duly authorized and legally binding upon such other spouse.

17<s>6</s>.    <u>Corporate/Entity Documents</u>

The Sellers and the Purchaser each agree to deliver at the Closing all Corporate Resolutions and Consents of Directors and/or Stockholders and/or Members that are necessary or required to effectuate the consummation of the transactions herein contemplated in such form as shall be reasonably required or requested by counsel for the respective parties and as shall be required by the title company insuring title to the Property on behalf of the Purchaser.

18<s>7</s>.    <u>Purchaser's Right To Waive Contingencies</u>

Notwithstanding anything to the contrary set forth elsewhere herein, Purchaser shall have the right to waive, in writing, any contingency or condition set forth herein and elect to close title without an abatement in price, except for the requirements ~~Court Order~~the afore-mentioned So-Ordered Stipulation of Settlement or any amendment thereto~~as set forth herein~~.

10

1<u>8</u>9.   The acceptance by the Purchaser of a deed conveying said Premises shall constitute an acknowledgement by the Purchaser that all obligations of the Sellers in respect of said Premises or otherwise set forth in this agreement have been discharged in full, and upon such acceptance, the Seller shall be released from any and all further obligations by reason of this agreement, except only such obligations, if any, as are pursuant to the express provisions of this agreement to survive the closing of title hereunder.

1<u>9</u>2<s>0</s>.   Deposit

a.  The deposit paid in the sum of **$25,000.00** shall be held in the <s>e</s>Escrow <u>Account</u> by the attorney for the Seller herein, Naranjo & Associates P.C.(Escrow Attorney/<u>Escrow</u> Agent) at JP Morgan Chase, Mineola, New York IOLA account, until the earlier of (i) such time as the Purchaser may be entitled to a refund thereof in accordance with the provisions of this agreement, or (ii) Purchaser shall be in default of any of his obligations hereunder, or (iii) closing of title.  In any of which events, the escrowee shall remit such down payment to the party then entitled thereto.  Such <u>E</u>escrow <u>A</u>agent may rely on any instrument or notice purporting to be genuine, shall have no obligation to inquire into the validity or genuineness of any signature and shall not be liable except for  gross negligence, willful malfeasance or bad faith.

b.  It is agreed that any and all escrow deposits, whether of the down payment hereunder or for any other purpose hereafter paid hereunder to the Escrow Attorney, are made for the accommodation of the parties hereto.  In the event any litigation should arise between the parties to this agreement concerning any such escrow deposit, then losing party agrees  to indemnify and save harmless the said escrowee from the payment of any costs or any other expenses that may be involved in said litigation Each agrees to pay for the cost of the litigation for the Escrow Attorney..  This agreement shall survive the delivery of the deed hereunder.

20<s>1</s>.   Violations

<u>Except as may concern the day care center on the Premises,</u> v<s>V</s>iolations in any county, city, state or federal department which the Sellers are required to remove hereunder shall not be an objection to title, provided <s>the Sellers shall deposit with its attorney a sum sufficient to perform the work and provide the materials necessary to remove such violations and shall agree to comply with such violations within six (6) months from the date of closing of title, such deposit to be held until dismissal card is exhibited to the Purchaser.   In the event the aggregate cost of removal of any violations which the Sellers may be required to remove hereunder shall exceed the sum of  $2,500.00, then the Sellers shall have the following options:  (a) to remove the same in accordance with the provisions of this Contract, or (b) to refuse to remove the same</s><u>that the cost of removal of the violation is paid from the Escrow Account</u>.  In the event that the Sellers refuse to remove the same, then the Purchaser shall have the following options: (i) to take title subject to such violations<s>, in which event the Purchaser shall receive an allowance of $2,500.00 in reduction of the purchase price</s>, or (ii) to cancel this Contract, in which event, upon repayment of the amount paid upon the execution hereof, together with the net cost of title examination, each of the parties shall be fully released from any further liability hereunder.

21<s>1</s>2.   In the event that the check given as a down payment and delivered by the Purchaser to the <s>Seller</s> <u>Escrow Agent</u> upon the execution of this Contract is dishonored for any reason by the bank upon which it is drawn, then <s>the Sellers, in addition to any other rights and remedies which he may have, may at his</s>

11

~~option, declare~~ this <u>shall become</u> Contract null and void and at an end and thereupon, the Seller shall be
relieved and released from all obligations hereunder.

