Ronald M. Gutwirth, Esquire
90 South Main Street
Orange, New Jersey 07050
Telephone: (973)678-8660
Attorney for Caro & Associates, P.C.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NATIONAL COUNCIL ON COMPENSATION INS. INC. | ) ) ) | 3:00 CV 1925 (AHN) Hon. Alan H. Nevas, U.S.D.J. |
| v. | ) ) | **AFFIDAVIT OF RONALD M. GUWIRTH** |
| CARO & GRAIFMAN, P.C. JOSEPH GALL | ) ) ) | |

I, Ronald M. Gutwirth, being duly sworn according to law, depose upon my oath and say:

1.    I am an attorney admitted to practice law in the State of New Jersey and the United States District Court for the District of New Jersey who has been admitted *pro hac vice* in the United States District Court, for the District of Connecticut, to represent Caro & Graifman in an action captioned National Council on Compensation Ins., Inc. v. Caro & Graifman, P.C., Joseph Gall, 3:00 CV 1925 (AHN).

2.    On the basis of my representation of Caro & Graifman, I am familiar with the facts set forth in the within affidavit.

3.    I am attaching the following exhibits so that they may become part of the record in the within matter:

Exhibit A:     Complaint of National Council on Compensation Insurance

Exhibit B:     Caro & Graifman's answer and counterclaim

Exhibit C:     Mortgage between Caro & Graifman and Joseph Gall

Exhibit D:     Pages 16-22 of the deposition of Joseph Gall

_____

RONALD M. GUTWIRTH

Sworn and subscribed
before me this 9th
day of  October, 2007



DOROTHY RICHMOND,
Notary Public of the State of N.J.

DOROTHY RICHMOND
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 3/19/2012

2

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NATIONAL COUNCIL ON COMPENSATION )
INSURANCE, INC. )
        Plaintiff, )
      )
v. )
      )  Civil Action No.
CARO & GRAIFMAN, P.C.; and JOSEPH GALL, )
        Defendants. )
      )
      )
      )
      )
      )  OCTOBER 5, 2000

## COMPLAINT

Plaintiff, National Council on Compensation Insurance ("NCCI"), brings this Complaint against the Defendants, Caro & Graifman, P.C. ("Caro") and Joseph Gall, and allege as follows:

## PARTIES

1.    Plaintiff, NCCI, is a corporation organized under the laws of the state of Delaware, having its principal place of business in Boca Raton, Florida.

2.    Defendant, Caro & Graifman, P.C. (hereinafter, "Caro"), which is or was a professional corporation organized under the laws of the state of New York with a principal place of business in New York.

3.    Defendant, Joseph Gall (hereinafter, "Gall"), is incarcerated in the United States Federal Penitentiary at Allenwood, Pennsylvania following conviction for massive fraud by the

United States District Court (Nevas, J.) in 1997. Prior to this incarceration, Gall's domicile was in Orange, Connecticut.

## JURISDICTION AND VENUE

4.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship).

5.    The matter in controversy exceeds, exclusive of interests and costs, the sum of $75,000.

## FACTS

6.    In 1997, Gall was convicted in the United States District Court, District of Connecticut, on numerous counts of fraud in connection with Worker's Compensation Insurance that Gall purchased from NCCI.

7.    On July 30, 1997, the United States District Court (Nevas, J.) entered an Order of Restitution, against Gall and in favor of NCCI ordering that the sum of $13,717,630 be paid by Gall to plaintiffs. A true and correct copy of the Order of Restitution is attached hereto as **Exhibit A** and incorporated herein by reference.

8.    In connection with the Order of Restitution, the District Court released to plaintiffs a copy of Gall's April 25, 1997 Personal Financial Statement, prepared by Gall and sworn to be true, correct and complete; said Personal Financial Statement was used in connection with the

2

District Court's hearings regarding the Order of Restitution herein; a true and correct copy of Gall's Personal Financial Statement is attached hereto as **Exhibit B**, and incorporated herein by reference.

9.    Pursuant to Gall's Personal Financial Statement, two significant assets, available to satisfy the Order of Restitution, were disclosed: (a) a 50% interest in real property, known as "UPACA," located at 124-136 East 117th Street, New York City; and (b) a 50% interest in real property, known as "Trinity," located at 2105 Daly Avenue, Bronx on his Personal Financial Statement; Gall estimated these interests to be worth $800,000.00.

10.   On and after the time of the Personal Financial Statement and the Order of Restitution, title to UPACA and Trinity was held jointly in the names of Joseph Gall and Thomas V. McLaughlin.

11.   Gall's interests in UPACA and Trinity were, and remain, subject to the Court's Order of Restitution; NCCI promptly recorded judgment liens on UPACA and Trinity following the issuance of the Order of Restitution and the Personal Financial Statement.

12.   On or about April 30, 1997, Gall executed a mortgage in favor of Caro against Gall's interest in UPACA and Trinity coincidentally in the principal amount of $800,000, **Exhibit C**, purportedly to satisfy Caro's alleged claim for attorney's fees, owing by Gall and others, Gloria Stevens, Labor Force of America and Employee Staffing of America; Caro's $800,000 mortgage was executed and recorded just after Gall prepared and submitted his sworn Personal Financial Statement in connection with his conviction for massive fraud; but yet, Gall failed to

disclose the $800,000 liability or mortgage on his Personal Financial Statement.

13.    Caro accepted and recorded the $800,000 mortgage against the title to Trinity and UPACA without receiving reasonably equivalent value therefor.

14.    Gall's interest in UPACA was sold to a third party in 1999; the net proceeds remaining after payment of all prior encumbrances is the principal sum of $203,769.87; by Escrow Agreement, plaintiffs and Caro agreed to permit the closing and escrow the net proceeds of Gall's interest therein until such time as there is a joint agreement to distribute the funds or a final judgment pertaining to the disposition of the funds.  Attached hereto and incorporated herein by reference as **Exhibit D**, is a true and correct copy of the Escrow Agreement.

15.    Plaintiffs have reached no agreement with Caro with respect to the distribution of the funds held pursuant to the Escrow Agreement.

16.    Because Caro's mortgage is invalid, NCCI is entitled to the escrowed funds, as well as interest accruing thereon; Caro's mortgage continues to encumber Gall's interest in Trinity, and prevent plaintiffs from liquidating their interests therein because Caro claims that all, or substantially all, of the net proceeds of the sale of Trinity belong to Caro.

## FIRST COUNT (Declaratory Judgment)

1.    The allegations contained in paragraphs 1-18 are incorporated herein by reference as if fully set forth herein.

19.   Caro's $800,000 mortgage, allegedly for attorney's fees owed by Gall and others, is invalid because Gall was not indebted to Caro for such fees, Gall was not personally liable for the fees of others and/or Caro had not performed services to April 1997 resulting in a balance due Caro by Gall of $800,000.

20.   All persons who have an interest in the subject matter of this dispute are parties to this action.

21.   Plaintiffs seek a declaration of their rights and the rights of Caro to enforce its mortgage, including the rights of the parties with respect to the funds held pursuant to the Escrow Agreement.

### SECOND COUNT (Fraudulent Conveyance Pursuant to Conn. Gen. Stat. § 52-52a, et seq.)

1. The allegations contained in paragraphs 1-21 of the First Count are incorporated herein by reference as if fully set forth herein.

22.   On April 30, 1997, when the Caro mortgage was allegedly executed by Gall, Gall was indebted to the plaintiffs, and was well aware of plaintiffs' claims against him; Gall also knew that an Order of Restitution would be issued by the United States District Court against him and in favor of the plaintiffs.

23.   On April 30, 1997, Gall further knew or should have known that all assets in his name, including his 50% interests in UPACA and Trinity, would be subject to the Order of Restitution which would be issued by the United States District Court.

24. The conveyance by the defendant, Joseph Gall, to the transferee, defendant, Caro, was a fraudulent conveyance, within the meaning of Conn. Gen. Stat. § 52-552; *et. seq.,* in that, Gall executed the Caro mortgage of his interest in UPACA in favor of Caro, to avoid paying the plaintiffs and/or to hinder plaintiffs' ability to collect from Gall under the Order of Restitution.

25. Defendant, Caro, as transferee, was aware of the status of Gall's criminal proceedings, and the claims of the plaintiffs herein, and further, Caro was aware that the United States Court was about to issue an Order to Restitution against Gall; Caro participated in the fraudulent transfer knowing that the transfer would deplete the assets of Gall available for payment of the Restitution Order to the plaintiffs herein.

26. The Caro mortgage deprives Gall of sufficient means to satisfy the Order of Restitution.

27. As a result, the mortgage by Gall to Caro is invalid and must be declared null and void.

### THIRD COUNT (Fraudulent Conveyance)

1. The allegations contained in paragraphs 1-23 of the Second Count are incorporated herein by reference as if fully set forth herein.

24. The actions of the defendant, Gall, constitute a fraudulent conveyance pursuant to Connecticut common law.

25.    As a direct result, plaintiffs have been damaged, and the mortgage must be set aside as to the transferee, Caro.

Wherefore, plaintiffs pray that this Court entered judgment in their favor and against defendants as follows:

1.  That the April 1997 Mortgage recorded against the UPACA and Trinity properties from Gall in favor of Caro & Graifman, P.C. be declared null and void, and unenforceable as a matter of law;

2.  That plaintiff is entitled to the funds which represent the proceeds of the liquidation of Gall's interest in UPACA held in escrow pursuant to the Escrow Agreement;

3. That the April 1997 Mortgage recorded against UPACA and Trinity properties be declared an fraudulent conveyance by Gall and is, therefore, unenforceable;

4.  That the April 1997 Mortgage be set aside as a valid conveyance to defendant, Caro.

5.  All costs and attorney's fees of the plaintiffs herein; and

6.  Such other and further relief as the Court may deem just and proper.

PLAINTIFFS: NATIONAL
COUNCIL ON COMPENSATION
INSURANCE, INC.

By:_____
Jeanine M. Dumont, of
Pepe & Hazard LLP
Its Attorneys
Fed. Bar No.:  05021
Goodwin Square
Hartford, CT 06103
860-522-5175

JMD/27103/7/484283v1
10/06/00-HRT/JFZ

**Exhibit A**

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA :

    V.               :     Crim. No. 3:95CR98 (AHN)

JOSEPH GALL            :

## ORDER OF RESTITUTION

On July 24, 1997, Joseph Gall, represented by counsel, was presented before this Court to determine restitution, and his ability to remit restitution, now and in the foreseeable future.

After examination, through counsel, of Joseph Gall, and considering the presentations of counsel for Mr. Gall, as well as counsel for co-defendant Thomas McLaughlin and the government, the Court finds the identifiable victims of Joseph Gall's criminal conduct, and their financial losses, to be: American International Group, $5,150,493; American Policyholders' Insurance Company, $3,419,883; and the National Council on Compensation Insurance ("N.C.C.I."), $5,147,254. The total loss is determined to be $13,717,630.

Notwithstanding the misleading written and verbal representations of Joseph Gall, which the Court views as a deliberate attempt by Mr. Gall to obscure his true financial status, the Court has determined that Mr. Gall presently has, and will have, ability to make full restitution. Accordingly,

IT IS ORDERED that Joseph Gall make $13,717,630 in restitution. Disbursement of the restitution is to be made to the

EXHIBIT A

2

victims as follows: $5,150,493 to American International Group, in care of Chase Manhattan Bank, New York, NY, ATTN: AIG Risk Management Special Business, Reference: Employee Staffing of America, Contract No. 146800, policy year 7/25/90 to 1991; $3,419,883 to American Policyholders' Insurance Company, 11 North Avenue, Burlington, MA; $5,147,254 to National Council on Compensation Insurance ("N.C.C.I."), 750 Park of Commerce Drive, Boca Raton, FL 33487.

IT IS FURTHER ORDERED that if any disbursements of restitution funds are made under this Order by the Clerk of this Court, such disbursements are to be made to the above-listed victims in the following percentages: American International Group, 37.5%; American Policyholders' Insurance Company, 25%; and the National Council on Compensation Insurance ("N.C.C.I."), 37.5%, such percentages reflecting the victims' proportionate losses.

IT IS ORDERED that the monies identified in Joseph Gall's April 25, 1997 Personal Financial Statement as the "Fleet Trust Account, loss risk retention for Employee Staffing of America's Rhode Island bond," are to be forwarded immediately to the Court by Rhode Island officials upon their release. A separate order directing the Trustee, the Director of the Rhode Island Department of Labor, to release said monies will issue from this Court.

IT IS ALSO ORDERED that Mr. Gall's $50,000 cash bond be immediately applied to this Order of Restitution.

3

IT IS ORDERED that all assets described in Joseph Gall's April 25, 1997, Personal Financial Statement are subject to this Order of Restitution. IT IS FURTHER ORDERED that Mr. Gall neither liquidate, transfer, or alienate any assets, nor close or transfer any personal or corporate bank accounts, except in satisfaction of this Order, and he shall identify the sources of all monies applied to this Order of Restitution. Upon request by the identified victims in this crime, the probation department is to provide a copy of Mr. Gall's April 25, 1997 Personal Financial Statement and all applicable attachments to that document.

IT IS ORDERED that the restitution of $13,717,630 required by this Order is to be paid immediately. However, should any restitution balance remain unpaid at the time of Mr. Gall's release from prison, payment of that balance shall constitute a special condition of his five-year term of supervised release. In the event that this restitution balance becomes a special condition of supervised release, the amount of monthly payments to be made while on release shall be determined by this Court following Mr. Gall's release from incarceration.

SO ORDERED this 30 day of July, 1997 at Bridgeport, Connecticut.

Alan H. Nevas
United States District Judge

Exhibit B

PROB 48A
(12/87) ⊛

# PERSONAL FINANCIAL STATEMENT

NOTE: I = Individual    J = Joint

## BANK ACCOUNTS (Include Savings & Loans, Credit Unions, Certificates of Deposit, IRA & KEOGH Accounts, etc.)

| I/J | Name of Institution | Address | Type of Account | Account Number | Personal or Commercial | Balance |
|---|---|---|---|---|---|---|
| I | Bank of Boston | Broad St.Milford,CT | Checking | 88454614 | Personal | $22,207.C |
| I | Fleet Bank | Milford-Greens Branch | Checking | 8103344 | Personal | $1,127.00 |
|  | Please see schedule A | | | | | |

## SECURITIES (Stocks in public and closely held corporations, bonds, mutual funds, U.S. Government securities, etc.)

| I/J | Name of Company | Number of Units | How are they held? | Fair Market Value | Margin |
|---|---|---|---|---|---|
| I | Employee Staffing of Amer. | 50% | Own Name | Attached | |
| I | Prentice House | 17.5% | Own Name | Attached | |
|  | Please see schedule B | | | | |

## REAL ESTATE (Include home equity loans under mortgage balance)

| I/J | Address (Include county & state) | Purchase Date & Cost | Fair Market Value | Mortgage Balance | Monthly Payment | Date mortgage will be paid off |
|---|---|---|---|---|---|---|
| I | 1184 Chapel St, New Haven, CT | 1980-$130,000 | approximately $400,000.00 | $43,671.00 | $1,157.00 | Has Balloon |
|  | In addition to the mortgage it is encumbered by a 2nd lien to secure the $250,000 Bail | | | | | |
|  | Please see schedule C | | | | | |

## LIFE INSURANCE

| Name of Company | Policy Number | Type | Face Amount | Cash Surrender Value | Amount Borrowed | Amount you can borrow on policy |
|---|---|---|---|---|---|---|
| None | | | | | | |
| | | | | | | |

## MOTOR VEHICLES (Include cars, trucks, mobile homes, boats, airplanes, etc.)

| I/J | Year, make & license number | Fair Market Value | Loan Balance | Monthly Payment | Date loan will be paid off |
|---|---|---|---|---|---|
| I | 1972 Porche (911T) unregistered | $3,000-$5,000 | None | N/A | N/A |
| | | | | | |
| | | | | | |

## MORTGAGES HELD BY YOU

| I/J | Mortgagee (name & address) | Mortgage Balance | Monthly Payment | Date Mortgage will be paid off | Balloon Payment |
|---|---|---|---|---|---|
| I | Mortgegor is Putnam Square Assoc., E.Main & Putnam Streets, Bridgeport CT Jospeh Gail, Mortgagee. This is a non-recourse "cash flow" mortgage, no payments are required.Although mortgage is in my name and although no formal trust established I am holding it for Labor Force of America. Please see attached Page 7. | $400,000 | None | | 2 014 |

## OTHER ASSETS (Cash on hand or other things of value that you own or are buying—see instructions)

| I/J | Description | Fair Market Value | Loan Balance | Monthly Payment | Date loan wi be paid off |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

Exhibit B

## CHARGE ACCOUNTS & LINES OF CREDIT (Bank credit cards, lines of credit, revolving charge accounts, etc.)

| I/J | Type of Account or Card | Credit Limit | Amount Owed | Credit Available | Minimum Monthly Payment |
|-----|------------------------|--------------|-------------|------------------|------------------------|
| I | Filene's, #1130156710 | unknown | | unknown | N/A |
| I | M/C Citibank, #5424180396806280 | 2,500.00 | 1.00 | 2,499.00 | None |
| I | AMEX, #37279335496203 | unknown | 5,212.00 | unknown | fullpayment endof m |
| I | First Visa, #4417112567128956 | 2,500.00 | 0.00 | 2,500.00 | N/A |
| I | Citi Visa, #4271382108282324 | 6,000.00 | 0.00 | 6,000.00 | N/A |
| | Please see attached | | | | |

## OTHER DEBTS (not included elsewhere)

| I/J | Owed to | Relationship | Amount Owed | Owed For | Monthly Payment |
|-----|---------|--------------|-------------|----------|-----------------|
| | I am a guarantor on a mortgage of approximately $3,100,000.00, although the property is not in my name. The property, or limited partnership, is 90% owned by Labor Force of America. The market value of the property is currently about $1.2 - $1.7 million. | | | | |

## MONTHLY INCOME

| | Yours | Spouse | Total |
|-----|-------|--------|-------|
| Net Salary | | | |
| Commissions | | | |
| Net Profit from business | | | |
| Net rental income | 4,000.00 | | 4,000.00 |
| Pensions | | | |
| Social Security | | | |
| Interest | | | |
| Dividends | | | |
| Alimony/child support | | | |
| Income of other dependents | | | |
| Other | | | |
| | | | |
| | | | |
| | | | |
| TOTAL INCOME | | | 4,000.00 |

## NECESSARY MONTHLY EXPENSES

| | |
|-----|-----|
| Home Rent or Mortgage | 659.73 |
| Utilities: | |
| Electric | 183.00 |
| Heating Oil/Gas | 197.35 |
| Water/Sewer | 29.00 |
| Telephone | 110.00 |
| Groceries, supplies | 415.00 |
| Insurance: | |
| Auto | N/A |
| Health | N/A |
| Life | N/A |
| Homeowners/renters | 80.00 |
| Minimum installment payments | |
| Transportation | 140.00 |
| Medical | 65.00 |
| Clothing | 100.00 |
| Alimony/child support | |
| Other support of others | |
| other mortgages & real | |
| estate taxes | |
| TOTAL NECESSARY EXPENSES | 1,979.08 |

**CASH FLOW (income less necessary expenses)**    2,020.92

Within the last three years, have you encumbered or disposed of any asset or property with a cost or fair mark value of more than $1,000? If so, give the following information: Date, Amount, Property Transferred or Encumbere To whom?