223.   <u>Sellers' Obligations</u>

The Sellers further agree as follows:

     a.    The Sellers will comply with any orders issued by the Department of Housing,
Preservation and Development, Rent Stabilization Association, Conciliation and Appeals Board or
DHCR or any similar successor at any time in any proceeding now pending or of which notice is given
to the Seller prior to closing of title.

     b.    Between the date hereof and the closing of title, the Sellers will maintain the property in
ordinary repair, reasonable wear and tear of the elements excepted, and will perform any work and
install any equipment required to be done by leases or agreements with tenants or required by any law
or regulation, <u>except that any work or modification to the Premises that may be required, with respect
to the lease for the day care center on the Premises or any agreement between the Purchaser and the
lessee of the day care center, shall be the obligation of Purchasers.</u>

     c.    If any of the rentable space becomes vacant between the date of this Contract and the
closing date, the same shall not be relet nor shall any extension or renewal of any lease be made nor
shall any modification of the terms of any lease or rental agreement be made except upon the consent
of the Purchaser. However, should the Purchaser refuse to give such consent in writing within five (5)
business days of the time within which such is requested, then the Purchaser at the closing, shall pay to
the Sellers at closing, in addition to the purchase monies, the rental value of said space for the time
between which the same became vacant and the closing date, at the highest rental rate allowed by
DHCR or Rent Guidelines Board.

     d.    Unconfirmed improvements or assessments, if any, shall be allowed by the Sellers on
account of the purchase price if the improvements or work have been substantially completed on or
before the date of this Contract.

     ~~e.    On closing of title, the Sellers will execute an affidavit containing the following:~~

         ~~That the only leases affecting the premises are those set forth on the schedule of
rents.~~

         ~~That the rents, as adjusted, are correct.~~

         ~~That all insurance premiums, as adjusted, have been paid.~~

         ~~As to whether any proceedings have been instituted for any reason with DHCR
or the Department of Housing, Preservation and Development.~~

         ~~That none of the tenants' securities have been applied toward any arrears of rent
unless the tenant has actually vacated the premises.~~

12

~~As to whether the Sellers have received any notice of violations issued by any governmental authority after the date of Contract.~~

~~As to whether there are any vaults subject to a city rental charge, or, if there are any vaults, that all rental charges have been paid.~~

~~That there are no Emergency Repair Liens affecting the premises.~~

e̶f.    All leases, copies of mortgages, and all instruments initialed by the Purchaser under this Contract are to be held by the Managing Agent pending the closing of title and are to be made available to the Purchaser or its assignee or to their attorneys for the purpose of examination or making copies thereof.

f̶g.    The Sellers, upon the request of the Purchaser, will at any time submit any receipted bills and evidences of payment for any repairs or capital improvements made by the Seller prior to closing of title.

g̶h.    None of the tenants' securities are to be applied to arrears of rent unless the tenant actually vacates the premises and all of the tenants' securities shall be transferred to the Purchaser upon closing title upon the Purchaser executing a letter of indemnification.

h̶i.    Except to the extent that the afore-mentioned So-Ordered Stipulation of Settlement, or any amendment thereto, may provide otherwise, t̶The liability of the Purchaser under this Contract is limited to the monies deposited on the execution hereof and the Seller agrees that no party other than the named Purchaser shall be liable as a disclosed or undisclosed principal.

i̶j.    The Seller shall, upon closing of title, deliver to the Purchaser all leases in effect for four (4) years prior to the most recent registration or annual statement as required pursuant to the law, as amended, and all leases entered into subsequently thereto.

j̶k.    Vacation pay and all other union or other benefits for employees entitled to same shall be adjusted as of the date of their original employment.

k̶l.    Sellers will not remove any supplies or equipment presently located in the premises.

## 2̶3̶4.    Non-Foreign Representation

Each Seller is not a non-resident alien or foreign investor as defined in the Foreign Investment in Real Property Tax Act of 1980 ("FIRPTA") and will deliver an appropriate affidavit stating so.