I purchased the receivable assets from a debtor estate in bankruptcy. The assets, whose is indeterminable, because all supporting documents of the debt were missing, were transfe to a corporation, Productive Personnel Inc. However I have to date retained any funds reco from it.

Is anyone holding any assets on your behalf (include trusts of which you are a beneficiary)? If so, explain.

_____

_____

_____

_____

Are you the grantor or donor of any trust, or the trustee or fiduciary for any trust? If so, explain.

Currently there is mortgage on a property known as Putnam Square Assoc. in my name althou it was intended that the mortgage be in Labor Force of America's name. The current value o of the mortgage is limited because it is a "cash flow" mortgage. Accordingly no monthly pa are required until a balloon in 2014 unless there is sufficient cash flow to pay the intere

Do you receive, or under any circumstances expect to receive benefits, from any established trust, from a claim f compensation or damages, or from a contingent or future interest in property of any kind (i.e. inheritance, profit-shari or pension plan)? If so, explain.

Benefits may be received from the purchased assets (accounts receivable) of the bankrupt estate of Gorbach Realty. To date a few mortgages have been paid. However, the lion's sha of the other assets require litigation.

Have you ever been involved in bankruptcy proceedings? If so, give date, place and details.

NO _____

_____

_____

_____

Have you ever been a party to any civil suit? If so, give date, place, persons involved and explain.

Please see attached schedule. _____

_____

_____

_____

What is the prospect of an increase in value of assets or in present income (Please give general statement)?

NONE _____

_____

_____

_____

## CERTIFICATION

I declare that I have examined the information given in this statement and, to the best of my knowledge and bei it is true, correct, and complete, and I further declare that I have no assets, owned either directly or indirectly income of any nature other than as shown in this statement.

| Signature | 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 Social Security Number | 4-25-1997 Date |

## WARNING

False statements may result in revocation of probation or parole (if you are under supervision), in addition to years imprisonment, a fine of $250,000, or both (18 USC§1001).

PROB 48C
(12/87) ☜

# FINANCIAL WORKSHEET

| | Percentage Owned/Owed | Joint Owners/Debtors | Net Amount |
|---|---|---|---|
| **Cash:** | | | |
| Cash on hand | | | $89,374.00 |
| Bank Accounts: | | | |
| Please see attached schedule | _____ | _____ | _____ |
| | _____ | _____ | _____ |
| | _____ | _____ | _____ |
| | _____ | _____ | _____ |
| **Unencumbered Assets (Owned free and clear):** | | | |
| 1972 Porche | 100 | _____ | $4,000.00 |
| 393 Eastern Street, New Haven, CT | 50 | _____ | $82,500.00 |
| Cheshire/Wallingford Land | 100 | _____ | $600,000.00 |
| Mortgage Receivable-4464 Park Ave, Bronx | 50 | _____ | $25,000.00 |
| GalMac | 50 | | $100,000.00 |
| **Equity in other Assets (Market value less mortgages and other liens):** | | | |
| 124-130 E. 117th St, NYC | 50 | _____ | $250,000.00 |
| 2105 Daly Ave, Bronx | 50 | _____ | $550,000.00 |
| 102 New Haven Ave, Milford, CT | 100 | _____ | $130,000.00 |
| 385 Pinetree Dr., Orange, CT | 100 | _____ | $200,000.00 |
| **Total Assets** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | |
| **Less: Unsecured Debts (Not secured by mortgages or other liens):** | | | |
| I am a guarantor of a mortgage in the amount of | _____ | _____ | |
| of $3.1 million. Although I do not own the underlying | _____ | _____ | |
| property, a limited partnership, which is owned | _____ | _____ | |
| 90% by Labor Force of America. | _____ | _____ | < $645,000.00 > |
| **Total Unsecured Debts** Credit Cards, etc., Legal . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | $1,385,874.00 |
| **Equals: Net Worth** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | $2,020.92 |

**Monthly Cash Flow** (net income minus *necessary* expenses) . . . . . . . . . . . . . . . . . . . . . . . . . .

**Other Resources** (sources for loans or cash advances, likely increases in income or assets, likely decreases in expenses or obligations, regular expenditures for luxury items, estimate of true earning ability, etc.)

ASSETS OF CORPORATIONS:

| ESA | | | LABOR FORCE | |
|---|---|---|---|---|
| Fleet Trust Account less retention | $1,000,000. | | Putnam Mortgage | $400,000. |
| Accounts Receivable | $750,000. | | Receivables | $90,000. |
| SnowFlake | $700,000. | | Note Receivable | $48,000. |
| | | | Note Contemporary | $199,000. |
| Total | $2,450,000. | | Total | $737,000. |

## JOSEPH GALL PERSONAL FINANCIAL STATEMENT

### BANK ACCOUNTS

| | NAME OF INSTITUTION | ADDRESS | TYPE OF ACCOUNT | ACCOUNT NUMBER | PERSONAL/ COMMERCIAL | BALANCE |
|---|---|---|---|---|---|---|
| INDIVIDUAL/ JOINT | | | | | | |
| INDIVIDUAL | FLEET BANK | MILFORD, CT | CHECKING | 2996239 | LASOA BUIL BUSINESS | $435.00 |
| INDIVIDUAL | PEOPLES BANK | ORANGE, CT BRANCH | SAVINGS | | PERSONAL | $4,955.00 |
| INDIVIDUAL | FLEET | MILFORD, CT | SAVINGS | 1560224053 | PERSONAL | $2,557.00 |
| INDIVIDUAL | FLEET | MILFORD, CT | SAVINGS | 3581129106 | PERSONAL | $2,495.00 |
| INDIVIDUAL | WEBSTER | MILFORD, CT | SAVINGS | 3012804589 | PERSONAL | $2,500.00 |
| INDIVIDUAL | WEBSTER | MILFORD, CT | SAVINGS | 3583005572 | PERSONAL | $2,500.00 |
| INDIVIDUAL | WEBSTER | MILFORD, CT | SAVINGS | 3010246578 | PERSONAL | $4,102.00 |
| INDIVIDUAL | MILFORD SAVINGS | MILFORD, CT | SAVINGS | 1227106735 | PERSONAL | $2,500.00 |
| INDIVIDUAL | NEW HAVEN SAVINGS | MILFORD, CT | SAVINGS | | PERSONAL | $8,800.00 |
| INDIVIDUAL | ROOSEVELT | BROOKLYN, NY | SAVINGS | 3027558803 | PERSONAL | $18,787.00 |
| INDIVIDUAL | ROOSEVELT | BROOKLYN, NY | SAVINGS | 302085686 | PERSONAL | $2,500.00 |
| INDIVIDUAL | ROOSEVELT | BROOKLYN, NY | SAVINGS | 402663201 | PERSONAL | $14,225.00 |

NOTES BANK ACCOUNTS - THE BALANCES IN THE BANK ACCOUNTS ARE APPROXIMATIONS.

### SECURITIES - SEE ATTACHED

| | NAME OF COMPANY | NUMBER OF UNITS | HOW ARE THEY HELD | FAIR MARKET VALUE | MARGIN |
|---|---|---|---|---|---|
| INDIVIDUAL/ JOINT | | | | | |
| INDIVIDUAL | EMPLOYEE STAFFING OF AMERICA | 50% | OWN NAME | SEE ATTACHED | |
| INDIVIDUAL | LABORFORCE OF AMERICA, INC. | 45% | OWN NAME | | |
| INDIVIDUAL | GALMAC/REAL ESTATE 76 SHERMAN AVE- NEW HAVEN, CT | 50% | OWN NAME | $100,000.- | $270,000.00 |
| GALMAC | GALMAC WAS A CORPORATION FORMED FOR THE SPECIFIC PURPOSE TO ACQUIRE A SINGLE PROPERTY AT 76 SHERMAN AVENUE, NEW HAVEN. IT IS MY UNDERSTANDING FROM OUR ATTORNEY THE CORPORATION WAS DISSOLVED BY OPERATION OF LAW IN 1990 FOR FAILURE TO | | | | |

1

## SECURITIES (CONTINUED)

FILE ANNUAL CORPORATE REPORTS. HOWEVER, I HAVE ALSO BEEN INFORMED THAT IF THE CORPORATION, AFTER SUCH A DISSOLUTION, HAS EXISTING MATTERS TO RESOLVE IT REMAINS IN EXISTENCE UNTIL THOSE MATTERS ARE COMPLETED. ACCORDINGLY, I AM UNSURE OF THE LEGAL STATUS OF THE STOCK OF THE CORPORATION. BY ITS DISSOLUTION IT CEASED TO EXIST. IT IS MY UNDERSTANDING THAT MY 50% INTEREST IN THE CORPORATION, WHICH REPRESENTED A 50% INTEREST (OWNERSHIP) IN THE PROPERTY, IS DIRECTLY TRANSFERRED TO ME PERSONALLY. HOWEVER, I AM UNSURE OF THE ACTUAL MECHANISM OR WHETHER IT IS AUTOMATIC.

## REAL ESTATE - SEE ATTACHED

| | ADDRESS | PURCHASE DATE & COST | FAIR MARKET VALUE | MORTGAGE BALANCE | MONTHLY PAYMENT | DATE MORTGAGE WILL BE PAID OUT |
|---|---|---|---|---|---|---|
| JOINT | | | | | | |
| | THE PROPERTY WAS PURCHASED FROM HUD BY BID. IT CONSISTS OF 22 UNITS. THE PROPERTY WAS SOLD BY HUD AND INCLUDED A RENT SUBSIDY IN THE FORM OF A HUD HAP AGREEMENT. THE AGREEMENT PROVIDES FOR A PORTION OF THE RENT FOR A PERIOD OF 15 YEARS TO BE PAID BY HUD. THE AMOUNT VARIES WITH EACH UNIT AND IS AFFECTED BY THE INCOME OF EACH TENANT. | | | | | |
| INDIVIDUAL JOINT | 385 PINETREE DRIVE ORANGE, CT ENCUMBERED BY BAIL BOND | 1974 - $53,000 | $185,000. $220,000.00 | $10,000.00 | $569.23 | 1999 |
| INDIVIDUAL | DURHAM, CT | 1986 $30,000.00 | NO VALUE, BECAUSE PROPERTY BORDERS CANNOT BE DETERMINED | N/A | N/A | N/A |
| | THE PROPERTY CONSISTS OF 16 ACRES ZONED RESIDENTIAL. THE PROPERTY IS AN INTERIOR PIECE OF LAND WHOSE BOUNDARIES HAVE NOT BEEN DETERMINABLE. ACCORDINGLY, A DISPUTE AROSE OVER THE BOUNDARIES WITH THE TOWN OF DURHAM WITH THE PROPERTY OWNERS REQUESTING THE TOWN OUTLINE THE BOUNDARIES OF THE PROPERTY AS A CONDITION OF THE OWNERS PAYING THE PROPERTY TAX. | | | | | |
| | BECAUSE THE BOUNDARY LINES OF THE PROPERTY ARE UNKNOWN, AND BECAUSE WITHOUT SUCH BOUNDARIES NO LAND MAY BE OWNED AND BECAUSE EVEN IF THE LAND DOES EXIST AS DESCRIBED BY THE DEED ITS VALUE IS LESS THAN THE COST OF THE PROPERTY, AND ANY POSSIBLE DEVELOPMENT THE OWNERS HAVE ELECTED TO GIVE UP THE PROPERTY INSTEAD OF PAYING THE TAXES. | | | | | |
| JOINT | 4464 PARK AVENUE BRONX | UNSURE APPROXIMATE $20,000-$25,000 | $75,000.00 NONE; MAYBE TAXES OWED | N/A | N/A | |
| | THERE IS CURRENTLY PENDING A SALE OF THIS PROPERTY. I HAVE BEEN A PASSIVE INVESTOR AND HAVE NEVER VISITED THE PROPERTY. | | | | | |
| | THE SALE PRICE IS FOR $ 75,000. ITS IS MY UNDERSTANDING NONE OF THE SALE PRICE WILL BE PAID IN CASH, BUT INSTEAD PART IN THE FORM OF AN AUTOMOBILE | | | | | |

## REAL ESTATE (CONTINUED)

| Type | Property | Year / Cost | Value | Mortgage / Owed | Payment | Notes |
|---|---|---|---|---|---|---|
| JOINT | 2105 DALY AVENUE<br>BRONX , NY | 1984-1985 | $17-$2.1 MILLION | $500,000.00 | $7,000.00 | HAS BALLOONED |
| | WHICH IS GOING TO A THIRD PARTY FOR WORK PERFORMED ON THE PROPERTY.<br>THE BALANCE IN THE FORM OF A NON-RECOURSE PURCHASE MONEY MORTGAGE.<br>MY PORTION ($325,000) TO BE PAID OVER THREE YEARS. | | | | | |
| JOINT | 124-130 E 117 TH ST<br>NY, NY | 1984-1985 | $1.8-$2.0 MILLION | $1.10 MILLION | APPROXIMATELY $12,950.00 | BALLOON 1998 |
| | TO MAINTAIN THE CURRENT RENT RECEIPTS, AS PART OF A LEASE, REQUIREMENT RENOVATION MUST BE<br>MADE TO A DAY CARE CENTER LEASED TO NYC. THE ESTIMATE COST OF THE RENOVATION<br>IS $300.00-$700,000. THIS AMOUNT NEEDS TO BE ADDED TO THE DEBT OF THE PROPERTY AND HAS BEEN<br>TAKEN INTO CONSIDERATION IN A CALCULATION OF NET WORTH. | | | | | |
| INDIVIDUAL | CHESHIRE/WALLINGFORD<br>TUTTLE FARMS ROAD<br>WALLINGFORD, CT | 1983+ PART IN 1985-1986<br>$625,000.00 | $800,000.00 | NONE<br>TAXES OWED | N/A | N/A |
| JOINT | WATERBURY<br>LAKESIDE BLVD. | 1985 $43,000.00 | | N/A | N/A | N/A |
| | THE PROPERTY IS ENCUMBERED BECAUSE OF A BANKRUPTCY FILING BY A ONE TIME 50% OWNER<br>TOGETHER WITH A MECHANICS LIEN | | | | | |
| JOINT | 383 EASTERN STREET<br>NEW HAVEN, CT | 1985-1986 $50,000.00 | | $165,000.00 NONE | N/A | N/A |
| INDIVIDUAL | 102 NEW HAVEN AVENUE<br>MILFORD, CT | 1987-1988 | $303,000.00 | $173,100.00 | $1,805.00 | HAS BALLOONED |

## CHARGE ACCOUNTS & LINES OF CREDIT

| INDIVIDUAL/JOINT | TYPE OF ACCOUNT OR CARD | CREDIT LIMIT | AMOUNT OWED | CREDIT AVAILABLE | MINIMUM MONTH |
|---|---|---|---|---|---|
| INDIVIDUAL | CHOICE VISA<br>ACCT. # 4428135131871879 | $4,000.00 | $0.00 | $4,000.00 | N/A |
| INDIVIDUAL | HOUSEHOLD MASTER CARD<br>ACCT. # 5401593001004272 | $300.00 | $0.00 | $300.00 | N/A |
| INDIVIDUAL | PEOPLES MASTER<br>ACCT. # 5418510003228389 | $5,500.00 | $361.81 | $5,438.19 | |

3

HAVE YOU EVER BEEN A PARTY TO ANY CIVIL SUIT? IF SO DATE, PLACE, PERSONS INVOLVED AND EXPLAIN.