## 2̶4̶5.    Conditions of Closing

This property is presently the subject of litigation in the Supreme Court of the State of New York, Bronx County under Index # 21438/99 between S&J Realty Corp. vs. Thomas McLaughlin, Joseph Gall, Caro & Graifman P.C., New York City Environmental Control Board, New York City Environmental Control Board Fire and Buildings, National Council on Compensation Insurance, Inc.,

13

FDM, Inc., Department of Housing, Preservation and Development, New York City Transit Adjudication Bureau, Employee Staffing of America, Inc. and John Doe #1 through John Doe #200.

On July 15, 2004 a Stipulation of Settlement was so ordered by Justice George D. Salerno which terms are incorporated by reference herein, a copy of same is attached as **Exhibit B.**

It is a condition precedent to closing that all requirements set forth in ~~said~~ the afore-mentioned So-Ordered Stipulation of Settlement or as they may be modified by the Court, are complied with ~~or modified by further order of Justice George D. Salerno or his successors~~.

It is a condition precedent to closing that this Contract is approved by Justice George D. Salerno or his successors and that a further Stipulation be entered into by the parties to the aforementioned action.

It is a condition precedent of this sale that defendants National Counsel on Compensation Insurance, Inc. ("NCCI") and Caro & Graifman, P.C. ("C&G") execute a release of lien in form satisfactory to the title company prior to closing.

256.  Mortgage Contingency

a. This Contract is subject and conditioned upon the Purchaser procuring, at the Purchaser's own cost and expense, a loan commitment in the maximum amount of **$3,200,000.00** at the prevailing interest rates per annum and having a term of not less than a ten (10) year period. The Purchaser agrees to forthwith make diligent application for such loan commitment, and shall furnish the proposed lender with a true statement of its financial condition, and shall execute any and all documents requested by such proposed lender upon receipt by the Purchaser of a written loan commitment. The Purchaser agrees to deliver a copy of the same to the attorney for the Sellers. In the event the Purchaser shall fail to procure a firm loan commitment by **forty-five (45) days from the date** that an amended So-Ordered Stipulation of Settlement ~~the Order~~ is **signed by Justice George D. Salerno or his successors approving this Contract**, and to the extent that the amended So-Ordered Stipulation of Settlement, or an amendment thereof, does not provide otherwise, this agreement may be cancelled by either party and if so cancelled, the Sellers agree to refund to the Purchaser the money deposited hereunder and the contract shall become null and void and each of the parties shall be released from any further liability hereunder. In the event the Purchaser does not so notify the Sellers' attorney in writing by said date, this contract shall be deemed in full force and effect, regardless of whether the Purchaser has procured such commitment or not.

b. The Purchaser warrants and represents that it will immediately, diligently and in good faith, apply for said loan commitment and will promptly furnish the proposed lender with a true statement of its financial condition, and to execute any and all documents requested by such proposed lender.

c. The Purchaser represents that, to the best its knowledge, it is qualified from an income and credit standpoint, for the loan that it is seeking from a lending institution.

d. Upon receipt of a loan commitment or denial of said commitment, Sellers shall, upon request, have the right to see copies of the application filed by Purchaser with the Lender and a copy of the commitment. If requested, Purchaser will request in writing, that Lender send a copy of the application and commitment to Seller's attorney.

14

This Contract may be signed in counterparts by the parties herein and shall be deemed to be one instrument.

_____
THOMAS MCLAUGHLIN

_____
JOSEPH GALL

TRINITY ACQUISITION I, LLC

By:_____

**Attachments:**
Schedule A – Legal Description
Exhibit A – Agreement
Exhibit B - Stipulation of Settlement

Gall-Trinity. Contract2

15

## CERTIFICATION OF SERVICE

I, Chase A. Caro , do hereby affirm under penalty of perjury that on June 24, 2005

a true and correct copies of the enclosed defendant's Opposition to Motion to Reopen Dismissal,

dated June 24, 2005, was deposited by me, with the United States Postal Service, all postage

costs and fees prepaid, for delivery to the following addresses:

David Rosengren, Esq.
Pepe and Hazard
225 Asylum Street
Hartford, Connecticut 06103-4302

Joseph Gall, pro se.,
36 Woodside Avenue
Elmsford, NY 10523

Dated :        White Plains New York
               June 24, 2005

Chase A. Caro
CT 0788/