I HAVE BEEN A PARTY TO SEVERAL LAWSUITS. THE FOLLOWING LIST OF LAWSUITS SHOULD INCLUDE ALL OF THEM. HOWEVER, IT IS POSSIBLE SOME LAWSUIT MAY HAVE BEEN DELETED.

| | | |
|---|---|---|
| 1 ESA V STRATEGIC HEALTH | U.S. DISTRICT COURT (NEW HAVEN, CT) | |
| THE ISSUE IS A CONTRACT DISPUTE. THE DEFENDANT HAS FILED COUNTER CLAIMS NAMING MYSELF AND SEVERAL OTHER ENTITIES. | | |
| 2 ORCINI,COTTER & CARSON v. INVESTMENT FUTURES & JOSEPH GALL | SUPERIOR COURT WATERBURY CT | |
| THE ISSUES CONCERN A DISPUTE ABOUT ENGINEERING WORK BY ORCINI RELATED TO SUBDIVISION OF RAW LAND. WE ARE COUNTER CLAIMANTS. | | |
| 3 ORCINI, COTTER & CARSON v. THOMAS MCLAUGHLIN, JOSEPH GALL, JOHN SCALESE (SUPERIOR COURT MERIDEN, CT) | | |
| SAME AS ABOVE EXCEPT INVOLVING A LAND SUBDIVIDE IN PROSPECT CT. | | |
| 4 NCCI ET AL v. ESA ET AL. - U.S. DISTRICT COURT - NEW HAVEN, CT | | |
| THE ISSUES INVOLVE ALLEGATIONS OF FRAUD AND BREACH OF CONTRACT AND COUNTER CLAIMS OF FRAUD, ANTITRUST AND BREACH OF CONTRACT | | |
| 5 NATIONAL UNION v. ESA & GALL - U.S. DISTRICT COURT (NEW HAVEN, CT) | | |
| THE ISSUES INVOLVE CLAIMS OF FRAUD AND BREACH OF CONTRACT - COUNTER CLAIMS INVOLVE FRAUD, ANTITRUST AND BREACH OF CONTRACT | | |
| 6 MCLAUGHLIN & GALL v NEDEAU - SUPERIOR COURT NEW HAVEN, CT | | |
| THE ISSUES RELATE TO A MORTGAGE IMPROPERLY PLACED ON RAW LAND | | |
| 7 MCLAUGHLIN & GALL ETAL v. IMAGINEERS, HANDLER & FRIAR ARTHUR ANDERSON ETAL. SUPERIOR COURT NEW HAVEN, CT | | |
| THE ISSUES RELATE TO LENDER INABILITY AND FRAUD AND A COUNTER CLAIM OF LIBEL | | |
| 8 MCLAUGHLIN & GALL v PAUL SWEETMAN & COUNTY WIDE CONSTRUCTION    SUPERIOR COURT NEW HAVEN, CT | | |
| THE ISSUES RELATE TO DISPUTE OVER CHARGES TO PERFORM CONSTRUCTION AND TO RECOUP FUNDS PAID TO A PENSION FUND | | |
| 9 MCLAUGHLIN & GALL v. SUMMIT, ROVERS, & FELDSMAN STATE COURT NY, NY | | |
| DISPUTE OVER LEGAL FEES, AND MALPRACTICE | | |
| 10 UNION TRUST v MCLAUGHLIN & GALL. SUPERIOR COURT NEW HAVEN, CT | | |
| THE ISSUE RELATES TO A MORTGAGE | | |
| 11 FLEET BANK v GALL. SUPERIOR COURT NEW HAVEN, CT | | |
| THE ISSUE RELATES TO A MORTGAGE | | |

| | | |
|---|---|---|
| 12 BREEN CAPITAL v GALL | SUPERIOR COURT NEW HAVEN, CT | COUNTER CLAIMS |
| ISSUES RELATE TO THE PURCHASE OF BACK PROPERTY TAXES FROM THE CITY OF NEW HAVEN BY BREEN | | |
| 13 NATIONAL UNION V ESA & GALL | BREACH OF CONTRACT & FRAUD - ESA COUNTER CLAIMS | |

CERTIFICATION

I DECLARE, THAT I HAVE EXAMINED THE INFORMATION GIVEN IN THIS STATEMENT AND, TO THE BEST OF MY KNOWLEDGE AND BELIEF, IT IS TRUE, CORRECT, AND COMPLETE, AND I FURTHER DECLARE THAT I HAVE NO ASSETS, OWNED EITHER DIRECTLY OR INDIRECTLY, INCOME OF ANY NATURE OTHER THAN AS SHOWN IN THIS STATEMENT.

| SIGNATURE | SOCIAL SECURITY | DATE |
|---|---|---|

ADDENDUM TO FINANCIAL STATEMENT
OF JOSEPH GALL

The following information corresponds to the questions raised by the government. Each response corresponds to the numbered question of the government's letter:

**1. a.**   With respect to both LFA and ESA neither have any ongoing operations. Each separately has some assets and liabilities.

No financial statement for either corporation has been promulgated beyond 1992. These were provided to the government several years ago. Of course, these are now obsolete because they do not reflect the current status, and information concerning their assets and liabilities is included in this addendum.

**REAL ESTATE:**

Two properties are listed on the financial statement whose value is reported as not determinable. A brief explanation is provided on the statement:

1.      Property in Durham, CT. The property consists of 16 acres zoned residential. The property is an interior piece of land whose boundaries have not been determinable. Moreover, even if the land does exist as described by the deed its value is less than the cost of the property and any possible development. Accordingly, the owners have elected to give up the property instead of paying the taxes".

The taxes owed are about $10,000 - $12,000. While the property was appraised at $50,000 by the town, the value presupposes that the property boundaries are as described. Because such a determination has not been possible, and because research has revealed that the property while discernible on a map may have been absorbed into surrounding property, the value of the property is diminished to where there is no attributable value.

1

2.    The second property listed on the financial statement without a value is some 9+ acres in Waterbury. The property is capable of yielding approximately 18-24 single family lots (no approvals in place). The property is owned 50% by Gall and 50% by Tom McLaughlin. It is encumbered with a mechanics lien and lawsuit resulting from engineering work. The claimed value of the engineering work is about $60,000. Counter claims exist. Moreover, a break in the chain of title resulting from a former partner of McLaughlin & Gall's bankruptcy also must be addressed. While the property developed potentially has a substantial net value, e.g. $200,000-$600,000 or more depending on the cost of improvements and other costs, Gall is unable to engage in such an undertaking. Accordingly, a determination of the value of the property, in light of the lawsuit, the undeveloped status and the defect in the title, is not reasonably possible.

b.    Over the past few years there has been appraisals performed on some of the listed properties. None were commissioned by the owners.

c.    The last year for which a personal tax return was filed by Gall was for 1995.


**LFA-ESA TAX RETURNS**

Tax returns and amended returns have been prepared through 1992. Tax returns for the periods thereafter have not been prepared. The corporations during the years 1993-1996 lost in excess of $10 million, and accordingly there should be no tax liability for either of these years. Gall was not involved in the accounting aspects of the corporations. Each is inactive with no employees. Because of the large losses and unavailability of anyone familiar with the records and the cost to prepare tax returns, which undoubtedly would exceed $100,000 for the years in question, such an undertaking, other than in part, has been prevented from going forward.

d.    No balance sheets have been prepared for at least 4 years or longer. The information cited by the government as examples listed on the financial statement e.g. under "other debts". On the statement that says that "I am a guarantor on a mortgage in the amount of $3,100,000,

although the property is not in my name. The property or limited partnership is 90% owned by LFA". Additionally, the tax returns for LFA reflect a 90% ownership by MacGall. These tax returns were provided to the government years ago. With respect to the funds in RI this is an asset of ESA not Gall, and has been disclosed for years.

e.     A list of the assets, potential assets, and liabilities is being attached. (Addendum A).

f.     The information requested by (f) is not clear.

g.     At the time ESA was formed 50% of the stock was issued to McLaughlin. Gall held it in trust for McLaughlin.

h.     The LASOA building is 1184 Chapel St., New Haven, and is listed. It was so named because at one time corporate offices were going to be moved to it. LFA's New Haven office was in it.

## HURAMCO AND LASOA

The two corporations were formed in the early 1980ies. Both corporations have been dissolved since approximately 1990-1991.

The corporations were inactive. Activity which appears to have taken place, e.g. deposits in banks, wire transactions, etc., resulted from deposits from LFA or ESA. The funds under either name were accounted for and included within the LFA and ESA tax returns. Funds from ESA and LFA were apparently transferred into LASOA and HURAMCO accounts during a period when numerous banks were failing and the FDIC's decision to guarantee funds in excess of $100,000 in each account was uncertain and made in reference to each bank on a bank-by-bank basis.

Apparently the origin of the funds in each bank account was maintained and the amount of cash in each account was added to the cash of either ESA or LFA (in accordance with its origin) on each respective tax return. As funds were needed by LFA or ESA amounts were transferred to LFA or ESA bank accounts from HURAMCO or LASOA accounts. During periods where excess funds in LFA or ESA bank accounts occurred transfers were again made to the HURAMCO and LASOA accounts. Since LASOA and HURAMCO were inactive, without business operations of their own, the bank accounts established under each respective corporation's name were treated as if each was in the name of either ESA or LFA in accordance with the origin of the funds, that is whether the funds came from ESA or LFA. Because of the large number of bank accounts which were established (40-50), and because of the substantial activity and transactions between various bank accounts many exchanges of money took place between the accounts. Additionally, any interest earned from the accounts was added as income to the respective corporations (LFA or ESA).

There appears to be one exception and that is in Massachusetts. Payroll checks were issued from HURAMCO to Employees in Mass. However, here too the activity was included within ESA's tax return.

TVMJ/Putnam Square, L.P. - This relates to the Putnam Square project and may have been some entity created by attorneys for the sole purpose to process the sale of the project and Low Income Housing Tax Credits to the Richmond Group.

1.    The $400,000 mortgage is in Gall's personal name although it should have been in LFA's because LFA's investment and loss in the project is greater than Gall's.

j.    Gall is not personally a party to the API lawsuit the corporation is.

AIG - Gall is a named party.

2.     Because Ms. Stevens at the time felt that she had worked hard in developing LFA and because of a personal dispute between them (Gall & Stevens) Gall gave Stevens 55% of the stock of the company. The tax returns for 1987, 1988, and 1989 were filed late and at the same time. Accordingly, they were not reviewed and Hull was not aware of the changes in stock ownership.

**ESA** - The government has a copy of the corporate book for ESA in which the 50% ownership to McLaughlin is reflected . Gall holding it as trustee.

## McLAUGHLIN

Mr. McLaughlin, at his sentencing hearing, referenced a claim made against him by Gall for $4.9 million, and because of this liability McLaughlin's assets were reduced to zero, yet Gall did not list the $4.9 million from McLaughlin as an asset on the personal financial statement he submitted to the government.

It was not listed on the financial statement because the liability referenced by McLaughlin at his sentencing represents an accounting reconciliation of the capital contributions made by each in the acquisition of property held individually or in some other form by them. (A copy of the reconciliation is attached as Addendum B).

The accounting identifies each property acquired in partnership. For each property the amount of the contribution is listed by individual check. A total for each is calculated and a credit is given for any funds returned either by a sale, refinance, or by any other means.

While the reconciliation is readily self-explanatory each of its respective schedules represents the following:

**Schedule I:**     Breakdown of capital contributions for each project and reconciliation

**Schedule II:**  Credits.

**Schedule III:**  Additional scheduling for UPACA / TRINITY.

**Schedule IV:**  ESA / LFA Payroll for the Greens.

**Schedule V:**  Sherman / Scranton.

**Schedule VI:**  Putnam.

**Sheet I:**  Provided by McLaughlin as his contribution.

The funds for various projects came from entities which shared in the transaction.  For example: MacGall (or the Greens).

**The Greens - MacGall Associates**

The property, a Limited Partnership, is owned 90% by LFA and 10% by McLaughlin. Gall is not an owner.  Nevertheless, Gall as a General Partner is a guarantor of the mortgage. The current outstanding balance of the mortgage is approximately $3.1 million.

**Scotco Data Com., Inc. (Scotco)**

Scotco was a publicly traded corporation whose operation had ceased many years before ESA's involvement  leaving a public shell corporation in 1983.  Its directors approached ESA to consider a merger and for the surviving corporation to be named ESA.  An accord was reached and agreements drafted, (see Addendum C ).  After two years or more of negotiation the agreement to merge was withdrawn.

6

As part of the initial agreement stock was purchased from a director (Howard Bowes). LFA held title to the stock until 1995 at which time it was sold.

## MORTGAGES:

Gall is beneficiary of a mortgage from his sister and brother-in-law in the amount of $119,000. The mortgage was placed on the property when the Hirsches were faced with financial problems. Although Gall has been providing the family with their complete financial support for many years, it was not intended that any repayment of the mortgage be made.

### Bonnie Pozefsky:

A mortgage in the amount of $45,000 was executed. Pozefsky insisted upon repaying Gall. Gall refused the mortgage finally giving in. The mortgage does not provide for interest. Gall has never requested any payment nor was it ever expected that the mortgage would be repaid.

### Putnam Square Associates

Putnam Square Associates (a limited partnership). As part of the purchase of Low Income Housing Tax Credits by the Richmond group provided to Gall was a "cash flow, none-foreclosure" mortgage. The amount of the mortgage is $400,000. The mortgage in part provides that it may not be foreclosed even in the event of none payment of the interest. The mortgage does not balloon until 2014. Accordingly, its current value is greatly diminished to possibly $25,000 to $50,000.

### Prentice House, Inc.

This is a corporation which was formed to construct a 90 unit condominium project. Because all of the units free and clear of a mortgage were transformed to a trust to satisfy an obligation of county wide construction, a 50% owner of the project. The 17% interest currently held by me has a value of only about $15,000.

**Snowflake, LLC.**

The entity was established to develop property in Torrington. The property had been partially developed when it was obtained and the 16 condominiums that were in partial stages of construction were sold. The property which had initially been zoned and developed as a 302-unit condominium project was being reconfigured to a single family house development. The zoning change has not been completed to date.

**Value of Property:**

The value of the property will be determined by the change in zoning. Although no appraisals have been recently conducted, the value of the property is about $500,000 to $700,000.

**LFA**

**ASSETS:**

1.   **MacGall:-** 90% Limited Partner. Currently no equity exists because mortgage balance exceeds the value of the property. (Mortgage balance is $3.1 million. Appraised value is $1.7 million.

2.   $400,000 Mortgage held by Joseph Gall for its benefit.

8

3.  $199,000 Note Receivable from Contemporary Personnel Services. While formal notes or other loan documents were apparently not executed, Contemporary Personnel acknowledges the obligation.

4.  Accounts Receivable:- The amount of the accounts receivable is approximately $100,000, and may in fact be lower. A schedule is being compiled and verified.

5.  Notes Receivable - Secured and unsecured:- Approximately $48,000 due from individuals.

6.  Contingent Assets:- Several lawsuits which may result in awards, but now will be abandoned.


## LIABILITIES:

1.  The corporation has a liability for employer state unemployment taxes. This has been ongoing for almost 1-2 years. As a result of the state assessment Ms. Stevens had negotiated an agreement with the state. LFA apparently kept to this schedule as best it could until it ceased operations in November 1996. The outstanding balance is not known but is in excess of $350,000.

2.  Issues from an IRS audit resulting in an assessment of about $400,000. LFA disagreed and appealed. The issue is currently pending in the tax court. Even if the tax assessment is upheld no tax liability should exist, because for these years additional deductions for expenses had not been taken. Amended returns have been prepared and only need to be filed which would negate most of the liability.

3.  LFA may have some trade payables estimated at $15,000 to $25,000.

4.  A few workers' compensation cases remain unresolved. Their approximate value is $35,000-$60,000. LFA has been paying them on an ongoing basis. Because LFA is jointly

responsible for restitution of the amount of premium due insurers, the result is a negative net worth.

## ESA

### ASSETS:

(i) **Trust Account - Fleet Bank, RI:-** Workers' Compensation Trust Account established for Self- Insurance has about $1.0 million. The amount needed for future claims (IBNRs) should not exceed $400,000. Because of the circumstances, the state will likely wish to retain more of the $1.0 million than would otherwise be necessary.

(ii) **Accounts Receivable:-** The amount of the accounts receivable is approximately $750,000.

(iii) **Receivable From MacGall:-** The amount is about $2.3 million. However, because of the decrease in real estate values, it is most likely not collectible.

(iv) **SnowFlake, LLC.,** is an asset of ESA. Its estimated value is $500,000 to $700,000.

### LIABILITIES:

Restitution in the amount of $681,000 with respect to API in Massachusetts. Other restitution to insurers will exceed the assets.

### CONTINGENT ASSETS AND LIABILITIES:

Additional money is due ESA as a result of contract breaches and other issues but are the subject of litigation and will now be abandoned.

May 14, 1996

TO:      Tom McLaughlin

FROM:    Joseph Gall

The analysis of the capital accounts and advances to the partnership which follows chronicles the various amounts advanced and returned from the acquisition, construction , renovation, maintenance and sale of the several properties we have acquired in partnership. (see schedule I hereto attached)

Each project is separately listed, and where discrepancies exist with respect to amounts listed in your analysis you provided several months ago each is noted, as is any additional monies received. (see schedule II hereto attached)

Because of the need to obtain information from others and the aggregate value of the items compared to the total several items have not been included. For instance, other payments to Guy Wetmore. Similarly excluded is an amount of between $30,000-$50,000. paid to Rosenman & Colin for New Air representation, payments to Schneck, Weltman for the Greens & Summit litigation, to Caro & Graifman for the Greens & Summit litigation, to Kevin Ahern for OCC, Union Trust Loan on Prospect, Putnam litigation, Citi equity litigation, for the Saco Bog or Crystal or American Financial Group and so on. An estimate would place these amounts to be between $ 265,000-$400,000.

Other than the amounts referenced in your analysis which you list as a credit because of funds received by Gall from a sale or financing of a property or proceeds from an insurance recovery, you list your direct contribution to your capital account as $ 143,555.

Although, you list it as if it was a credit owed to you by Gall inactuality it represents your capital contribution to the projects which is separate from the other individual amounts which you list as money returned to Gall. The $ 143,555. is a capital contribution to your capital account as is Gall's, to be returned from the disposal of the property, refinancing etc.

Accordingly, this amount is deducted from the amount received by Gall. The remainder of $ 1,452,046. ($869,518.-$143,000.= $726,023.x 2) plus any other amounts uncovered which have been received and originated from one of the transactions is credited as

in offset against the aggregate amount advanced by Gall.

Additionally, is the issue of the tax credit from the Greens which was allocated 90% to LFA and 10% to Mclaughlin instead of 50% to each. To adjust for the credit which through 1995 provided LFA with approximately $ 1,020,000. more in tax credits than Mclaughlin and about $479,263.00 more of losses and depreciation $.50 for each one dollar of credit or $ 520,000. is credited, as if LFA purchased the credits and 30% of the extra depreciation LFA received because of the 90/10% split has also been credited. Accordingly, the total credit from both tax credits and depreciation is $663,778.00.(Schedule II itemizes the credit by project, and amount).

Finally, there is the matter of interest due Gall (which represents real dollars lost) on the outstanding balance of the advances.

Although a market rate was used in the calculation of the value of the tax credits from the Greens by using a rate higher than the rate Citi equity was to pay to buy the tax credits from MacGall the rate of interest applied on the outstanding balance owed to Gall is 4.75%, below any rate at which money at the time could have been borrowed, and below the average rates paid on CD's .

Moreover, interest is applied only as of 1990, eventhough the various amounts advanced commenced 7 years earlier (1983).

The capital advanced is $6,142.597.33. (see attached schedules). The amount of the credit applied against the amount advanced including $663,778.00 credit arising from the Greens is $2,230,176.00.  The amount due Gall is $ 4,996,235.89 including interest.

It is immediately event from the amount advanced that what appears to be equity for example in the NY buildings or Sherman etc. evaporates when the advances are added to the calculation.

This could have been avoided. For instance, the Greens which was acquired subsequent to the New York property should have been renovated with funds acquired by mortgages placed on the New York property up to a maximum amount or if lower the amount needed. Such a course should have been followed because it would have allowed for an equal amount of capital contribution by each of us. This is also true of the capital contribution involved in other projects e.g. Prospect , Waterbury, Kennsingston, Sherman & Scranton etc.

At the time the aggregate value of the New York buildings was about $ 4.7 Million. Mortgages of a 75% loan to value ratio would have made available about $ 3.6 Million or about $ 2.1 Million more than was borrowed. The $ 2.1 Million which would have represented an equal contribution from each of us coming from property owned jointly, would have alleviated a substantial proportion of the

...e which currently exists.

...his should have been addressed several years ago the ...te financial circumstances I currently occupy necessitates ...diate attention.

## SCHEDULE I

| PROJECT | | | | AMOUNT | CHECK # | DATE |
|---|---|---|---|---|---|---|
| | | DISBURSEMENTS | | | | |
| | | | | | | |
| NATIONAL HOME MORTGAGE | | | 1983-1985 | | | |
| | | INVESTMENT/MORTGAGES | | 30,000.00 | | 9/21/82 |
| | | BILL SHAMES TO BUY STOCK | | 35,000.00 | | |
| | | LOAN | | 2,000.00 | 5866 | 3/21/83 |
| | | LOAN | | 500 | | 9/29/82 |
| | | | | | | |
| | | SUB TOTAL | | 67,500.00 | | |
| | | | | | | |
| SERAVELLI | | | | | | |
| | | CITY TRUST BANK - FEE TO | | 12,000.00 | 5849 | 3/7/83 |
| | | OBTAIN LETTER OF CREDIT | | | | |
| | | | | | | |
| | | SUB TOTAL | | 12,000.00 | | |
| | | | | | | |
| MONITOR/BATTER | | | | | | |
| | *** | MONITOR PURCHASE | | 67,451.96 | 5643 | 2/1/83 |
| | *** | BATTER PURCHASE | | 18,906.86 | 5642 | 2/1/83 |
| | | | | | | |
| | | SUB TOTAL | | 86,358.82 | | |
| | | | | | | |
| | *** CHECKS MADE TO TVM | | | | | |
| UPACA/TRIINITY 1983,84,85 | | | | | | |
| | | PURCHASE UPACII | | 27,000.00 | 5886 | 3/25/83 |
| | | TAXES UPACII | | 2,000.00 | 5887 | 3/25/83 |
| | | PALEN MANAGEMENT | | 7,500.00 | 6074 | 5/3/83 |
| | | | | | | |
| | | JOHN/JOSEPH SERAVALLI | | 5,100.00 | 6272 | 6/9/83 |
| | | | | | | |
| | | CITY TRUST FOR LETTER OF | | 8,700.00 | 6394 | 7/5/83 |
| | | CREDIT | | | | |
| | | | | | | |
| | | KATZMAN, ORZINE ASSOCI. | | 1,700 | 6355 | 7/1/83 |
| | | INSURANCE | | | | |
| | | | | | | |
| | | CBT FOR SERAVALLI | | 1,688.00 | 6412 | 7/11/83 |
| | | BRIAN BERGER-APPRISAL | | 1,500.00 | 7147 | 9/1/83 |
| | | GUY WETMORE-REPAIRS | | 8,405.00 | | |
| | | ROBERTO BAEZ-REPAIRS | | 6,000.00 | 6764 | 12/21/83 |
| | | PALEN-PAINTING | | 3,250.00 | 6245 | 6/6/83 |
| | | | | | | |
| | | GREG MUSTIMS-WORK FOR | | 77 | 8651 | 9/13/83 |
| | | | | | | |
| | | GUY WETMORE | | | | |

| PROJECT | DISBURSEMENTS | AMOUNT | CHECK # | DATE |
|---------|---------------|--------|---------|------|
| UPACA/TRINITY CONT. | | | | |
| * | MIKE TOMASKO- WORK FOR | 862.5 | | |
| | GUY WETMORE | | | |
| | ADC - SUPPLIES | 176.13 | 7510 | 2/14/84 |
| * | DENZIL WILLIAMS-PAINTING | 1,005.00 | | |
| | SHERWIN WILLIAMS-PAINT | 305 | 11273 | 5/13/83 |
| | MR. DEMENTOS-PAINT | 2,665.00 | 6176 | 5/16/83 |
| | GEORFRY SILVERSTEIN | 42.5 | 6213 | 6/3/83 |
| * | MIKE PLUDE | 250 | | |
| | THOMAS HOWEL | 350 | 6266 | 6/8/83 |
| | TRINITY-APPLICATION | 5,000.00 | 18824 | 2/24/88 |
| | TRINITY-FLEET BANK-FEE | 5,000.00 | 1356CNB | 9/13/91 |
| | FOR LOAN | | | |
| | CITI BANK-FEE TO EXTEND | 20,000.00 | 1379CNB | 11/14/91 |
| | LOAN-TRINITY | | | |
| | 1993 & 1994 MONEY DRAW | 127,000.00 | | |
| | BY MCLAUGHLIN NOT TAKEN | | | |
| | BY GALL | | | |
| | SUB TOTAL | 235,576.13 | | |
| * SEE SCHEDULE III | | | | |
| GREENS HARTFORD | | | | |
| | CAPITOL HOUSING | 8,447.29 | 15963 | 3/15/87 |
| | INTEREST | | | |
| | CITY TRUST -INTEREST ON | 2,239.39 | 177BB | |
| | LOAN | | | |
| | ANDERSON - ELECTRIC | 7,500.00 | 15925 | 3/18/87 |
| | GAS BILL | 32,000.00 | 16566 | 6/3/87 |
| | AFCO -INSURANCE GREENS | 8,283.86 | 17131 | 7/29/87 |
| | INTEREST ON GREENS | 8,872.74 | 17222 | 8/11/87 |
| ** | ESA/LFA PAYROLL GREENS | 2,354,506.14 | | |
| | ASBIN, JUNKEN- LEGAL FEES | 8,000.00 | 1354CNB | |
| | WASHINGTON LAW FIRM | | | |
| | DEPOSIT FOR PURCHASE | 86,300.00 | 13232 | 3/19/86 |
| *** | PRE-PAID INSURANCE | 37,000.00 | 12975 | 5/6/86 |
| | HUD- EXTENSION OF CLOSING | 12,945.00 | 12929 | 4/30/86 |
| | BREWSTER-SUPPLIES | 265.57 | 15470 | Jan-87 |
| | BLAINE WINDOW-SUPPLIES | 251.04 | 18945 | 3/7/88 |

| PROJECT | DISBURSEMENTS | AMOUNT | CHECK # | DATE |
|---|---|---|---|---|
| GREENS/HARTFORD CONT. | | | | |
| | ROBERTO BAEZ-CONSTRUCT | 5,000.00 | 19418 | 5/10/88 |
| | HARLOC-SUPPLIES | 1,150.80 | 19851 | 7/14/88 |
| | MACGALL -INFUSION FUNDS | 1,401.00 | 19941 | 7/26/88 |
| | CAPITOL HOUSING-INTEREST | 19,254.09 | 101BB | 12/30/86 |
| | M & R CONTRACTING - CONSTRUCTION | 13,702.50 | 148BB | 12/30/86 |
| | MIKE DELAURENTIS- CONSTRUCTION | 8,400.00 | 155BB | 12/30/86 |
| | MIKE DELAURENTIS- CONSTRUCTION | 17,000.00 | 156BB | 12/30/86 |
| | MIKE DELAURENTIS- CONSTRUCTION | 12,000.00 | 158BB | 7/18/87 |
| | CAPITOL HOUSING-INTEREST | 17,000.00 | 159BB | 8/5/87 |
| | AFCO-INSURANCE-GREENS | 4,000.00 | 168BB | |
| | AFCO-INSURANCE-GREENS | 10,000.00 | 169BB | |
| | CITY TRUS INTEREST LOAN MCLAUGLIN/GALL # 620251-50870 | 6,185.94 | 1267CNB | 2/19/91 |
| | CITY TRUST-INTEREST LOAN MCLAUGHLIN/GALL # 6202501-50870 | 5,261.01 | 170BB | |
| | CITY TRUST-INTEREST LOAN MCLAUGHLIN/GALL # 6202501-50870 | 2,900.00 | 171BB | |
| | CITY TRUST INTEREST LOAN MCLAUGLIN/GALL # 6202501-50870 | 3,371.13 | 173BB | |
| | FRIAR ASSOC-ARCHITECT | 5,000.00 | 185BB | |
| | CITY TRUST INTEREST LOAN MCLAUGHLIN/GALL # 6202501-50870 | 7,331.66 | 188BB | |
| | CITY TRUST -INTEREST LOAN MCLAUGHLIN/GALL # 6202501-50870 | 14,149.58 | 201BB | 9/15/88 |

| PROJECT | | DISBURSEMENTS | AMOUNT | CHECK # | DATE |
|---|---|---|---|---|---|
| GREENS/HARTFORD CONT. | | | | | |
| | | MACGALL ADVANCE | 35,000.00 | 203BB | Sep-88 |
| | | INFUSION OF FUNDS | | | |
| | | | | | |
| | | MACGALL-ADVANCE- | 22,000.00 | 205BB | |
| | | INFUSION OF FUNDS | | | |
| | | | | | |
| | | CITY TRUST - REPAY LOAN | 401,755.38 | 210BB | |
| | | MANLEYS RUGS | 2,185.96 | 214BB | 1/9/89 |
| | | | | | |
| | | MACGALL-ADVANCE- | 3,333.00 | 218BB | 4/7/89 |
| | | INFUSION OF FUNDS | | | |
| | | | | | |
| | | KOSTIN & COMPANY- | 12,000.00 | 222BB | |
| | | ACCOUNTING FEES | | | |
| | | | | | |
| | | MACGALL- ADVANCE- | 5,100.00 | 189BB | |
| | | INFUSION OF FUNDS | | | |
| | | | | | |
| | | ABBIE WEIST-CONSULTING | 2,500.00 | 188BB | |
| | | | | | |
| | | JOHN WILLIAMS. ESQ. LEGAL | 15,000.00 | 201BB | |
| | | FEES | | | |
| | | | | | |
| | | MANLEYS-RUGS | 2,185.96 | 212BB | |
| | | SUMMIT-LEGAL FEES | 20,000.00 | 198BB | |
| | | ABBIE WEIST -CONSULTING | 1,000.00 | 1158CNB | 3/9/89 |
| | | ABBIE WEIST-CONSULTING | 1,000.00 | 1012CNB | 3/26/89 |
| | | | | | |
| | | CHARLIE JONES-ARCHITECT- | 2,700.00 | 486BB | |
| | | CONSULTING FOR LAWSUIT | | | |
| | | | | | |
| | | CHARLES JONES-ARCHITECT- | 900 | 508BB | |
| | | CONSULTING FOR LAWSUIT | | | |
| | | | | | |
| | | SUB TOTAL | 3,246,379.04 | | |
| | | | | | |
| | ** SEE SCHEDULE IV- | | | | |
| | *** CHECKS MADE TO TVM | | | | |
| SHERMAN/SCANTON | | | | | |
| | | PURCHASE | 40,000.00 | 8892 | 10/22/84 |
| | | | | | |
| | **** | DONALD MAINTENANCE | 9,145.26 | | |
| | | MATERIALS | | | |
| | | | | | |
| | **** | DONALD MAINTENANCE | 100,822.25 | | |
| | | PAYROLL | | | |
| | | | | | |

| PROJECT | | DISBURSEMENTS | | AMOUNT | CHECK # | DATE |
|---|---|---|---|---|---|---|
| SHERMAN/SCRANTON CONT | | | | | | |
| | | HUNT LEIBERT TRUSTEE | | 53.000 | 1312CNB | 5/20/91 |
| | | REAL ESTATE TAXES | | | | |
| | | | | | | |
| | | MORTAGE-PAYOFF | | 111,783.21 | | |
| | | RALPH CREGO ELECT | | 739.42 | 1203CNB | 5/5/92 |
| | | DEES CARTING | | 540.6 | 1182CNB | 3/12/92 |
| | | | | | | |
| | | PETRUCELLI ESQ-LEGAL | | 7,000.00 | 202BB | |
| | | KATHY COX SETTLEMENT FELL | | | | |
| | | ON PROPERTY | | | | |
| | | | | | | |
| | | SUB TOTAL | | 323,030.74 | | |
| | | | | | | |
| | **** SEE SCHEDULE V | | | | | |
| PUTNAM | | | | | | |
| | | | | | | |
| | | PURCHASE | | 36,000.00 | | |
| | ***** | DONALD LABOR | | 311,221.39 | | |
| | | FOR CONSTRUCTION | | | | |
| | | | | | | |
| | ***** | DONALD MATERIALS | | 345,553.34 | | |
| | | FOR CONSTRUCTION | | | | |
| | | | | | | |
| | | CT SAVING BANK-MORTGAGE | | 2,546.23 | 1110CNB | 2/13/90 |
| | | PAYMENT | | | | |
| | | | | | | |
| | | CT SAVING BANK-MORTGAGE | | 4,988.27 | 1136CNB | 3/29/90 |
| | | PAYMENT | | | | |
| | | | | | | |
| | | ED LAFLAMME-REIMBURSE | | 925 | 1106CNB | 9/28/88 |
| | | FOR SUPPLIES | | | | |
| | | | | | | |
| | | ED LAFLAMME-REIMBURSE | | 1,200.00 | 1125CNB | 11/8/88 |
| | | FOR SUPPLIES | | | | |
| | | | | | | |
| | | CHARLES WILINGER-LEGAL | | 2,000.00 | 1073CNB | 6/9/89 |
| | | | | | | |
| | | ED LAFLAMME-MORTGAGE | | 3,400.00 | 1157CNB | 3/5/89 |
| | | PAYMENT | | | | |
| | | | | | | |
| | | CT SAVING BANK-MORTGAGE | | 2,000.00 | 1054CNB | 9/6/89 |
| | | PAYMENT | | | | |
| | | | | | | |
| | | PUTNAM SQUARE -INFUSION | | 10,000.00 | 1256CNB | 1/22/91 |
| | | OF FUNDS | | | | |

| PROJECT | DISBURSEMENTS | AMOUNT | CHECK # | DATE |
|---|---|---|---|---|
| PUTNAM CONT | | | | |
| | CENTER BANK-MORTGAGE PAYMENT | 5,423.98 | 1240CNB | 7/20/92 |
| | CENTER BANK-MORTGAGE PAYMENT | 6,285.52 | 1254CNB | 8/19/92 |
| | ED LAFLAMME-MATERIALS LANDSCAPING | 3,200.00 | 1648B | |
| | CHARLES JONES–ARCHITECT | 1,550.00 | 165BB | |
| | CHARLES WILLINGER -LEGAL | 5,000.00 | 187BB | |
| | ED LAFLAMME-SUPPLIES | 4,039.00 | 217BB | |
| | CHARLES JONES–ARCHITECT | 5,000.00 | 230BB | |
| | CHARLES JONES–ARCHITECT | 5,000.00 | 233BB | |
| | CT SAVINS BANK-INTEREST | 2,580.48 | 238BB | |
| | CHARLES JONES–ARCHITECT | 5,000.00 | 239BB | |
| | CT SAVING BANK-INTEREST | 1,761.98 | 226BB | |
| | CHARLES JONES -ARCHITECT | 1,200.00 | 122BB | |
| | CT SAVING BANK-INTEREST | 5,493.75 | 123BB | |
| | CHARLES JONES–ARCHITECT | 500 | 126BB | |
| | CT SAVING BANK-INTEREST | 4,301.00 | 246BB | |
| | CT SAVING BANK-INTEREST | 8,001.00 | 291BB | |
| | CENTER BANK-INTEREST | 7,634.13 | 310BB | |
| | CENTER BANK-INTEREST | 5,758.13 | 311BB | |
| | CENTER BANK-INTEREST | 7,288.14 | 315BB | |
| | CT SAVING BANK-INTEREST | 2,200.00 | 109BB | |
| | CENTER BANK -SETTLEMENT | 193,000.00 | SAVINGS | |
| | LOAN | 98,000.00 | | |
| | SUB TOTAL | 1,098,051.34 | | |
| ***** SEE SCHEDULE VI | | | | |
| PRENTICE HOUSE | | | | |
| | PURCHASE | 175,000.00 | | |
| | SCHATZ,SCHATZ -DRAFT LAWSUIT SWEETMAN | 5,000.00 | | |
| | SUB TOTAL | 180,000.00 | | |
| PROSPECT | | | | |
| | PURCHASE | 43,001.00 | 11147 | 9/23/85 |
| | UNION TRUST-INTEREST | 10,788.89 | 1335CNB | 8/5/91 |
| | UNION TRUST-INTEREST | 3,124.00 | 1238CNB | 7/9/92 |
| | HAYES–FOR JULIANO | 14,129.45 | 227BB | |
| | UNION TRUST-INTEREST | 43,200.00 | 200BB | |
| | UNION TRUST-INTEREST | 6,244.00 | 1200CNB | 5/5/92 |

| PROJECT | DISBURSEMENTS | AMOUNT | CHECK # | DATE |
|---|---|---|---|---|
| PROSPECT CONT | | | | |
| | ORSINI, CARLSON, & COTTER ENGINEERING | 35,000.00 | 16120 | 4/2/87 |
| | MCLAUGHLIN ASSOC. | 321 | 12874 | 4/20/86 |
| | MCLAUGHLIN ASSOC. | 444 | 12875 | 4/29/86 |
| | GEORGE J. SMITH-INSURANCE | 3,307.00 | 14047 | 8/26/86 |
| | UNION TRUST-INTEREST | 8,276.44 | 285BB | |
| | UNION TRUST-INTEREST | 1,402.02 | 348BB | |
| | UNION TRUST-INTEREST | 7,200.00 | 478BB | |
| | RAY MARCARI-ROAD TEST TO DO PERK TEST | 10,000.00 | 138BB | |
| | KERSHNER-APPRAISAL | 2,200.00 | 476BB | |
| | GLEN MACDONNEL-PERK TEST WORK | 700 | 141BB | |
| | CHESPROCOTT-PERK TEST WORK | 1,800.00 | 146BB | |
| | HAYES-SETTLE FOR JOHN | 12,978.82 | 109BB | |
| | REAL ESTATE FUTURES | 4,000.00 | 15939 | 3/20/87 |
| | DEPEITRO, SCALESE- BANKRUPCY | 5,000.00 | 304BB | |
| | SUB TOTAL | 213,116.62 | | |
| WATERBURY | | | | |
| | PURCHASE | 25,000.00 | | |
| | TAXES WATERBURY ON ACCT | 6,000.00 | 1088CNB | 12/29/89 |
| | SUB TOTAL | 31,000.00 | | |
| EASTERN STREET PROPERTY | | | | |
| | PURCHASE | 50,000.00 | | |
| | SUB TOTAL | 50,000.00 | | |
| DURHAM | | | | |
| | LARRY & THOMAS | 20,750.00 | 213BB | |
| | SUB TOTAL | 20,750.00 | | |
| RAY /LOAN | | | | |
| | LOAN (JOE) | 10,000.00 | | |
| | SUB TOTAL | 10,000.00 | | |

| PROJECT | DISBURSEMENTS | AMOUNT | CHECK # | DATE |
|---|---|---|---|---|
| | | | | |
| ACTION MARKETING | | | | |
| | LOAN (JOE) | 12,000.00 | | |
| | ACTION MARKETING | 4,000.00 | 10122 | 4/15/85 |
| | | | | |
| | SUB TOTAL | 16,000.00 | | |
| | | | | |
| PHARMA CONTROL -GLUCOSE MONITOR | | | | |
| | | | | |
| | CHARLES REYNOLDS | 10,000.00 | | |
| | GMR ASSOCIATES | | | |
| | | | | |
| | GARY ARGRAVES -1992,1993 | 10,080.00 | | |
| | EQUIPMENT | | | |
| | | | | |
| | UNIVERSITY OF CT DONATION | 14,000.00 | | |
| | | | | |
| | SUB TOTAL | 34,080.00 | | |
| | | | | |
| CLINTON | | | | |
| | PURCHASE OF CLINTON | 36,693.00 | 185BB | |
| | | | | |
| | MCLAUGHLIN ASSOCIATES | 5,400.00 | 140BB | |
| | TAXES, INTEREST PAYMENTS | | | |
| | | | | |
| | SUB TOTAL | 42,093.00 | | |
| | | | | |
| LEGAL FEES | | | | |
| | KEN HARVEY | 1,000.00 | 101CNB | 3/27/89 |
| | KEVIN AHERN | 1,500.00 | 126BB | |
| | | | | |
| | PELLIOGRINO PROSPECT | 1,400.00 | 485BB | |
| | POE | | | |
| | | | | |
| | FREIDMAN 11/90-12/91 | 103,000.00 | | |
| | COMPUTER EQUIPMENT/ | | | |
| | MEDICAL BENEFITS/RENT ETC | | | |
| | GREENS | | | |
| | | | | |
| | SUMMIT -GREENS | 200,000.00 | | |
| | | | | |
| | JEAN FIRORE(673.08 | 41,846.12 | | |
| | SALARY /MEDICAL | | | |
| | | | | |
| | SUSAN KRAMER (769.23) | 33,615.52 | | |
| | SALARY/MEDICAL | | | |
| | | | | |
| | BOB MORRETTA (FBI) | 70,000.00 | | |

| PROJECT | | DISBURSEMENTS | | AMOUNT | CHECK # | DATE |
|---------|--|---------------|--|--------|---------|------|
| LEGAL CONT. | | | | | | |
| | | AHERN | | | | |
| | | | SUB TOTAL | 452,361.64 | | |
| | | | | | | |
| | | TOTAL | | 6,118,297.33 | | |
| | | | | | | |
| | | LESS CREDITS - INCLUDING | | 2,230,176.00 | | |
| | | ALLOWANCE FOR TAX CREDITS | | | | |
| | | | | | | |
| | | TOTAL | | 3,888,121.33 | | |
| | | 1990 INTEREST | | 184,685.76 | | |
| | | 1991 INTEREST | | 184,685.76 | | |
| | | 1992 INTEREST | | 184,685.76 | | |
| | | 1993 INTEREST | | 184,685.76 | | |
| | | 1994 INTEREST | | 184,685.76 | | |
| | | 1995 INTEREST | | 184,685.76 | | |
| | | | | | | |
| | | TOTAL | | 4,996,235.89 | | |
| BB | BANK OF BOSTON | | | | | |
| CNB | CONNECTICUT NATIONAL BANK | | | | | |

## SCHEDULE II

### CREDITS

| PROJECT | DISBURSEMENTS | AMOUNT |
|---|---|---|
| NATIONAL HOME MORTGAGE | | |
| | REPAYMENT OF MORTGAGE | 23,000.00 |
| MONITOR ARMS | | |
| | SALE OF PROPERTY | 256,356.00 |
| BATTER TERRACE | | |
| | SALE OF PROPERTY | 53,998.00 |
| TRINITY | | |
| | RETURN OF CON-EDISON ESCROW DEPOSIT | 15,000.00 |
| UPACA | | |
| | MORTGAGE FINANCING | 134,256.00 |
| | MORTGAGE FINANCING | 778,116.00 |
| | EMERGENCY REPAIRS | 4,856.00 |
| AMITY ROAD | | |
| | SALE OF PROPERTY | 58,816.00 |
| GREENS | | |
| | INSURNACE PROCEEDS FIRE | 62,000.00 |
| | TAX CREDITS +LOSSES +DEPRECIATION | 663,778.00 |
| CITY EQUITY/LEFKOWITZ | | |
| | LAW SUIT GREENS | 53,000.00 |
| SHERMAN | | |
| | MCLAUGHLIN TO PAY OFF MORTGAGE | 30,000.00 |
| CLINTON PROPERTY | | |
| | SALE OF PROPERTY | 97,000.00 |
| | TOTAL | 2,230,176.00 |

*BALANCE OF $100,000.00 OR APPROXIMATELY $ 47,000.00 GIVEN TO KEVIN AHERN WHO DISTRIBUTED THE FUNDS FROM HIS ESCROW ACCOUNT TO VARIOUS EXPENSES, BOTH GALL AND MCLAUGHLIN WERE OBLIGATED TO PAY. ( AHERN INDICATES HE GAVE COPIES OF CHECKS TO MCLAUGHLIN AND GALL.)

## SCHEDULE III

### UPCA/TRINITY BREAKDOWN

| NAME | CHECK # | DATE | AMOUNT |
|------|---------|------|--------|
| MIKE PLUDE | 6215 | 6/3/83 | $ 80.00 |
| | 6304 | 6/10/83 | $ 170.00 |
| | | | |
| | TOTAL | | $ 250.00 |
| | | | |
| MIKE TOMPSAK | 6187 | 5/27/83 | $ 80.00 |
| | 6214 | 6/3/83 | $ 167.50 |
| | 6279 | 6/17/83 | $ 200.00 |
| | 6305 | 6/10/83 | $ 215.00 |
| | 6329 | 6/24/83 | $ 200.00 |
| | | | |
| | TOTAL | | $ 862.50 |
| | | | |
| GUY WETMORE | 6001 | 4/1/83 | $ 400.00 |
| | 6026 | 4/25/83 | $ 250.00 |
| | 6115 | 5/12/83 | $ 350.00 |
| | 6132 | 17-May | $ 500.00 |
| | 6141 | 5/19/83 | $ 495.00 |
| | 6155 | 5/23/83 | $ 560.00 |
| | 6189 | 5/27/83 | $ 150.00 |
| | 6280 | 6/17/83 | $ 500.00 |
| | 6303 | 6/10/83 | $ 500.00 |
| | 6330 | 6/24/83 | $ 500.00 |
| | 6389 | 7/5/83 | $ 300.00 |
| | 6413 | 7/12/83 | $ 400.00 |
| | 6471 | 7/22/83 | $ 500.00 |
| | 6499 | 7/28/83 | $ 500.00 |
| | 6978 | 8/5/83 | $ 500.00 |
| | 7612 | 8/12/83 | $ 500.00 |
| | 10510 | 5/1/83 | $ 500.00 |
| | 11275 | 5/13/83 | $ 1,000.00 |
| | | | |
| | TOTAL | | $ 8,405.00 |
| | | | |
| WILLIAM DENZIL | 10467 | 5/1/83 | $ 405.00 |
| | 10909 | 5/8/83 | $ 300.00 |
| | 11274 | 5/13/83 | $ 300.00 |
| | | | |
| | TOTAL | | $ 1,005.00 |

### SCHEDULE IV

#### ESA/LFA PAYROLL FOR GREENS HARTFORD
#### 4 BOXES LILLIAN BOWMAN

| YEAR | GROSS PAYROLL | 28% | TOTAL BILLS |
|---|---|---|---|
| 1986 | 118,549 | 33,193.73 | 151,742.76 |
| 1987 | 947,312.22 | 265,247.42 | 1,212,559.64 |
| 1988 | 341,235.05 | 95,545.81 | 436,780.86 |
| 1989 | 217,584.24 | 60,923.59 | 278,507.83 |
| 1990 | 92,902.38 | 26,012.67 | 118,915.05 |
| TOTAL | 1,717,583 | 480,923.22 | 2,198,506.14 |
| | | DONALD/AL ROOG | 156,000.00 |
| | | TOTAL | 2,354,506.14 |

## SCHEDULE V

### SHERMAN/SCANTON

| YEAR | | PAYROLL |
|------|---|---------|
| 1990 | | 13,932.00 |
| 1191 | | 22,392.50 |
| 1992 | | 31,996.00 |
| 1993 | | 14,543.25 |
| 1994 | | 14,486.50 |
| 1995 | | 3,472.00 |
| | TOTAL | 100,822.25 |
| | | MATERIALS LFA |
| 1993 | | 3,975.97 |
| 1995 | | 5,169.29 |
| TOTAL | | 9,145.26 |

## SCHEDULE VI

**PUTNAM**

| YEAR | PAYROLL |
|---|---|
| 1990 | 20,364.00 |
| 1991 | 141,435.14 |
| 1992 | 76,678.50 |
| 1993 | 8,871.25 |
| 1994 | 12,977.50 |
| 1995 | 8,895.00 |
| SUB TOTAL | 269,221.39 |
| DONALD | 42,000.00 |
| TOTAL PAYROLL | 311,221.39 |

**MATERIALS**

| | LFA | ESA |
|---|---|---|
| 1991 | 63,509.44 | 139,376.77 |
| 1992 | | 141,446.16 |
| 1995 | 1,220.97 | |
| SUB TOTAL | 64,730.41 | 280,822.93 |
| TOTAL MATERIALS | | 345,553.34 |

| | | | | | |
|---|---|---|---|---|---|
| Prepared By | | | | | |
| Approved By | | | | | |

WILSON JONES COMPANY    G7206 GREEN    7206 BUFF    MADE IN U.S.A.

EXPENS.

| Date | Description | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|---|
| 8/8/95 | 7-30-95 | | | | | | |
| | CANCELED 6,467.00 7IMG IN BUS #3527 | | | | 20434311 | | |
| | PER LETTER 8/8/95 BAL | | | /615 | 8/16/95 | 25010000 | |
| 9/1/95 | AUG 95 | 40000.00 | | 451.09 | | | |
| | (NOTED MONTHY AGREEMENT 8/95 40000.00) | | | | | | |
| 10/2/95 | SEPT 1995 | 40000.00 | | 74492 | | | |
| | 9-1-30-95 | | | | | | |
| | OCT 1995 | 40000.00 | | | 183 10/2/95 | 30000.00 | |
| | ( BAL THEIRS 85000.00) | | | | | | |
| 11/8/95 | NOV 1995 | 40000.00 | | | 2679 11/15/95 25000.00 | | |
| | 11-95 | | | 6N135 | | | |
| 1/5/96 | DEC 1995 | 40000.00 | | 155.03 | 307 1/1/96 | 25000.00 | |
| | DEC 1 95 31-95 | | | | | | |
| 2/5/96 | JAN 1995 | 40000.00 | | 42762 | | | |
| | 1-1-31-96 | | | | | | |
| 3/1/96 | FEB 96 | 40000.00 | | 26581 | | | |
| | 2-1-29-96 | | | | | | |
| 4/1/96 | MARCH 96 | | | 741179 | | | |
| | 3-1-31-96 | | | | | | |

Sheet1

| Date | Item | Amount | Description |
|---|---|---|---|
| Various | Attached Checks | 143555 | |
| 10/15/87 | Monitor Arms | 98178 | Gave J.G. check for $256356.79; one half |
| | | | of it less J.G.'s $30,000. deposit belongs |
| | | | to TVM |
| Oct-88 | Morsemere Federal | 9375 | Re commitment fee, T.V.M. endorsed over |
| | | | to J.G. the ck in amt. of 18,750 |
| Dec-88 | Batter Terrace | 17545 | The proceeds of $53,998 went to J.G., sub- |
| | | | tracting his deposit of $18,907 = $35,091 |
| | | | and 1/2 of that is to TVM's credit |
| 2/13/89 | Morsemere Federal | 67128 | TVM endorsed over to J.G. an escrow ck |
| | | | in amt. of $134,256.84 - 1/2 of it is to TVM's |
| | | | credit |
| 4/1/89 | Con Ed | 7500 | $15,000. ck from Con Ed's escrow on Trinity |
| | | | endorsed over to J.G., 1/2 to TVM's credit |
| 7/9/87 | 731 Amity Rd. | 43158 | J.G. got TVM's share of proits, 15,658.36 |
| | | | plus TVM's deposit of $27,500 |
| 8/29/88 | UPACA Mtg. | 389058 | Net proceeds = $1,028,117.43  less |
| | | | $125,000 that J.G. gave TVM |
| Nov-91 | Clinton Property | 37,153 | ; $97,000 went to J.G.; J.G's contribution = |
| | | | $32,693(his personal ck #185 on 7/1/89); |
| | | | TVM's contribution = $10,000. therefore, the |
| | | | profit = $27,153.50  each. , so TVM's credit |
| | | | equals 27,153 each |
| 6/15/92 | Gary Lefkowitz | 23,500 | 100,000 to J.G. less $53,000. J.G. pd 4 taxes |
| | | | 1/2 bal. to TVM's credit |
| ? | Bedford St. Fire | 31,000 | fire check of $62,000 +/- went direct to J.G. |
| | | | 1/2 is credit to TVM |
| ? | Emer Repairs/UPACA | 2428 | Ck of $4,856.63 on UPACA wnet direct to J.G. |
| | | | 1/2 is to TVM's credit |
| ? | Perkins Street | | Still need to ck out. I believe it went to J.G. |
| | | 869578 | |

**Exhibit C**



CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

THIS MORTGAGE, made the  30  day of  April  , nineteen hundred and  ninety-seven .

BETWEEN

        Joseph Gail
        385 Pine Street
        New Haven, CT

                                          , the mortgagor,

and

        Caro & Graifman, P.C.
        60 East 42nd Street, Suite 2001
        New York, NY 10165

                           Eight Hundred Thousand XX/100
                           ($800,000.00) , the mortgagee.

WITNESSETH, that to secure the payment of an indebtedness in the sum of ~~three hundred fourty thousand and xx/100 ($340,000.00)~~ dollars,
lawful money of the United States, to be paid

with interest thereon to be computed from the date hereof, at the rate of ~~per-centum~~ per annum, and to be paid ~~on the~~ day of ~~19~~ next ensuing and ~~thereafter,~~

                                      according to a certain bond,
note or obligation bearing even date herewith, the mortgagor hereby mortgages to the mortgagee his ~~fifty percent tenants in common interest in~~ all of his right, title and interest in and to ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the  county of  the Bronx, City of New York and State of New York, familiarly known as 2105 Daly Avenue Bronx, N.Y.
particularly described in Schedule "A" annexed hereto.

And all that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the County, City and State of New York, familiarly known as 124-136 East 117th Street, New York, New York, as more particularly described in Schedule "A" annexed hereto.

The properties described above and in Schedule "A" annexed hereto are individually and collectively referred to herein as the "premises".

                          Over G faulion

EXHIBIT C

REEL 2456 PG 2183    REEL 1460 PG 1230

TOGETHER with all rights, title and interest of the mortgagor in the premises...

TOGETHER with all fixtures, articles and articles of personal property now or hereafter...

TOGETHER with all awards heretofore and hereafter made to the mortgagor for taking...

AND the mortgagor covenants with the mortgagee as follows:

1. That the mortgagor will pay the indebtedness as hereinbefore provided.

2. That the mortgagor will keep the buildings on the premises insured against loss by fire...

3. That no building on the premises shall be altered, removed or demolished without the consent of the mortgagee.

4. That the whole of said principal sum and interest shall become due at the option of the mortgagee...

5. That the holder of this mortgage in any action to foreclose it shall be entitled to the appointment of a receiver.

6. That the mortgagor will pay all taxes, assessments or water rates...

7. That the mortgagor within five days upon request in person...

8. That notice and demand or request may be in writing...

9. That the mortgagor warrants...

10. That in the event of...

REEL 2 4 5 6 PG 2 4 0 9

REEL 1 4 6 6 PG 1 2 3 1

13. ...that the mortgagor hereby assigns to the mortgagee ... of the premises as further security for the payment of said indebtedness, and the mortgagor grants to the mortgagee the right to enter upon and to take possession of the premises for the purpose of collecting the same and to let the premises or any part thereof, and to apply the rents, issues and profits, after payment of all necessary charges and expenses on account of said indebtedness. This assignment and grant shall continue in effect until this mortgage is paid. The mortgagor hereby waives the right to enter upon and to take possession of said premises for the purpose of collecting said rents, issues a..d profits, and the mortgagor shall be entitled to collect and receive said rents, issues and profits until default under any of the covenants, conditions or agreements contained in this mortgage, and agrees in case such rents, issues and profits in payment of principal and interest becoming due on this mortgage and in payment of taxes, assessments, sewer rents, water rates and carrying charges becoming due against said premises, but such right of the mortgagor may be re...d by the mortgagee upon any default, on five days' written notice. The mortgagor will not, without the ... ten consent of the mortgagee, receive or collect rent from any tenant of said premises or any part thereof for a pe...od of more than one month in advance, and in the event of any default under this mortgage will pay monthly in advance to the mortgagee, or to any receiver appointed to collect such rents, issues and profits, the fair and reasonable rental value for the use and occupation of said premises or of such part thereof as may be in the possession of the mortgagor, and upon default in any such payment will vacate and surrender the possession of said premises to the mortgagee or to such receiver, and in default thereof may be evicted by summary proceedings.

14. That the whole of said principal sum and the interest shall become due at the option of the mortgagee: (a) after failure to exhibit to the mortgagee, within ten days after demand, receipts showing payment of all taxes, water rates, sewer rents and assessments; or (b) after the actu l or threatened alteration, demolition or removal of any building on the premises without the written consent of the mortgagee; or (c) after the assignment of the rents of the premises or any part thereof without the written consent of the mortgagee; or (d) if the buildings on said premises are not maintained in reasonably good repair; or (e) after failure to comply with any requirement or order or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the premises within three months from the issuance thereof; or (f) if on application of the mortgagee two or more fire insurance companies lawfully doing business in the State of New York refuse to issue policies insuring the buildings on the premises; or (g) in the event of the removal, demolition or destruction in whole or in part of any of the fixtures, chattels or articles of personal property covered hereby, unless the same are promptly replaced by similar fixtures, chattels and articles of personal property at least equal in quality and condition to those replaced, free from chattel mortgages or other encumbrances thereon and free from any reservation of title thereto; or (h) after thirty days' notice to the mortgagor, in the event of the passage of any law deducting from the value of land for the purpose of taxation any lien thereon, or changing in any way the taxation of mortgages or debts secured thereby for state or local purposes; or (i) if the mortgagor fails to keep, observe and perform any of the other covenants, conditions or agreements contained in this mortgage; or (j) if the mortgagor fails to k...p, observe and perform any of the covenants, conditions or agreements contained in any prior mortgage or fails to repay to the mortgagee the amount of any instalment of principal or interest which the mortgagee may have paid on such mortgage with interest thereon as provided in paragraph 16 of this mortgage, **or the note secured hereby**

15. That the mortgagor will, in compliance with Section 13 of the Lien Law, receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

16. If the mortgagor fails to pay any instalment of principal or interest on any prior mortgage when the same becomes due, the mortgagee may pay the same, and the mortgagor on demand will repay the amount so paid with interest thereon at the legal rate and the same shall be added to the mortgage indebtedness and be secured by this mortgage.

17. That the execution of this mortgage has been duly authorized by the board of directors of the mortgagor.

18. This ... is subject and subordinate to   **See Schedule B attached.**

19. In ... event of sale of the Premises or any part thereof, all sums due under this mortgage will become immediatley due.

20. All of the terms and conditions of the Note are hereby incorporated and made a part of this Mortgage.

21.   In the event any one or more of the provisions contained this Mortgage shall for any reason be held to be invalid illegal or unenforceable in any respect, such inval ity, illegali unenforceability shall not affect any other provision o Mortgage, but this Mortgage shall be ...d as if su ... illegal or unenforceable provision had ... been contained

This mortgage may ... be changed or terminated orally. The covenants contained ... run with the land and bind the mortgagor, the heirs, personal representatives, successors ... mortgagor and all subsequent owners, encumbrancers, tenants and subtenants of the premises ... to the benefit of the mortgagee, the personal representatives, successors and assigns of the ... subsequent holders of this mortgage. The word "mortgagor" shall be construed as if read ... the word "mortgagee" shall be construed as if it read "mortgagees" wherever ...

IN WITNESS WHEREOF, this mortgage has been duly executed ...

In presence of ...



STATE OF ~~NEW YORK~~ CONNECTICUT, COUNTY OF NEW HAVEN ss.:

On the 30th day of April 1997, before me personally came Joseph Gall

to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that he executed the same.

JEAN A. DANIELS
NOTARY PUBLIC
Notary Public
My Commission Expires November 30, 2000

STATE OF NEW YORK, COUNTY OF ss.:

On the day of 19 , before me personally came

to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that executed the same.

STATE OF NEW YORK, COUNTY OF ss.:

On the day of 19 , before me personally came

to me known, who, being by me duly sworn, did depose and say that he resides at No.

that he is the of , the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that he signed h name thereto by like order.

STATE OF NEW YORK, COUNTY OF ss.:

On the day of 19 , before me personally came the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he resides at No.

that he knows to be the individual described in and who executed the foregoing instrument; that he, said subscribing witness, was present and saw execute the same; and that he, said witness, at the same time subscribed h name as witness thereto.

REEL 2456 PG 2410

BLOCK: 1644
LOT: 59
COUNTY: New York
ADDRESS: 124-136 East 1[illegible] Street
New York, New York

LOC. VER. BY ADDRESS

**Mortgage**
(SUBORDINATE)

TITLE No.

Joseph Gall

TO

Caro & Graifman, P.C.

SECTION
BLOCK 3125
LOT 1
COUNTY OR TOWN Bronx [illegible]

2105 Daly Avenue
Bronx, NY
AKA 901 E. 80th St.

RETURN BY MAIL TO:

Caro & Graifman, P.C.
[illegible] East 42nd Street
Suite [illegible]
New York, NY [illegible]

Reserve this space for use of Recording Office

REEL 2 4 5 6 PG 2 4 1 1      REEL 1 4 6 6 PG 1 2 3 3

Parcel T

SCHEDULE A

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of The Bronx, City and State of New York, bounded and described as follows:

BEGINNING at a point formed by the intersection of the Westerly side of Daly Avenue with the Northerly side of East 180th Street;

RUNNING THENCE Northerly along said Westerly side of Daly Avenue, 183.65 feet to a point;

THENCE Westerly and parallel with East 180th Street, 100.29 feet to a point;

THENCE Southerly and parallel with Honeywell Avenue 85.41 feet to a point;

THENCE Easterly and again parallel with East 180th Street, 2.06 feet to a point;

THENCE Southerly and again parallel with Honeywell Avenue 42.50 feet to a point;

THENCE Westerly and again parallel with East 180th Street, 2.06 feet to a point;

THENCE Southerly and again parallel with Honeywell Avenue 31.85 feet to a point;

THENCE Westerly and again parallel with East 180th Street, 80 feet to the easterly side of Honeywell Avenue;

THENCE Southerly along said Easterly side of Honeywell Avenue, 13.6" feet to the Northerly side of East 180th Street;

THENCE Easterly along said Northerly side of East 180th Street, 182 feet to the point or place of BEGINNING.

SAID premises being known as 2105 Daly Avenue, Bronx, New York

(Continued)

REEL 2456 PG 2412    REEL 1464 PG 1234

SCHEDULE A (Continued)

Parcel II

## LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of East 117th Street, distant 215 feet easterly from southeasterly corner of Park Avenue and East 117th Street;

RUNNING THENCE southerly parallel with Park Avenue, 100 feet 11 inches to the center line of the block;

THENCE easterly along the center line of the block, 133 feet 7 inches;

THENCE northerly parallel with Park Avenue, 100 feet 11 inches to the southerly side of East 117th Street;

THENCE westerly along the southerly side of East 117th Street, 133 feet 7 inches to the point or place of BEGINNING.


Said premises being known as 124-136 East 117th Street, New York, New York

YOL/DL                    -LEGAL DESCRIPTION-

REEL 2 4 5 6 PG 2 4 1 3  REEL 1 4 6 6 PG 1 2 3 5

### SCHEDULE B

This mortgage is subject and subordinate to Mortgage dated the 1st day of November 1984, made by Thomas V. McLaughlin and Joseph Gall to Citibank, N.A. in the principal sum of $499,000.00 and recorded on the 21st day of November 1994, (Reel) 568, page 1103, in the office of the City Register of the County of Bronx, State of New York which mortgage was assigned by Assignment of Mortgage from Citibank, N.A. to Employee Staffing of America. Inc. dated 1/7/92 and recorded 2/13/92 in Reel 1081, Page 934 in the office of the City Register of Bronx County, State of New York; which mortgage was assigned by Employee staffing of America, Inc. to S & J Realty Corp. by Assignment of Mortgage, dated October 4, 1996 and recorded on   11/4/96   in the office of the City Register of Bronx County in Reel 1427 page 1931.

REEL1466 PG1236    REEL2456 PG2414

0097.13
PCK

4000
9000
2008
—
7000
5000
22,000

AKA 901 E 108 st.

RR: CARO & GRAIFMAN, P.C.
60 E. 42 st.
Suite 2001
NY NY 10165

RECEIVED
RECORDING TAX OF $ 22,000
Includes Special
Add'l Tax $ 2000
SERIAL No. C0-0985

MAY -9 1997


CITY REGISTER

MORT

RECORDED IN BRONX COUNTY

## Escrow Agreement

**THIS AGREEMENT,** made the ___ day of May, 1999, by and among Caro & Gralfman, P.C. ("Mortgagee"), National Council on Compensation Insurance, American International Group and ___*APIC*___ (collectively, "Judgment Creditor"), and Fidelity National Title Insurance Company of New York ("Escrow Agent").

**WHEREAS,** 233-57 East 111th Street Corp. ("Purchaser") is a party to that certain Contract of Sale by and between Joseph Gall ("Seller"), as seller, and Purchaser, as purchaser, dated _____ ("the Contract") pursuant to which Seller agrees to sell, and Purchaser agrees to purchase, Seller's undivided fifty (50%) percent interest in that certain real property known as and by the street address of 124-136 East 117th Street, New York, N.Y., more particularly described on Exhibit A attached hereto ("the Property") for a purchase price of $875,000.00 (the "Purchase Price"); and

**WHEREAS,** Mortgagee is the owner and holder of that certain mortgage made by Seller to Mortgagee in the principal amount of $800,000.00, dated April 30, 1997 (the "Mortgage"), which Mortgage is recorded against Seller's interest in the Property in the Office of the Register of New York County on May 14, 1997 in Reel 2456 page 2407; and

**WHEREAS,** Judgment Creditor is the owner and holder of that certain judgment in favor of Judgment Creditor against Seller, in the amount of $5,147,254.00 (the "Judgment"), which Judgment is docketed in the Office of the County Clerk of New York County on November 6, 1997; and

**WHEREAS,** Mortgagee and Judgment Creditor have approved the Contract: and

**WHEREAS,** the closing pursuant to the Contract will result in the net proceeds from the sale set forth on Exhibit B attached hereto (the "Net Proceeds") which would inure to the benefit of Mortgagee and Judgment Creditor; and

**WHEREAS,** Mortgagee and Judgment Creditor cannot agree on how the Net Proceeds will be distributed between them; and

**WHEREAS,** Mortgagee and Judgment Creditor have requested that the Escrow Agent agree to hold the Net Proceeds in escrow in accordance with the terms of this Agreement, pending resolution of the questions relating to the distribution of the Net Proceeds.

**NOW, THEREFORE,** in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Mortgagee, Judgment Creditor and Escrow Agent hereby agree as follows:

EXHIBIT D

1.  That the sale of the interest of Seller in and to the Property pursuant to the Contract is authorized and approved;

2.  That the calculation of the Net Proceeds as set forth on Exhibit B hereof is authorized and approved;

3.  That the Mortgagee is the owner and holder of the mortgage, has not assigned, transferred, pledged, or hypothecated the mortgage, and it, and the signatory on its behalf, has full power and authority to enter into this Agreement and any other documents contemplated by this Agreement;

4.  That the Judgment Creditor is the owner and holder of the judgment, has not assigned, transferred, pledged, or hypothocated the judgment, and has full power and authority to enter into this Agreement and any other documents contemplated by this Agreement;

5.  That at the closing of the sale of the interest of Seller in accordance with the Contract, Mortgagee will deliver to the title insurance company requested by the Purchaser to insure the aforementioned sale, a Release of Part of Mortgaged Premises, signed by Mortgagee and acknowledged, and in form acceptable for recording, releasing the Property from the mortgage;

6.  That at the closing of the sale of the interest of Seller in accordance with the Contract, Judgment Creditor will deliver to the title insurance company requested by the Purchaser to insure the aforementioned sale, a Release of Judgment, signed by Judgment Creditor and acknowledged, and in form acceptable for filing, releasing the Property from the judgment;

7.  That the Net Proceeds will be deposited with Escrow Agent. Escrow Agent will deposit the Net Proceeds in an interest-bearing, money market account at Mellon Bank, _____, Pittsburgh, Pa.. The Net Proceeds and interest accruing thereon (the "Escrow") shall governed by and disbursed in accordance with this Agreement;

8.  That the Escrow shall be maintained by Escrow Agent until the occurrence of one of the following:

    (i)   Mortgagee and Judgment Creditor agree in writing to the disbursement of the Escrow, and deliver such writing to Escrow Agent in accordance with the terms of this Agreement; or

    (ii)  Mortgagee and/or Judgment Creditor obtain a final, non-appealable judgment from a court of competent jurisdiction, directing the disbursement of the Escrow to the Mortgagee and/or Judgment Creditor. Both Mortgagee and Judgment Creditor agree to submit to the jurisdiction

of Supreme Court, New York County, in any action or proceeding regarding the distribution of the Escrow initiated to Mortgagee, Judgment Creditor or Escrow Agent;

9.     Any notices sent under this Agreement must be sent by facsimile and by U.S. Mail, or by hand, addressed as follows:

If to Mortgagee, to:     Caro & Graffman, P.C.
                         60 East 42nd Street
                         New York, New York
                         Facsimile No. _____

If to Judgment Creditor, to:     Jeanine M. Dumont, Esq.
                                 David E. Rosengren, Esq.
                                 Pepe & Hazard LLP
                                 Goodwin Square
                                 Hartford, Connecticut 06103
                                 Phone No. 860.241.2600
                                 Fax No. 860.522.2796

If to Escrow Agent:     Fidelity National Title Insurance Company of New York
                        c/o Title Resource Agency, Inc.
                        18 East 41st Street
                        New York, New York 10017
                        Att:     Thomas A. Glatthaar, Esq.
                        Facsimile No. 212.679.8911

10.    Seller and Purchaser, by execution of this Agreement, each hereby confirms and agrees that (a) it has no interest in the Net Proceeds, (b) the sole persons or entities who have an interest in the Net Proceeds are Mortgagee and Judgment Creditor, and (c) it shall make no claim relating to all or any portion of the Net Proceeds;

11.    Mortgagee and Judgment Creditor agree that (a) their respective liens on the Property are being transferred to the Net Proceeds, (b) upon delivery of their release, they will no longer have aqny interest in the Property, and (c) their respective rights in the Net Proceeds shall be determined solely on the basis of their respective liens, as transferred to the Net Proceeds;

12.    The following matters relate to the rights and obligations of the Escrow Agent.

A.    The Escrow Agent shall not be responsible for, and shall bear no liability for (i) any penalty or loss incurred by reason of the early withdrawal of funds from any account in which the Escrow is held or invested, (ii) any interest, profit or return on the Escrow lost or foregone by reason of differing or varying rates of interest, or (iii) any loss occasioned by bank failure;

B.    The Escrow Agent shall be under no duty to institute, defend or participate in any suit, action and/or other proceeding relating to any dispute between Mortgagee and/or Judgment Creditor, and none of the costs and expenses of any such proceeding shall be borne by Escrow Agent. Prior to the resolution of any such dispute, Escrow Agent is authorized to retain in its possession, without liability to any of the parties to this Agreement, the Escrow. The Escrow Agent shall dispose of the Escrow only in accordance with the joint written instructions of the Mortgagee and Judgment Creditor, or by final, non-appealable judgment from a court of competent jurisdiction as aforesaid. Mortgagee hereby undertakes to commence an action or proceeding seeking an order directing the disbursement of the Escrow as directed by the court within sixty (60) days of closing. Mortgagee hereby warrants and agrees not to implead or name Escrow Agent in such action or proceeding. Should mortgagee or any other person name or implead Escrow Agent in such action or proceeding, it is understood and agreed that Escrow Agent will limit all expenses in connection with such action or proceeding, including attorneys fees, to $2,500.00, provided that (i) all parties to this Agreement consent to the deposit of the Escrow into court, and (ii) the appearance of Escrow Agent in such action or proceeding shall be limited to the purpose of depositing the Escrow into such court. The following costs or expenses, if incurred by Escrow Agent in connection with the deposit of the Escrow as aforesaid, shall be deducted from the Escrow:

1.    Legal fees
2.    Copy costs
3.    Discovery, depositions, subpoena, and expert fees, and trial transcript fees;
4.    Messenger and overnight courier fees, and postage;
5.    Fees on appeal(s) and costs of record on appeal(s).

C.    Escrow Agent shall not be liable for any mistake of fact or error of judgment by it or for any other acts or omissions by it of any kind whatsoever unless resulting from its gross negligence, willful misconduct or bad faith, and shall be entitled to rely ( and shall be protected in doing

AUG.29,'00 (THU) 10:05                                              PAGE. 6/8

so) upon any written notice given in accordance with this Agreement and the information contained therein, or any instrument or signature believed by it to be genuine.

D.   Each of the parties to this Agreement jointly and severally indemnify, defend and hold harmless Escrow Agent against any and all loss, cost claim or damage, including, but not limited to, reasonable attorneys fees and costs, incurred or suffered by the Escrow Agent relating to, arising out of or in connection with this Agreement, except for loss, cost claim or damage incurred or sustained by Escrow Agent resulting from its own gross negligence, willful misconduct or bad faith.

IN WITNESS WHEREOF, the parties have signed their names hereto on the date and year above written.

Caro & Graifman, P.C.

B̲ₓ̲ _Cheus Curyper_

Name: Chas & Cyfe

Title: President

National Council on Compensation Insurance

By: _Jeanine M. Dumont_

Name: Jeanine M. Dumont

Title: Attorney

American International Group

By: _Jeanine M. Dumont_

Name: Jeanine M. Dumont

Title: Attorney

APIC

By: _Jeanine M. Dumont_

Name:   Jeanine M. Dumont

Title:    Attorney

Fidelity National Title Insurance Company
of New York
By: Title Resource Agency, Inc., its agent

By: _____

Name:   T. GLATTHAAR

Title:    PRESIDENT

The foregoing is hereby agreed to:
233-57 East 111th Street Corp.

By: _____
Name:
Title:

Name: Joseph Gall  by Chau Ceco
          as attorney in fact

PAGE. 8/8

### Exhibit B

Proceeds from the sale of an undivided fifty (50%) interest
in 124-136 East 117th Street, New York, New York

| | | |
|---|---|---|
| 1. | Cash proceeds | $266,638.62 |
| | LESS | |
| 2. | Broker's commission | $35,000.00 |
| 3. | Transfer Taxes | $26,468.75 |
| 4. | Accounting fees | $750.00 |
| 5. | Title closer attendance fee | $650.00 |
| | BALANCE TO BE ESCROWED | $203,769.87 |

# EXHIBIT "B"

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
———————————————————————x
NATIONAL COUNCIL ON COMPENSATION          :
INSURANCE, INC.,                                              :        Civil Action No.:
                         Plaintiff ,        :        300CV1925 (AHN)
                                     :
       - against -                                          :
                                     :        ANSWER AND COUNTERCLAIMS
CARO & GRAIFMAN, P.C. ,                             :        OF DEFENDANT
and JOSEPH GALL,                                        :        CARO & GRAIFMAN, P.C.
                 Defendants.        :
———————————————————————x

       Defendant CARO & GRAIFMAN, P.C.(hereafter "C&G"), by its attorneys, CARO &

ASSOCIATES, P.C., as and for an answer in this action denies all of the allegations of the

Complaint herein to the extent that they are not specifically admitted below, and further

avers:[1]

1.     Defendant C&G does not possess sufficient information with which to formulate a

       response to ¶1 of the Complaint herein, but believes it to be true.

2.     Defendant C&G admits the allegations contained in ¶2 of the Complaint herein.

3.     Defendant C&G admits the allegations contained in ¶3 of the Complaint herein that

       Defendant Joseph Gall (hereafter "Gall") is incarcerated in F.P.C. Allenwood pursuant

       to a 1997 conviction in this Court, and that prior to his incarceration Gall

       resided in Orange, Connecticut, and respectfully refers the Court and plaintiff to the

       public records which delineate the outcome of the referenced proceedings.

4.     Defendant C&G admits that in ¶4 of the Complaint herein plaintiff purports to invoke

---

     [1] At various points in the Complaint, plaintiff has inserted a paragraph, in all cases
numbered 1, in which it repeats certain claims.  C&G respectfully repeats, in response to
those "number 1 paragraphs", its first responses to the repeated paragraphs.

the jurisdiction of this court pursuant to statute cited therein.

5.    Defendant C&G admits the allegations contained in ¶5 of the Complaint herein.

6.    Defendant C&G admits the allegations contained in ¶6 of the Complaint herein that

Gall was convicted in this Court in 1997, and that prior to his incarceration Gall

resided in Orange, Connecticut, and respectfully refers the Court and plaintiff to the

public records which delineate the outcome of the referenced proceedings.

7.    Defendant C&G admits the allegations contained in ¶7 of the Complaint herein.

8.    Defendant C&G admits the allegations contained in ¶8 of the Complaint herein that

the cited report was released to the plaintiffs (but not to the defendants), and

appears to have been sworn to by Gall, and utilized in the criminal proceedings.

9.    Defendant C&G admits the allegation contained in ¶9 of the Complaint herein that Gall

listed interests in the "UPACA" and "Trinity" properties with an estimated value of

approximately $800,000, among his assets as reported on his Personal Financial

Statement (and reported a debt of $645,000.00 in unpaid legal fees owed to C&G, and

does not possess sufficient information with which to formulate a response to the

balance of the allegations of ¶9.

10.    Defendant C&G admits the allegations contained in ¶10 of the Complaint herein.

11.    Defendant C&G admits the allegations contained in ¶11 of the Complaint herein to the

effect that Gall's interests in "UPACA" and "Trinity" gave rise to liens under this

Court's Order of Restitution, which liens are subject to the priorities of other,

superior, lienors, and that plaintiff recorded its lien.

12.    Defendant C&G admits the allegations contained in ¶12 of the Complaint herein to the

effect that Gall executed the referenced mortgage in favor of C&G on the specified

date in payment of legal fees owed, *inter alia*, by Gall, Employee Staffing of America

(hereafter "ESA"), Thomas V. McLaughlin and Labor Force of America (hereafter

"LFA") to C&G for significant and substantial legal services actually performed by

C&G, and fairly valued in excess of the value of the $800,000.00 mortgage as noted in

the aforesaid Personal Financial Statement, and denies the balance of the allegations

of ¶12.

13.  Defendant C&G denies the allegations contained in ¶13 of the Complaint herein.

14.  Defendant C&G, as to the allegations contained in ¶14 of the Complaint herein,

respectfully refers the Court to the Escrow Agreement, wherein the terms speak for

themselves, as they relate to the creation of an escrow fund by means of C&G's

compensable facilitation of the sale of the UPACA property..

15.  As to ¶15 of the Complaint herein, defendant C&G admits that plaintiff has refused to

negotiate or discuss this matter with defendant C&G, or to respond to the proposal

made herein by the Judge-mediator, which has been accepted by C&G.

16.  Defendant C&G denies the allegations contained in ¶16 of the Complaint herein.

17.  The Complaint does not contain a ¶17.

18.  The Complaint does not contain a ¶18.

19.  Defendant C&G denies the allegations contained in ¶19 of the Complaint herein.

20.  Defendant C&G denies the allegations contained in ¶20 of the Complaint herein.

21.  ¶21 of the Complaint requires no response.

22.  Defendant C&G does not possess sufficient information with which to formulate a

3

response to ¶22 of the Complaint herein.

23.    Defendant C&G denies the allegations contained in ¶23 of the Complaint herein.

24.    **[SECOND "COUNT"]**[2] Defendant C&G denies the allegations contained in ¶24 [2nd "Count"] of the Complaint herein, and moves to strike ¶24 [2nd "Count"] on the ground that the asserted "fraud" has not been pleaded with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure.

25.    **[SECOND "COUNT"]** Defendant C&G admits that it was aware generally of the criminal proceedings against Gall, but did not always have accurate information and knowledge regarding the state of those proceedings, and denies the balance of the allegations contained in ¶25 [2nd "Count"] of the Complaint herein, and moves to strike ¶25 [2nd "Count"] on the ground that the asserted "fraud" has not been pleaded with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure.

26.    Defendant C&G denies the allegations contained in ¶26 of the Complaint herein.

27.    Defendant C&G denies the allegations contained in ¶27 of the Complaint herein.

28.    **[THIRD "COUNT"]** Defendant C&G denies the allegations contained in ¶24 [3rd "Count"] of the Complaint herein, and moves to strike ¶24 [3rd "Count"] on the ground that the asserted "fraud" has not been pleaded with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure.

---

[2] There are two sets of paragraphs numbered 24 and 25 in the Complaint. One set exists in the "Second Count" and one set exists in the "Third Count". Responses to these twice-numbered paragraphs will be identified by placing the number of the appropriate "Count" in brackets before the response. Additionally, we note the prejudicial use of the term "Count" instead of the appropriate term "Cause of Action", as if this Complaint were an indictment voted by empaneled body of citizens, rather than merely an insurance company's grab for money through oppressive, unwarranted litigation.

29.     [THIRD "COUNT"] Defendant C&G denies the allegations contained in ¶25 [3rd
        "Count"] of the Complaint herein, and moves to strike ¶25[3rd "Count"] on the ground
        that the asserted "fraud" has not been pleaded with the specificity required by Rule
        9(b) of the Federal Rules of Civil Procedure by Rule 9(b) of the Federal Rules of Civil
        Procedure.

30.     Defendant moves to strike the prejudicial term "Count" from the Complaint on the
        ground that the complaint herein is not an accusatory instrument either voted by an
        empaneled body of citizens, or issued by a duly sworn prosecutor, and is merely a grab
        for money by an insurance company.

<u>AS AND FOR A FIRST DEFENSE</u>

31.     The Responses contained in ¶¶1- 30, above are repeated and realleged as if fully set
        forth at this point.

32.     In or about and between 1993 and 1997, defendant C&G performed significant and
        substantial legal services, on a continuous basis, for Gall, ESA, McLaughlin, LFA, and
        numerous other business entities jointly owned by Gall and McLaughlin (hereafter
        "Gall and entities").[3]

33.     Many of these services involved defending Gall and entities in multimillion dollar
        litigation, and pressing multimillion dollar counterclaims in litigation, in which p-
        plaintiff herein (and/or its members and components) was/were an adversary party.

34.     By the time of the execution of the mortgage, defendant C&G was owed well in excess

_____

[3] In fact, <u>Plaintiff</u> has already made an admission in this very case, in its effort to
defeat C&G's *forum non conveniens* application herein, that C&G "<u>regularly travel to
Connecticut on business for Gall</u>" [Emphasis supplied]

5

of $800,000.00 in unpaid legal bills by Gall and entities for those services.

35.    However, plaintiff has stated no basis for its libelous allegation that C&G did not earn,

and was not owed, these fees.

36.    The mortgage was executed several months prior to the issuance by this Court of an

Order of Restitution against Gall.

37.    Consequently, the mortgage was properly and lawfully executed to C&G by Gall, at an

appropriate time, and in payment of the aforesaid fully legitimate, but unpaid, bills

for C&G's aforesaid significant and substantial legal services.


<u>AS AND FOR A SECOND DEFENSE</u>

38.    The Responses contained in ¶¶1- 37, above are repeated and realleged as if fully set

forth at this point.

39.    Rule 9(b) of the Federal rules of Civil procedure provides that:

> In all averments of fraud or mistake, the
> circumstances constituting the fraud or mistake
> shall be stated with particularity.

40.    The Complaint herein avers, generally, that defendant C&G and Gall engaged in a

fraudulent transfer, since C&G accepted the instant mortgage from Gall, "knowing

that the transfer would deplete the of Gall available for payment of plaintiffs under

the restitution order".

41.    The Complaint herein fails to state any circumstances allegedly constituting a fraud

with particularity.

42.    This failure includes, but is not limited to the following:

43.    The complaint fails to specify the manner in which the alleged depletion "depletes" that which is due to it as a superior lienor.

44.    The complaint fails to specify any stated basis for its libelous allegation that C&G did not earn, and was not owed, the aforesaid Gall and entities legal fees.

45.    Indeed, other than some sleight of hand with dates, the complaint fails properly to allege that NCCI is the superior lienor.[4]

46.    Moreover, plaintiff herein has been the adversary party in several highly complex litigations, wherein C&G represented Gall and entities in matters worth literally millions of dollars.

47.    Nevertheless, the Complaint alleges that C&G did not give Gall "reasonably equivalent value" in return for the mortgage.  However, it does not particularize any ways in which the significant and substantial legal services which (as an adversary party in much of the litigation involved) plaintiff well knows were rendered bu C&G to Gall and entities were not "reasonably equivalent value" for the mortgage at issue here.[5]

48.    Consequently, the Complaint herein fails to state the circumstances allegedly constituting the fraud with the particularity required by Rule 9(b).

---

[4] This omission is understandable, inasmuch as that very question is currently, *sub judice*, in the Supreme Court of the State of New York in active litigation which predates this matter. S&J Realty Corp., v. Thomas V. McLaughlin, Caro and Graifman, P.C., National Council on Compensation Insurance, Joseph Gall, et al., Index Number: 21438-99 (Bronx County).

[5] Indeed, even though NCCI representatives had first hand knowledge of the nature and extent of much of C&G's representation of Gall (as adversary to them) plaintiff, claiming ignorance of the entire situation, engaged in its favored and oft-used legal tactic of presenting an onerous demand for literally hundreds of thousands of C&G documents (including attorney-client privileged documents) which it claimed were "needed' to "discover" its case.

<u>AS AND FOR A THIRD DEFENSE</u>

49.     The Responses contained in ¶¶1- 48, above are repeated and realleged as if fully set forth at this point.

50.     Plaintiff instituted the instant action in this Court on or about October 5, 2000.

51.     At that time the matter of <u>S&J Realty Corp., v. Thomas V. McLaughlin, Caro and Graifman, P.C.,National Council on Compensation Insurance, Joseph Gall, *et al.*</u> (hereafter "the S&J case"), was being actively litigated in the Supreme Court of the State of New York, County of Bronx under Index Number: 21438-99.  This is a separate and distinct matter from the New York State case (Caro & Graifman, P.C. v. National Council on Compensation Insurance) upon which C&G predicated its previous motion for dismissal herein.

52.     The Complaint herein makes the priority of liens vis-avis plaintiff and C&G an integral issue in alleged "fraudulent transfer".  It is axiomatic that a legitimate transfer to a lienor with superior right is not a fraudulent transfer.

53.     These issues of superiority of right and priority of lien between plaintiff and C&G are the issues in the S&J case, which was well under way for several months, and under active litigation, when plaintiff chose to litigate the very same issues in this Court.

54.     Consequently the central issues of this case are currently *sub judice* in the New York Courts, and cannot be maintained here in an action which plaintiff instituted while the New York State action (the S&J case) was pending.

8

## COUNTERCLAIMS

### AS AND FOR A FIRST COUNTERCLAIM

55.   ¶¶1- 54 above are repeated and realleged as if fully set forth at this point.

56.   Plaintiff is chargeable with actual knowledge of the actual performance of significant

and substantial legal services performed by C&G for Gall and entities, since C&G

actively represented Gall and entities in numerous actions where plaintiff was an

adversary party.

57.   Additionally, in proceedings held in this very matter, prior to the filing of this Answer

and Counterclaims, plaintiff was presented with sworn affidavits made by present and

former C&G attorneys, attesting to their significant and substantial legal work,

performed as C&G principals and employees, on behalf of Gall and entities during the

time period in question.

58.   Moreover, plaintiff was well aware the C&G had brought suit against Gall in the

Supreme Court of the State of New York, County of New York, in October 1996, to

recover the approximately $1,500,000.00 then owed to it by Gall and entities for the

aforesaid work. Caro and Graifman, P.C., v. Gall, (New York County, 1996)

59.   Thus plaintiff was also chargeable with actual knowledge of the enormous debt owed

to C&G by Gall and entities.

60.   Despite this overwhelming proof, and its own actual knowledge, of the legal work

done by C&G on behalf of Gall and entities, and of the existence of the debt incurred

for those services, plaintiff: (i) instituted the instant action, (ii) issued and pressed

onerous, oppressive demands for alleged "discovery" of hundreds of thousands of

9

documents from C&G's files (allegedly in order to "discover" the work that, as an adversary party, plaintiff well knew that C&G performed), including documents subject to the attorney-client privilege, and (iii) continues to maintain this specious action.

61.    Consequently, plaintiff has knowingly, wilfully and intentionally abused the process and power of this Court to harass C&G and its principals, to prolong this unnecessary litigation, to cause C&G and its principals to expend large sums of money in defense of this unnecessary action, and to conduct an improper "fishing' expedition through the files of an adversary law firm.

<u>AS AND FOR A SECOND COUNTERCLAIM</u>

62.    ¶¶1-61 above are repeated and realleged as if fully set forth at this point.

63.    By its charge of "fraudulent transfer", which charge it well knows untrue, plaintiff has knowingly, wilfully and maliciously libeled C&G and its principals, and has caused them to expend sums of money in defense of their previously unblemished reputations as attorneys, and caused other known and unknown harm to their reputations and finances.

<u>AS AND FOR A THIRD COUNTERCLAIM</u>

64.    ¶¶1-64 above are repeated and realleged as if fully set forth at this point.

65.    By its charge of "fraudulent transfer", which charge it well knows untrue, plaintiff has libeled C&G, *per se*.

<u>AS AND FOR A THIRD COUNTERCLAIM</u>

66.    ¶¶1- 65 above are repeated and realleged as if fully set forth at this point.

10

67.    By its charge of "fraudulent transfer", which charge it well knows untrue, and by this

harassing lawsuit, and the aforesaid unjustified demand for tens of thousands of

privileged and unprivileged C&G documents plaintiff has harmed C&G, and its in its

and their respective practices of law, thereby causing C&G and its principals to suffer

other known and unknown harm to their reputations and finances.


WHEREFORE, defendant CARO & GRAIFMAN P.C. respectfully requests that this

Court enter judgment in its favor, and against plaintiff NATIONAL COUNCIL ON

COMPENSATION INSURANCE, INC. as follows:

A.    Dismissing plaintiff's Complaint herein in its entirety.

B.    Denying any and all relief sought herein by plaintiffs.

C.    Declaring the mortgage which is the subject matter of this action valid and

enforceable.

D.    Dissolving all restraints placed upon the mortgage which is the subject matter

of this action, and upon the "UPACA" and "Trinity" properties by this Court in

the course of this matter.

E.    Releasing to C&G those funds owed to it pursuant to the Escrow Agreement

provisions regarding facilitation of the sale of the "UPACA" property.

F.     Releasing to C&G those funds held by it pursuant to Escrow Agreements

regarding the "UPACA" and "Trinity" properties.

G.    Ordering plaintiff NATIONAL COUNCIL ON COMPENSATION INSURANCE, INC. to

pay damages in amount determined at trial to defendant CARO & GRAIFMAN,

P.C., pursuant to the First, Second and Third Counterclaims herein.

H.      Ordering plaintiff NATIONAL COUNCIL ON COMPENSATION INSURANCE, INC. to

pay to defendant CARO & GRAIFMAN, P.C. the amount of the fees costs and

expenses defendant CARO & GRAIFMAN, P.C. incurred in defending this action,

and

I.      Such other and further relief as the court may deem just and proper.

Dated:      White Plains, New York
            April 15, 2003


_____

Alan M. Friedman (Ct 07371)
Caro and Associates, P.C.
399 Knollwood Road
White Plains, New York 10603
Telephone: (914) 422-3911

Attorney for Defendant Caro & Graifman, P.C.


TO:

Jeanine DuMont, Esq.                Joseph Gall, pro se.,
Pepe and Hazard                     #12209-014
225 Asylum Street                   FPC Allenwood
Hartford, Connecticut 06103-4302    P.O. Box 1000
                                    Montgomery, Pennsylvania 17752

Attorney for Plaintiff

# EXHIBIT "C"

REEL 1466 PG 1229

BETWEEN

Joseph Gall
385 Pine Street
New Haven, CT

and , the mortgago.

Caro & Graifman, P.C.
60 East 42nd Street, Suite 2001
New York, NY 10165

Eight Hundred Thousand X
($800,000.00) , the mortgage

WITNESSETH, that to secure the payment of an indebtedness in the sum of ~~three hundred fourt~~
~~thousand and xx/100 ($340,000.00)~~

lawful money of the United States, to be paid dollars.

~~with interest thereon to be computed from the date hereof, at the rate of~~
~~per annum, and to be paid on the day of 19 , next ensuing and~~
~~thereafter,~~

~~according to a certain bond,~~
note or obligation bearing even date herewith, the mortgagor hereby mortgages to the mortgagee his
~~fifty percent (50%) tenants in common interest in~~ all of his right
ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate,
lying and being in the county of the Bronx, City of New York and State of interest
New York, familiarly known as 2105 Daly Avenue Bronx, N.Y. (in an
particularly described in Schedule "A" annexed hereto.

And all that certain plot, piece or parcel of land, with the buildin
and improvements thereon erected, situate, lying and being in the
County, City and State of New York, familiarly known as 124-136 East
117th Street, New York, New York, as more particularly described in
Schedule "A" annexed hereto.

The properties described above and in Schedule A annexed hereto are
individually and collectively referred to herein as the "premises"

Over 6 families

TOGETHER with all right, title and interest of the mortgagor in and to the land lying in the streets and roads in front of and adjoining said premises;

TOGETHER with all fixtures, chattels and articles of personal property now or hereafter attached to or used in connection with said premises, including but not limited to furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, wash-tubs, sinks, gas and electric fixtures, stoves, ranges, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, plants and shrubbery and all other equipment and machinery, appliances, fittings, and fixtures of every kind in or used in the operation of the buildings standing on said premises, together with any and all replacements thereof and additions thereto;

TOGETHER with all awards heretofore and hereafter made to the mortgagor for taking by eminent domain the whole or any part of said premises or any easement therein, including any awards for changes of grade of streets, which said awards are hereby assigned to the mortgagee, who is hereby authorized to collect and receive the proceeds of such awards and to give proper receipts and acquittances therefor, and to apply the same toward the payment of the mortgage debt, notwithstanding the fact that the amount owing thereon may not then be due and payable; and the said mortgagor hereby agrees, upon request, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning said awards to the mortgagee, free, clear and discharged of any encumbrances of any kind or nature whatsoever.

AND the mortgagor covenants with the mortgagee as follows:

1. That the mortgagor will pay the indebtedness as hereinbefore provided.

2. That the mortgagor will keep the buildings on the premises insured against loss by fire for the benefit of the mortgagee; that he will assign and deliver the policies to the mortgagee; and that he will reimburse the mortgagee for any premiums paid for insurance made by the mortgagee on the mortgagor's default in so insuring the buildings or in so assigning and delivering the policies.

3. That no building on the premises shall be altered, removed or demolished without the consent of the mortgagee.

4. That the whole of said principal sum and interest shall become due at the option of the mortgagee: after default in the payment of any instalment of principal or of interest for fifteen days or after default in the payment of any tax, water rate, sewer rent or assessment; for thirty days after notice and demand or after default after notice and demand either in assigning and delivering the policies insuring the buildings against loss by fire or in reimbursing the mortgagee for premiums paid on such insurance, as hereinbefore provided; or after default upon request in furnishing a statement of the amount due on the mortgage and whether any offsets or defenses exist against the mortgage debt, as hereinafter provided. An assessment which has been made payable in instalments at the application of the mortgagor or lessee of the premises shall nevertheless, for the purpose of this paragraph, be deemed due and payable in its entirety on the day the first instalment becomes due or payable or a lien.

5. That the holder of this mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

6. That the mortgagor will pay all taxes, assessments, sewer rents or water rates, and in default thereof, the mortgagee may pay the same.

7. That the mortgagor within five days upon request in person or within ten days upon request by mail will furnish a written statement duly acknowledged of the amount due on this mortgage and whether any offsets or defenses exist against the mortgage debt.

8. That notice and demand or request may be in writing and may be served in person or by mail.

9. That the mortgagor warrants the title to the premises.

10. That the fire insurance policies required by paragraph No. 2 above shall contain the usual extended coverage endorsement; that in addition thereto the mortgagor, within thirty days after notice and demand, will keep the premises insured against war risk and any other hazard that may reasonably be required by the mortgagee. All of the provisions of paragraphs No. 2 and No. 4 above relating to fire insurance and the provisions of Section 254 of the Real Property Law construing the same shall apply to the additional insurance required by this paragraph.

11. That in case of a foreclosure sale, said premises, or so much thereof as may be affected by this mortgage, may be sold in one parcel.

12. That if any action or proceeding be commenced (except an action to foreclose this mortgage or to collect the debt secured thereby), to which action or proceeding the mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of this mortgage, all sums paid by the mortgagee for the expense of any litigation to prosecute or defend the rights and lien created by this mortgage (including reasonable counsel fees), shall be paid by the mortgagor, together with interest thereon at the rate of six per cent, per annum, and any such sum and the interest thereon shall be a lien on said premises, prior to any right, or title to, interest in or claim upon said premises attaching or accruing subsequent to the lien of this mortgage, and shall be deemed to be secured by this mortgage. In any action or proceeding to foreclose this mortgage, or to recover or collect the debt secured thereby, the provisions of law respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

REEL 1466 PG 1231

the mortgagor hereby assigns the mortgagee the rents, issues and profits of the premises as further security upon and to take possession of the premises for the purpose of collecting the same and to let the premises or any part thereof, and to apply the rents, issues and profits, after payment of all necessary charges and expenses, on account of said indebtedness. This assignment and grant shall continue in effect until this mortgage is paid. The mortgagee hereby waives the right to enter upon and to take possession of said premises for the purpose of collecting said rents, issues and profits, and the mortgagor shall be entitled to collect and receive said rents, issues and profits until default under any of the covenants, conditions or agreements contained in this mortgage, and agrees to use such rents, issues and profits in payment of principal and interest becoming due on this mortgage and in payment of taxes, assessments, sewer rents, water rates and carrying charges becoming due against said premises, but such right of the mortgagor may be revoked by the mortgagee upon any default, on five days' written notice. The mortgagor will not, without the written consent of the mortgagee, receive or collect rent from any tenant of said premises or any part thereof for a period of more than one month in advance, and in the event of any default under this mortgage will pay monthly in advance to the mortgagee, or to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the use and occupation of said premises or of such part thereof as may be in the possession of the mortgagor, and upon default in any such payment will vacate and surrender the possession of said premises to the mortgagee or to such receiver, and in default thereof may be evicted by summary proceedings.

14. That the whole of said principal sum and the interest shall become due at the option of the mortgagee: (a) after failure to exhibit to the mortgagee, within ten days after demand, receipts showing payment of all taxes, water rates, sewer rents and assessments; or (b) after the actual or threatened alteration, demolition or removal of any building on the premises without the written consent of the mortgagee; or (c) after the assignment of the rents of the premises or any part thereof without the written consent of the mortgagee; or (d) if the buildings on said premises are not maintained in reasonably good repair; or (e) after failure to comply with any requirement or notice or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the premises within three months from the issuance thereof; or (f) if on application of the mortgagee two or more fire insurance companies lawfully doing business in the State of New York refuse to issue policies insuring the buildings on the premises; or (g) in the event of the removal, demolition or destruction in whole or in part of any of the fixtures, chattels or articles of personal property covered hereby, unless the same are promptly replaced by similar fixtures, chattels and articles of personal property at least equal in quality and condition to those replaced, free from chattel mortgages or other encumbrances thereon and free from any reservation of title thereto; or (h) after thirty days' notice to the mortgagor, in the event of the passage of any law deducting from the value of land for the purposes of taxation any lien thereon, or changing in any way the taxation of mortgages or debts secured thereby for state or local purposes; or (i) if the mortgagor fails to keep, observe and perform any of the other covenants, conditions or agreements contained in this mortgage; or (j) if the mortgagor fails to keep, observe and perform any of the covenants, conditions or agreements contained in any prior mortgage or fails to repay to the mortgagee the amount of any instalment of principal or interest which the mortgagee may have paid on such mortgage with interest thereon as provided in paragraph 16 of this mortgage.**or the note secured hereby**

15. That the mortgagor will, in compliance with Section 13 of the Lien Law, receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

16. If the mortgagor fails to pay any instalment of principal or interest on any prior mortgage when the same becomes due, the mortgagee may pay the same, and the mortgagor on demand will repay the amount so paid with interest thereon at the legal rate and the same shall be added to the mortgage indebtedness and be secured by this mortgage.

17. That the execution of this mortgage has been duly authorized by the board of directors of the mortgagor.

*(strike out clause 17 if inapplicable)*

18. This mortgage is subject and subordinate to    See Schedule B attached.

19. In the event of sale of the Premises or any part thereof, all sums due under this mortgage will become immediatley due.

20. All of the terms and conditions of the Note are hereby

incorporated and made a part of this Mortgage.

21.   In the event any one or more of the provisions contained in this Mortgage shall for any reason be held to be invalid, illegal or unforeceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Mortgage, but this Mortgage shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

This mortgage may not be changed or terminated orally. The covenants contained in this mortgage shall run with the land and bind the mortgagor, the heirs, personal representatives, successors and assigns of the mortgagor and all subsequent owners, encumbrancers, tenants and subtenants of the premises, and shall enure to the benefit of the mortgagee, the personal representatives, successors and assigns of the mortgagee and all subsequent holders of this mortgage. The word "mortgagor" shall be construed as if it read "mortgagors" and the word "mortgagee" shall be construed as if it read "mortgagees" whenever the sense of this mortgage so requires.

IN WITNESS WHEREOF, this mortgage has been duly executed by the mortgagor

IN PRESENCE OF:

_____
Joseph Gall

personally came

Joseph Gall

to me known to be the individual    described in and who
executed the foregoing instrument, and acknowledged that
he  executed the same.

JEAN A. DANIELS
Notary Public
NOTARY PUBLIC
My Commission Expires November 30, 2008

**STATE OF NEW YORK, COUNTY OF**                    ss:

On the         day of                    19    , before me
personally came
to me known, who, being by me duly sworn, did depose and
say that    he resides at No.

that    he is the
of                                        , the corporation described
in and which executed the foregoing instrument; that    he
knows the seal of said corporation; that the seal affixed
to said instrument is such corporate seal; that it was so
affixed by order of the board of directors of said corpora-
tion, and that    he signed h    name thereto by like order.

personally came

to me known to be the individual    described in and who
executed the foregoing instrument, and acknowledged that
he executed the same.

**STATE OF NEW YORK, COUNTY OF**                    ss:

On the         day of                    19    , before me
personally came
the subscribing witness to the foregoing instrument, with
whom I am personally acquainted, who, being by me duly
sworn, did depose and say that    he resides at No.

that    he knows
to be the individual
described in and who executed the foregoing instrument;
that    he, said subscribing witness, was present and saw
execute the same; and that    he, said witness,
at the same time subscribed h    name as witness thereto.

BLOCK: 1644
LOT: 59
COUNTY:New York
ADDRESS: 124-136 East 117th Stre
New York, New York

**Mortgage**
(SUBORDINATE)

TITLE No.

Joseph Gall

TO

Caro & Graifman, P.C.

SECTION
BLOCK  3125
LOT  1
COUNTY OR TOWN  Bronx County

2105 Daly Avenue
Bronx, NY
AKA 901 E. 80th St.

**RETURN BY MAIL TO:**

Caro & Graifman, P.C.
60 East 42nd Street
Suite 2001
New York, NY  Zip No.  10165

This space for use of Recording Office.

REEL 1 4 6 6 PG 1 2 3 3

Parcel I

SCHEDULE A

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of The Bronx, City and State of New York, bounded and described as follows:

BEGINNING at a point formed by the intersection of the Westerly side of Daly Avenue with the Northerly side of East 180th Street;

RUNNING THENCE Northerly along said Westerly side of Daly Avenue, 185.65 feet to a point;

THENCE Westerly and parallel with East 180th Street, 100.29 feet to a point;

THENCE Southerly and parallel with Honeywell Avenue 85.83 feet to a point;

THENCE Easterly and again parallel with East 180th Street, 2.06 feet to a point;

THENCE Southerly and again parallel with Honeywell Avenue 42.50 feet to a point;

THENCE Westerly and again parallel with East 180th Street, 2.06 feet to a point;

THENCE Southerly and again parallel with Honeywell Avenue 11.86 feet to a point;

THENCE Westerly and again parallel with East 180th Street, 90 feet to the easterly side of Honeywell Avenue;

THENCE Southerly along said Easterly side of Honeywell Avenue, 35.03 feet to the Northerly side of East 180th Street;

THENCE Easterly along said Northerly side of East 180th Street, 192 feet to the point or place of BEGINNING.

SAID premises being known as 2105 Daly Avenue, Bronx, New York

(Continued)

SCHEDULE A (Continued)

Parcel II
## LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of East 117th Street, distant 215 feet easterly from Southeasterly corner of Park Avenue and East 117th Street;

RUNNING THENCE southerly parallel with Park Avenue, 100 feet 11 inches to the center line of the block;

THENCE easterly along the center line of the block, 133 feet 7 inches;

THENCE northerly parallel with Park Avenue, 100 feet 11 inches to the southerly side of East 117th Street;

THENCE westerly along the southerly side of East 117th Street, 133 feet 7 inches to the point or place of BEGINNING.

Said premises being known as 124-136 East 117th Street, New York, New York

TOLBOL                           -LEGAL DESCRIPTION-

## SCHEDULE B

This mortgage is subject and subordinate to Mortgage dated the 1st day of November 1984, made by Thomas V. McLauglin and Joseph Gall to Citibank, N.A. in the principal sum of $499,000.00 and recorded on the 21st day of November 1994, (Reel) 568, page 1103, in the office of the City Register of the County of Bronx, State of New York which mortgage was assigned by Assignment of Mortgage from Citibank, N.A. to Employee Staffing of America, Inc. dated 1/7/92 and recorded 2/13/92 in Reel 1081, Page 934 in the office of the City Register of Bronx County, State of New York; which mortgage was assigned by Employee staffing of America, Inc. to S & J Realty Corp. by Assignment of Mortgage, dated October 4, 1996 and recorded on _____11/4/96_____ in the office of the City Register of Bronx County in Reel 1427 page 1931.

REEL/M4616 PG 1236

009713
PPK

4000
2000
2008
1
7000
5000
22,000

D 57

AKA 901 E 108 St.

RR: CARO & GRAIFMAN, P.C.
60 E. 42 St.
Suite 2001
NY NY 10165

RECEIVED
RECORDING TAX OF $ 22,000
Includes Special
Add'l Tax $ 2000
SERIAL No. CO 0985

MAY - 9 1997

*Jay R. Bobrow*
CITY REGISTER

MORT          37377
                  $57.0

MTGETX         37377
MTGETX    $22,000.0
05-09-97    BXO1    MTGETX      3737
                    PAID    MTGETX  $22,000.0

RECORDED IN BRONX COUNTY



OFFICE OF THE CITY REGISTER

1997 MAY -9 A II: 28

WITNESS MY HAND
AND OFFICIAL SEAL

X– 11980

# CERTIFIED COPY

## CITY OF NEW YORK
## DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER, BRONX COUNTY

I hereby certify that this is a true copy of the record consisting of ___8___ pages, if a seal of this Office is embossed (raised).

DATED 5/13/97

_____
CITY REGISTER

# EXHIBIT "D"

NCC v. Caro & Graifman

8/8/2007

Joseph Gall

Page 38

1    Q.    Did you end up doing that?

2    A.    I don't know whether -- whether they

3    recorded it.  I'm not sure if they recorded it in

4    both places.  I know it was definitely recorded in

5    the Bronx for sure.

6    Q.    Why sign a promissory note for $800,000 if

7    you believed you owed them $600,000?

8    A.    Well, I wasn't sure, as I said, the exact

9    amount.  It was maybe 650, 700, and of course, they

10   weren't collecting this immediately, either, and I

11   felt that was reasonable.

12   It was a reasonable number compared to what the

13   total numbers were of possible monies owed.

14   Q.    Well --

15   A.    I felt it was fair.

16   Q.    Did you think that you had any obligation

17   to pay interest on that note?

18   A.    Well, I would say this:  It depends on

19   when it was going to be collected.  Naturally, if

20   they couldn't collect it immediately or in the

21   six-month period, then sure, they were entitled to

22   interest.

23   Q.    Well, is there anything in the note itself

24   or in the mortgage that you recall expressing

25   entitled them to interest?