UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

NATIONAL COUNCIL ON )          3:00 CV 1925 (AHN)
COMPENSATION INS. INC. )        Hon. Alan H. Nevas, U.S.D.J.
                       )
          Plaintiff   )
                       )
v.                     )
                       )
CARO & GRAIFMAN, P.C.  )
JOSEPH GALL,           )
                       )
          Defendants   )

---

## CARO & GRAIFMAN, P.C.'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

Ronald M. Gutwirth, Esquire
90 S. Main Street
Orange, NJ 07050
(973) 678-8660
Attorney for defendant Caro
& Graifman, P.C.

# Table of Contents

Page

PROPOSED FINDINGS OF FACT . . . . . . . . . . . . . . . . . . 1

I.    THERE EXISTED A VALID AGREEMENT FOR LEGAL
      SERVICES BETWEEN JOSEPH GALL AND CARO &
      GRAIFMAN WHICH PROVIDED FOR PAYMENT OF
      $40,000.00 PER MONTH TO CARO & GRAIFMAN FOR
      400 HOURS OR MORE OF LEGAL SERVICES . . . . . . . . . 1

II.   CARO & GRAIFMAN'S ATTORNEYS PERFORMED
      APPROXIMATELY 14,705 HOURS OF SERVICES FOR
      JOSEPH GALL AND HIS AFFILIATED COMPANIES
      BETWEEN SEPTEMBER OF 1994 AND APRIL OF 1997 . . . . . 4

      A.    SUMMIT ROVINS AND FELDESMAN & GALL . . . . . . . 6

      B.    GALL AND MCLAUGHLIN V. SUMMIT ROVINS
            & FELDESMAN  . . . . . . . . . . . . . . . . . . 9

      C.    NCCI V. ESA; NATIONAL UNION FIRE INISURANCE
            V. GALL; LABOR FORCE OF AMERICA V. GALL  . . . 11

      D.    MCCALL V. ARTHUR ANDERSON, MCLAUGHIN V.
            ARTHUR ANDERSON, ARTHUR ANDERSON V.
            MCLAUGHLIN, MCLAUGHLIN V. CONNECTICUT
            HOUSING FINANCE CORPORATION  . . . . . . . . . 18

      E.    LABOR FORCE OF AMERICA V. DAMMON ASSOC. . . . 19

      F.    ESA V. MERCER  . . . . . . . . . . . . . . . . 19

      G.    USA V. GALL  . . . . . . . . . . . . . . . . . 20

III.  CARO & GRAIFMAN AND JOSEPH GALL ENTERED INTO A
      VALID MORTGAGE AGREEMENT TO SECURE THE UNPAID DEBT
      OF $645,138.57 . . . . . . . . . . . . . . . . . . . 47

IV.   CARO & GRAIFMAN DID NOT PARTICIPATE IN THE
      PREPARATION OF JOSEPH GALL'S FINANCIAL STATEMENT
      TO THE UNITED STATES DEPARTMENT OF PROBATION
      AND ADVISED THE COURT AND NCCI'S COUNSEL OF ALL
      OMISSIONS REGARDING THE MORTGAGE IN THE
      FINANCIAL STATEMENT . . . . . . . . . . . . . . . . 54

i.

CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . .  56

    I.    NEW YORK LAW APPLIES TO THE WITHIN ACTION
          BECAUSE MOST OF THE PARTIES ARE NEW YORK
          RESIDENTS AND NEW YORK HAS THE PRIMARY
          GOVERNMENTAL INTEREST IN THE CASE . . . . . . . .  58

    II.   THE MORTGAGE BETWEEN CARO & GRAIFMAN AND JOSEPH
          GALL IS NOT A FRAUDULENT CONVEYANCE BUT
          REPRESENTS BONA FIDE CONSIDERATION FOR AN
          ANTECEDENT DEBT . . . . . . . . . . . . . . . . .  59

    III. THE CROSSED OUT PROVISION OF CARO & GRAIFMAN'S
          MORTGAGE WHICH STATES THAT THE MORTGAGE AMOUNT
          WAS $340,000.00 DOES NOT PROVIDE EVIDENCE OF
          A FRAUDULENT CONVEYANCE BECAUSE CROSSED OUT
          PROVISIONS IN A CONTRACT ARE BARRED BY THE
          PAROL EVIDENCE RULE . . . . . . . . . . . . . . .  73

    IV.   NCCI CANNOT ESTABLISH THAT THE MORTGAGE AND
          NOTE BETWEEN CARO & GRAIFMAN WAS NOT MADE IN
          GOOD FAITH BECAUSE CARO & GRAIFMAN IS NOT AN
          INSIDER TO JOSEPH GALL AND HIS COMPANIES  . . . . .  75

    V.    CARO & GRAIFMAN HAS NO LEGAL RESPONSIBILITY FOR
          ANY MISREPRESENTATIONS MADE BY MR. GALL IN HIS
          FINANCIAL STATEMENT SUBMITTED TO THE UNITED
          STATES DEPARTMENT OF PROBATION . . . . . . . . .  78

    VI.   CARO & GRAIFMAN COMMITTED NO ETHICAL
          IMPROPRIETIES IN CONTINUING TO REPRESENT
          JOSEPH GALL AFTER INITIATING A LAWSUIT FOR
          LEGAL FEES BECAUSE JOSEPH GALL SIGNED A VALID
          CONFLICT WAIVER AND THE LAWSUIT SETTLEMENT
          ELIMINATED ANY CONFLICT . . . . . . . . . . . . .  80

    VII. CARO & GRAIFMAN IS ENTITLED TO INTEREST ON THE
          EIGHT HUNDRED THOUSAND DOLLAR MORTGAGE
          BECAUSE CONNECTICUT AND NEW YORK LAW ENTITLE
          A MORTGAGOR TO INTEREST AT STATUTORY RATES
          IF THE MORTGAGE IS NOT PAID ON DEMAND . . . . . .  83

    VIII.CARO & GRAIFMAN IS ENTITLED TO PREJUDGMENT
          INTEREST BECAUSE CONNECTICUT AND NEW YORK LAW
          ENTITLE A PARTY TO PREJUDGMENT INTEREST ON
          UNPAIDE CONTRACTUAL OBLIGATIONS . . . . . . . . . .  86

ii.

IX.   THE MORTGAGE MODIFICATION AGREEMENT IS NOT A
      FRAUDULENT TRANSFER BECAUSE IT DECREASED
      JOSEPH GALL'S INTEREST OBLIGATIONS TO CARO &
      GRAIFMAN . . . . . . . . . . . . . . . . . . . . . . . .   90

X.    CARO & GRAIFMAN IS ENTITLED TO COUNSEL FEES
      PURSUANT TO THE TERMS OF THE MORTGAGE
      AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . .   90

XI.   THE COURT HAS JURISDICTION OVER CARO &
      GRAIFMAN'S COUNTERCLAIM BECAUSE THE ISSUES
      INVOLVED IN THE COUNTERCLAIM ARE IDENTICAL TO
      THE ISSUES INVOLVED IN NCCI'S FRAUDULENT
      CONVEYANCE ACTION . . . . . . . . . . . . . . . . . . .   92

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . .   95

PROPOSED FINDINGS OF FACT

I.   THERE EXISTED A VALID AGREEMENT FOR LEGAL SERVICES BETWEEN
JOSEPH GALL AND CARO & GRAIFMAN WHICH PROVIDED FOR PAYMENT OF
$40,000 PER MONTH TO CARO & GRAIFMAN FOR 400 HOURS OR MORE OF LEGAL
SERVICES.

Chase Caro graduated from Princeton University and was admitted

to the bars of Virginia, Georgia, New York and a number of federal

courts.  (TR141-25 to 142-5; TR143-22 to 144-5).  On his graduation

from George Mason University Law School in 1986, Mr. Caro became

associated with Kilpatrick & Cody in Atlanta, Georgia, a firm which

employed between 120 and 150 attorneys.    (TR142-7 to 21).

Kilpatrick & Cody's rate charged for Mr. Caro's services was $175.00

per hour in 1986 and $225.00 per hour when he left in 1988.  (TR42-7

to 21).

In 1998, Mr. Caro became associated with Skadden, Arps, Slate,

Meagher & Flam, law firm which employed approximately 1200

attorneys.  (TR142-23 to 143-11).  Skadden, Arps, Slate, Meagher &

Flam charged $275.00 per hour for normal cases and $550.00 per hours

for "premium" billing and only one of Mr. Caro's cases was not a

case in which premium billing was charged.  (TR143-1 to 11).  Prior

to forming Caro & Graifman, Mr. Caro worked at Schneck, Waltman,

Hashmall & Mischell which charged $250.00 per hour for Mr. Caro's

services.  (TR143-12 to 19).  Brian Graifman, Mr. Caro's partner at

Caro & Graifman worked at Skadden, Arps, Slate, Meagher & Flam as

a litigation associate for six months after his graduation from New

York Law School in 1998 and returned to Skadden, Arps for three and

one-half years after a clerkship with Judge Robert J. Minor of the

Second Circuit of Appeals.  (TR503-24 to 505-9).  Immediately prior to forming Caro & Graifman, Mr. Graifman worked for another law firm, known as Schreiber, Simmons, Machnight and Tweedy.  (TR505-8 to 11).

Chase Caro met Mr. Gall when he worked on his cases with Schneck, Waltman, Hashmal & Mischell.  (TR144-18 to 21).  At the time Caro & Graifman was formed, Mr. Gall and his companies were the firm's sole clients.  (TR144-20 to 145-6).  The letter from Chase Caro to Joseph Gall which documented the initial fee arrangement between Caro & Graifman and Mr. Gall was admitted into evidence as plaintiff's Exhibit #1.  The agreement provided that Caro & Graifman, which was identified as "nufirm" in the letter, would provide at least 300 hours per month of legal services to Mr. Gall and that a prepaid retainer of $30,000.00 would be paid to Caro & Graifman on September 26, 1994.  (See letter of Chase A. Caro to Mr. Joseph Gall dated September 24, 1995 page two, paragraph two).  Mr. Gall never signed the retainer agreement, he stated that the September 24, 1994 letter written by Mr. Caro reflected the initial understanding that Caro & Graifman would provide 300 hours  of attorney time at $100.00 per hour and that $30,000.00 per month would be prepaid.  (TR9-23 to 10-15; TR11-25 to 12-13).  Mr. Gall and Mr. Caro testified that their understanding of the fee agreement required Caro & Graifman to preform work on behalf of Mr. Gall, the companies in which Mr. Gall was a shareholder and a principal and

2

all employees of corporations in which Mr. Gall was a principal. (TR75-2 to 7; TR451-16 to 21). As a result of the fact that in Caro & Graifman's first matter in which the firm represented Mr. Gall in defense of a lawsuit filed by Summit Solomon & Rovins, Mr. Gall attempted to assert the position that he was not personally responsibable for ESA's corporate debt, Mr. Caro advised Mr. Gall during the trial of <u>Summit v. Gall</u> that Caro & Graifman "world do the work for him and his companies and wanted one lump sum payment and "did not want to try to argue or allocate. It wasn't our job to try and allocate between the different companies." (TR453-13 to 454-9).

During the first month in which Caro & Graifman represented Mr. Gall and his affiliated companies, Mr. Caro advised Mr. Gall that the legal work on his cases would require a minimum of 400 hours per month. (TR149-1 to 7). Mr. Gall testified that he agreed to raise Caro & Graifman's minimum payment requirement to $40,000.00 per month. (TR18-10 to 18; TR61-17 to 62-4). Mr. Gall also agreed to pay a flat fee of 7.5% for ordinary expenses. (TR19-22 to 25). Mr. Gall agreed that the hourly rate of $100.00 per hour was a discounted rate based on making a $30,000.00 prepayment each month. (TR62-6 to 9).

II. CARO & GRAIFMAN'S ATTORNEYS PERFORMED APPROXIMATELY 14,705 HOURS OF SERVICES FOR JOSEPH GALL AND HIS AFFILIATED COMPANIES BETWEEN SEPTEMBER OF 1994 AND APRIL OF 1997

The testimony of Chase Caro, Neil Grossman, Brian Graifman and Joseph Gall regarding the complex nature of the legal services performed by Caro & Graifman and the time expended in the performance of the services was not controverted by plaintiffs. Mr. Caro testified that Caro & Graifman handled 21 matters for Joseph Gall between 1994 and 1997 and other matters which took between 1 to 2 days. (TR145-4 to 13). In the course of Caro & Graifman's representation of Mr. Gall and his companies, Caro & Graifman appeared for 71 depositions.

In a complaint filed in the Supreme Court of New York, County of New York, under Index #96-120 in which Caro & Graifman, P.C. sought fees for services rendered listed twelve specific cases in which Caro & Graifman, P.C. sought unpaid fees. Labor Force of America, Inc. v. Commissioner of Internal Revenue; (U.S. Tax Court, Docket No. 12010-96); Employee Staffing of America, Inc. v. William M. Mercer, Inc.; (U.S. District Court for the Southern District of New York; Civ. No. 96 Civ. 2054 (LAP)); Joseph Gall; Thomas V. McLaughlin; and MacGall Associates Limited Partnership v. Summit, Rovins and Feldesman; Sumit, Solomon and Feldman, f/k/a Summit, Rovins and Feldesman; Kenneth McCallion; and Bernard Persky; (Supreme Court of the State of New York, County of New York, County of Nassau; Index No. 29668/92); Al Ray Roberts v. Rumore

4

Construction Corp. v. Douglas S. Plotke, Jr., Inc. v. Employee Staffing of America, Inc.; (Supreme Court of the State of New York, County of Nassau; Index No. 885-92TP); Commissioners of the State Insurance Fund v. Employee Staffing of American, Inc.; (Supreme Court of the State of New York, County of New York; Index No. 405891/95); National Council on Compensation Insurance, The National Workers Compensation Reinsurance Pool; Maine Workers compensation Residual Market Pool;  The Aetna Casualty and Surety Company; Employers Insurance of Wausau, a Mutual Company; the Travelers Insurance Company; Insurance Company of North America; and the Fidelity & Casualty Company of New York v. Joseph Gall; Gloria Stevens; Susan L. Gregory, a/k/a Susan M. Gregory; Employee Staffing of America, Inc. Labor Force of America, Inc.; Employee Staffing, Inc.; Lasoa World-Wide, Inc. a/k/a Lasoa, Inc.; Hu-Ramco, Inc.; Danforth M. Smith; McLaughlin Associates; and Peter J. McLaughlin; (U.S. District Court for the District of Connecticut, Case No. B90-CV-246(EBB)); National Union Fire Insurance Company v. Employee Staffing of America, Inc.; and Joseph Gall; (U.S. District Court for the District of Connecticut; Case No. 3:93 CV 02504 (EBB)); Labor Force of America, Inc.; and Employee Staffing of America, Inc. v. National Council on Compensation Insurance; (U.S. District Court for the District of Connecticut; Case No. 393 CV 495 (TFGD)); Labor Force of America, Inc. v. Damman Associates, Inc.; (Superior Court, Judicial District of Stamford/Norwalk at Stamford; Case No. CV 95

4

0148893 S); <u>Labor Force of America, Inc. v. Moore's Moving and Storage, Inc.</u>; (Superior Court, Judicial District of Stamford/Norwalk at Stamford); <u>Orsine, Cotter & Carson, Inc. v. Joseph Gall</u>; Superior Court, Judicial District of Waterbury at Waterbury; Docket No. CV 9100101834S); and <u>Jose F. Mejia v. USA Car Rental and Employee Staffing of America, Inc.</u>; (Circuit Court of the Ninth Judicial Circuit In And for Orange County, Florida; Case No. CI95-6705). The complaint listed ten attorneys who worked on Joseph Gall's cases: Chase A. Caro, Esq. (partner); Brian D. Graifman, Esq. (partner); Neil D. Grossman, Esq. (associate); Eva M. Possavino, Esq. (associate); Lawrence S. Stone, Esq. (associate); Michael C. Sache (associate pending admission); Mark A. Babilonia, Esq. (associate); Natalie Feinstein, Esq. (associate); Taryn Harry, Esq. (associate).   (See complaint of Caro & Graifman which is admitted into evidence as plaintiff's Exhibit 4, paragraph 9).   The complaint listed the two members of Caro & Graifman's support staff who worked on Joseph Gall's matters": Rebecca Nyahay (paralegal) and Christy Dain (paralegal). (See complaint of Caro & Graifman which is admitted into evidence as plaintiff's Exhibit 4, paragraph 9) . The trial before the court consisted of testimony and documentary evidence about the following cases.

### A.  SUMMIT ROVINS AND FELDESMAN V. GALL

Summit, Rovins & Feldesman v. Gall was a lawsuit filed against
Joseph Gall and his affiliated companies by a law firm which had
represented Joseph Gall in National Council on Compensation
Insurance v. Joseph Gall, Docket #B90-cv-246 and Joseph Gall v.
Arthur Anderson.  (TR145-21 to 146-7).  Summit Solomon had billed
Joseph Gall approximately 1.5 million dollars for handling NCCI v.
Gall for twenty months and 2 million dollars for handling Joseph
Gall v. Arthur Anderson. (TR146-5 to 15).  Gall v. Arthur Anderson
was a RICO case dismissed by Judge Burns for failure to state a
claim and the dismissal was affirmed on appeal.  (TR146-10 to 15).
Summit Rovins demanded $800,000.00 from Mr. Gall in Gall v. Summit
Rovins.  (TR146-6 to 8).

On the day of trial in Summit v. Gall, counsel for Summit,
Rovins produced sixty one boxes of work product performed by Summit,
Rovins on behalf of Mr. Gall which had not been previously served
on Caro & Graifman or Mr. Gall's prior attorneys.  (TR169-22).  The
trial was continued because of the late service of the sixty one
boxes of trial exhibit and Natalie Feinstein, Esq., Eva Possavino,
Esq. and Chase Caro, Esq. went through the boxes to obtain
information utilized in the direct and cross examination of
witnesses.  (TR161-9 to 24).  Jury selection occurred within days
of the formation of Caro & Graifman and there were seven trial days
devoted to the case.  (TR146-16 to 23).  During the seven day trial,

Chase Caro, Esq., Brian Graifman, Esq. and Eva Possavino, Esq. were present in the courtroom throughout the trial. (TR271-6 to 72-4).

In the course of the trial of <u>Summit v. Gall</u>, Caro & Graifman received motions to preclude testimony based on the alleged inadequacies of Gall's bill of particulars and a motion to preclude Felice Mischel's testimony at trial. (TR261-15 to 23). Felice Mischel was the billing partner at Summit, Rovins who at the time of trial worked for Schneck, Weltman and Hashmal whose proffered testimony as the billing partner on Mr. Gall's files was that Summit, Rovins bills were excessive. (TR459-20 to 460-6). In <u>Summit Rovins v. Gall</u>, Judge Lobus permitted Ms. Mischel's testimony that over billing occurred on Mr. Gall's files but she was not permitted to testify as an expert or as the billing partner at Summit Rovins. (TR459-20 to 460-13).

The jury rendered a verdict of $286,000.00.00 and Summit Rovins was entitled to another $109,000.00 in pre-judgment interest. (TR146-10 to 15; 273-13 to 16). Caro & Graifman filed an appeal of the judgment based primarily on the trial court's refusal to permit all aspects of Felice Mischel's testimony. (TR147-10 to 15). After Caro & Graifman filed an appeal of the jury verdict, Summit Rovins & Feldman filed liens against all the New York properties owned by Joseph Gall and sent notices to all Joseph Gall's clients demanding payment of the New York State Supreme Court judgment. (TR284-12 to 20). Summit Rovins also sent letters to Caro & Graifman and Schneck

7

Weltman indicating that Mr. Gall could not pay his law firms prior to paying the judgment. (TR284-15 to 23). Caro & Graifman thus moved before the trial judge to get the restraining notices released and Mr. Gall posted a $396,000.00 bond to guarantee the judgment. (TR284-24 to 285-9). In approximately March of 1995, Summit Rovins attorneys filed additional restraining notices claiming entitlement to interest during the appeal judgment which exceeded the $396,000.00 bond posted on the judgment. (TR313-8 to 22). Caro & Graifman reached an agreement allowing Gall to post an additional $20,000.00 to cover additional interest on the judgment. (TR313-16 to 23).

Summit Rovins filed motions to dismiss appeal and moved for reargument in the New York State Supreme Court Appellate Division when the motion to dismiss the appeal was denied. (TR326-1 to 8). In April of 1995, Caro & Graifman prepared its appellate brief in Summit Rovins v. Gall. (TR317-17 to 318-1). While the judgment for fees was on appeal, Caro & Graifman on two occasions was forced to move on order to show cause before the trial judge, Judge Lobus, to compel Summit Rovins to release the files necessary for Caro & Graifman's representation of Gall to Caro & Graifman. (TR76-9 to 18). Summit Rovins appealed one of the orders compelling release of Gall's files to Caro & Graifman to the Appellate Division and the Appellate Division affirmed Judge Lobus. (TR76-13 to 14). Summit Rovins v. Gall settled for a total of $295,000.00 prior to an

8

adjudication of the appeal which was substantially less than the $395,000.00 jury verdict and Summit Rovins $800,000.00 demand. (TR146-24 to 10 to 15; TR146-24 to 147-15).

### B.   GALL AND MCLAUGHLIN V. SUMMIT ROVINS AND FELDESMAN

Gall v. Summit Rovins was an action for malpractice, breach of contract, fraud, and rescission that was filed in the New York State Supreme Court. (TR154-21 to 155-20). The basis for the malpractice claim was that Joseph Gall and Tom McLaughlin were sued by Arthur Anderson for slander because of statements made at a press conference by Summit Rovins attorneys John Amabile and Kevin McCallion in the course of their representation of Gall and McLaughlin in a case captioned McLaughlin v. Arthur Anderson. (TR155-2 to 6; TR220-3 to 7). A second basis for liability against Summit Rovins was the firm's agreement into a lopsided discovery order in which Arthur Anderson was given sixteen days of depositions without having to provide a single deposition for plaintiffs. (TR155-9 to 20). The trial court denied Summit Rovins motion to dismiss plaintiff's complaint. (TR155-10 to 20). The Appellate Division reversed the denial of the motion to dismiss and Caro & Graifman unsuccessfully moved for leave to appeal the New York State Supreme Court Appellate Division's judgment in the State of New York's highest court, the New York State Court of Appeals. (TR157-5 to 24).

In Gall v. Summit Rovins, Summit Rovins asserted a counterclaim

for counsel fees which was abandoned after Mr. Gall's incarceration. (TR157-21 to 24). In defense of the counterclaim, Caro & Graifman was required to file two motions before Judge DeGrass in the New York State Supreme Court before it obtained the deposition of Stewart Summit, Bernard Persky, John Amabile and Kevin McCallion, the Summit Rovins partners who worked on Joseph Gall's files. (TR220-22 to 221-14). In December of 1996, Summit Rovins took the depositions of Tom McLaughlin and Joseph Gall and the depositions took approximately five days. (TR468-25 to 469-7). At Mr. McLaughlin's deposition, a Caro & Graifman associate, Eva Possavino, was physically attacked by Andrew Goodman, Esq., the attorney for Summit Rovins. (TR465-6 to 23). Summit Rovens filed a motion for a trial preference on the counterclaims against Joseph Gall before the New York State Court of Appeals determined whether it would hear the New York State Supreme Court Appellate Division First Dept. reverasal of the denial of the motion to dismiss and reinstate Joseph Gall's affirmative claims against Summit Rovins. (TR469-25 to 470-9). When Summit Rovins motion for a preference on the counterclaims was denied, Summit Rovins appealed to the New York State Supreme Court, Appellate Division and the appeals necessitated opposition by Caro & Graifman. (TR470-6 to 11).

C.  NCCI V. ESA; NATIONAL UNION FIRE INSURANCE V. GALL; LABOR
FORCE OF AMERICA V. GALL

In the within trilogy of cases, Joseph Gall was charged by insurance companies with fraud and RICO violations in connection with understating the number of employees and the amount of payroll for his employee leasing companies. (TR151-23 to 152-3). Caro & Graifman filed counterclaims on behalf of Gall, Employee Staffing of America and Labor Force of America based on the insurance companies anti trust violations and boycotting of ESA's business. (TR152-14 to 22). In connection with the defense of the NCCI, National Union and Labor Force of America cases, Joseph Gall and his companies retained an actuarial expert, Charles Gruber, who opined that the experience modification factor (Emod Factor), the method by which workers' compensation insurance carriers adjust rates based on claims experience, was five times higher for Mr. Gall's companies than justified by underwriting standards and the insurance companies inflated the EMod Factor to put Mr. Gall and his employee leasing companies out of business. (TR168-6 to 169-23).

Gall and his affiliated companies asserted that as part of their plan to destroy Joseph Gall and his companies, National Union and NCCI paid eighty percent more on workers' compensation claims filed by Gall employees than on workers' compensation claims filed by other insureds. (TR298-4 to 21). In order to establish that NCCI and National Union overpaid on workers' compensation claims against Joseph Gall and his companies, Caro & Graifman's attorneys

11

conducted claim file reviews in February and March of 1995 and engaged expert nurses who opined that NCCI and National Union overpaid on workers' compensation claims filed against ESA and LFA. (TR296-23 to 298-6). As Joseph Gall was required to pay administrative expenses on all monies paid on workers compensation claims for his companies, Caro & Graifman argued that overpayment of claims adversely effected ESA and LFA's premiums. (TR298-22 to 299-14).

Defense of NCCI and National Union cases was rendered time consuming because Mr. Gall tape recorded all his conversations related to his businesses and there were hundreds of tapes which had to be heard by Caro & Graifman attorneys Chase Caro, Esq., Natalie Feinstein, Esq., Mark Babilonia, Esq. and Lawrence Stone, Esq. were the attorneys who listened to the tapes. (TR158-19 to 159-6; TR256-25 to 258-13; TR264-17; TR295-23 to 296-4; TR443-4 to 13; TR445-15 to 18). In the first month of Caro & Graifman's existence between September 26, 1994 and October 24, 1994, National Union filed eleven motions including a motion for discovery, a motion for sanctions for failure to provide discovery, and a motion for partial summary judgment on ESA and Gall's counterclaims. (TR246-8 to 247-9). NCCI and National Union filed six or seven multiple sanction motios against Gall and ESA based on the alleged failure to provide insurance companies with sufficient information to make an adequate audit of ESA and LFA's payroll. (TR253-21 to 254-18). When Caro

& Graifman conducted document discovery, Caro & Graifman learned that Wausau Insurance Company had conducted an audit which calculated the payroll for ESA and LFA accurately. (TR152-14 to 20). The premium calculations in the Wausau audit which was based on Mr. Gall's insurance application and discovery documents were within $500.00 of the payroll numbers calculated by ESA's expert Charles Gruber and Mr. Gruber stated that the chances of him and NCCI and National Union coming up with the same numbers without utilization of the identical payroll data were less likely than getting struck by lightening near the courthouse. (TR165-19 to 166-21). As Joseph Gall and Caro & Graifman believed that National Union and NCCI committed bad faith and asserted frivolous positions which they contended that Mr. Gall did not provide sufficient information for an audit of his companies' payroll, Caro & Graifman filed a motion pursuant to Federal Rule of Civil Procedure Rule 11 seeking sanctions against NCCI and National Union. (TR165-19 to 167-11). Caro & Graifman argued that NCCI and National Union's possession of the audit precluded their civil fraud claim because there awareness of ESA's payroll two years prior to amendments to their complaint established that they could not rely on the allegations that ESA and Joseph Gall understated their payroll. (TR167-12 to 168-5).

In November of 1994, Caro & Graifman took the deposition of Dick Thomas, the Chief Executive of AIG and National Union who

testified that the insurance companies knew that Employee Staffing had a higher payroll than it admitted and thus arguably could not establish reliance on ESA's payroll information necessary to prove civil fraud. (TR254-22 to 255-18). In November of 1994, Caro & Graifman received extensive document productions from defendants which revealed the basis for the EMod calculations of National Union applied to Joseph Gall's employee leasing companies and review of the document production was assigned to Natalie Feinstein, Esq. and Eva Possavino, Esq. (TR262-9 to 14). In November of 1994, National Union produced documents including depositions in prior cases in which plaintiffs employee leasing companies alleged boycotting and antitrust claims against National Union. (TR263-8 to 20). In November of 1994, plaintiff and National Union filed a motion to amend the complaint which contained additional claims for breach of contract. (TR265-12 to 15). The amended complaint contained information regarding Employee Staffing of America's operations in states outside Connecticut the names of employers and employers affiliated with ESA, the nature of the work history classification associated with employees, the total payroll associated with each separately classified employee and the prior claims history of ESA Inc. and LFA Inc. (TR267-18 to 268-11). The filing of the amended complaint necessitated the filing of an amended answer. (TR269-10 to 16).

Prior to Caro & Graifman's substitution in NCCI v. ESA and

National Union v. Gall, the United States District Court for the District of Connecticut referred the complaint and counterclaims in National Union v. Gall and NCCI v. Gall for informal hearings before Special Master Reif. (TR179-14 to 180-14; TR251-3 to 254-7). The parties agreed that NCCI's lost premiums calculated at $5,147,000.00 and a stipulation was entered on the basis of the agreement. Special Master Reif's recommendation contained no reference to ESA's counterclaims and no deduction to the premiums owed because of the fourteen percent discount given to all NCCI customers and ESA's improper claim and practices and Caro & Graifman thus objected to the recommendation. (TR179-14 to 180-14; TR251-9 to 252-22). By January of 1995, Joseph Gall was indicted for conspiracy, mail fraud, false statements and failure to file tax returns. (TR7-17 to 22). As a result of his indictment, Mr. Gall had taken the Fifth Amendment in response to his discovery obligations. Five of the parties in National Union v. Gall moved to dismiss ESA and Joseph Gall's counterclaims for failure to provide discovery. (TR 279-17 to 280-8). Caro & Graifman opposed the motions to dismiss based on the assertion of his Fifth Amendment privilege could not be a legitimate basis to dismiss a civil lawsuit. (TR295-18 to 22).

One of the arguments advanced by Caro & Graifman in opposition to the motion to dismiss ESA's counterclaim was the insurance carriers had awareness of the representations made by Mr. Gall to procure insurance coverage because they had the tape recordings made

15

to MIMS representatives, the insurance agents who procured coverage for ESA. (TR295-18 to 296-22). In March, April and May of 1995, Caro & Graifman filed briefs in opposition to various motions for summary judgment and ESA's counterclaims, opposition to motions for sanctions against Joseph Gall for exercising his Fifth Amendment rights in response to discovery requests and reply briefs in support of Gall's motion for summary judgment on his counterclaims. (TR307-2 to 21; TR317-12 to 16). As <u>National Union v. Gall</u> and <u>NCCI v. Gall & ESA</u> had approximately twenty seven parties, dispositive motions for summary judgment on plaintiff's claims and on defendants' counterclaims which required separate briefing were filed in January, February, March, April, May and July of 1995. (TR304-25 to 305-25; TR279-17 to 24; TR295-18 to 296-4; TR307-2 to 22; TR317-12 to 16; TR384-14 to 386-24). The major brief in opposition to summary judgment on defendants' counterclaims was filed in July of 1995 and was originally 120 pages before it underwent many revisions in order to comply with rules on page limitations. (TR384-14 to 22). Chase Caro viewed the major brief and opposition to summary judgment on defendants' counterclaims as a "bet the company brief" and "a multi million dollar brief" because of importance of counterclaims to the continuation of Joe Gall's Employee Staffing businesses. (TR384-14 to 386-12). All the attorneys at Caro & Graifman including Chase Caro, Esq., Brian Graifman, Esq., Mark Babilonia, Esq., Eva Possavino, Esq. and Karen

16

Harry, Esq. worked on the briefs.    (TR386-23 to 387-4).

In September of 1995, a *sua sponte* stay was issued on all the federal cases against Mr. Gall until the disposition of his criminal case.    (TR399-25 to 400-3).    Caro & Graifman moved for reconsideration of the stay which was based in part on affidavits by Charles Gruber indicating that discovery of the Wausau audit revealed that the plaintiff insurance companies had evidence necessary to audit the payrolls of Joseph Gall's employee leasing companies. (TR400-2 to 21).    As a result of Caro & Graifman's work on the counterclaim, Chase Caro had discussed settlement of the counterclaims for $4,500,000.00 as an offset against the $5,147,000.00 lost premium claim which was the subject of a stipulation before Special Master Reif.    (TR402-13 to 403-3). Joseph Gall refused to accept the settlement despite Mr. Caro's recommendation and Mr. Caro thought of his inability of persuade Mr. Gall to accept the settlement as his "greatest failing as a lawyer." (TR403-8 to 3).    Mr. Caro moved for reconsideration of the stay of the counterclaims because the he believed the counterclaims had significant value.    (TR403-4 to 8).    After Joe Gall's conviction, the counterclaims set forth by Joseph Gall and his affiliated companies in <u>National Union v. Gall</u>, <u>NCCI v. Gall</u> and <u>NCCI v. ESA</u> were dismissed on the basis of *res judicata* and collateral estoppel. (TR153-21 to 154-3).

17

D.   MCCALL V. ARTHUR ANDERSON, MCLAUGHLIN V. ARTHUR
ANDERSON, ARTHUR ANDERSON V. MCLAUGHLIN, MCLAUGHLIN
V. CONNECTICUT HOUSING FINANCE CORPORATION

Caro & Graifman was the attorney for Thomas McLaughlin and Joseph Gall in multiple state and federal lawsuits in which Joseph Gall, Thomas McLaughlin and corporate entities controlled by Messrs. Gall and McLaughlin alleged that when they bid successfully on a housing and urban development contract, they were forced to retain contractors selected by Arthur Anderson at inflated prices. (TR157-25 to 158-19).  McLaughlin and Gall contended that Arthur Anderson's conduct constituted a RICO claim and Arthur Anderson pursued a counterclaim for libel which was based on  statements made by Summit Rovins and Feldesman in a press release which described the lawsuit.  (TR154-21 to 155-6; TR157-25 to 158-25).  As part of their representation of Messrs. Gall and McLaughlin and their companies, Caro & Graifman had to review hundreds of tapes made by Mr. Gall of his telephone conversations with vendors and parties to the litigation.  (TR158-18 to 159-6).  When Caro & Graifman assumed representation of Messrs. Gall and McLaughlin in the Arthur Anderson case, the Caro & Graifman attorneys had to become familiar with pending motions to prepare for status conferences.  (TR160-2 to 13). There were multiple non suit motions in the Arthur Anderson cases based on discovery which were denied.  (TR314-21 to 25; TR388-9 to 12).  Caro & Graifman responded to three sets of interrogatories. (TR415-15 to 416-1).  In April of 1999, Caro & Graifman pursued

18

Arthur Anderson's opposition discovery regarding the financial dealings among the people Messrs. Gall and McLaughlin claimed they were forced to do business with. (TR318-2 to 319-21). As a result of Mr. McLaughlin and Mr. Gall's criminal convictions and their consequent desire to assert their Fifth Amendment privilege against said incrimination, Messrs. Gall and McLaughlin agreed to a settlement in which they paid $347,000.00 in counsel fees. (TR471-8 to 472-1).

### E.  LABOR FORCE OF AMERICA V. DAMMAN ASSOC.

Labor Force of America v. Damman was a case in which plaintiff, an Employee Staffing company owned by Joseph Gall was denied coverage necessary to stay in business because the Damman insurance agent did not reveal that two prior applications for insurance in the normal market had been rejected. (TR172-10 to 21). Caro & Graifman deposed Kathleen Apanowich, the individual who prepared the application and the President of Damman Insurance Agency. (TR13-22 to 14-12). Caro & Graifman propounded interrogatories in June of 1996 and attended a scheduling conference in the case. (TR14-22 to 23; TR16-10 to 14). After a number of depositions, defendants obtained summary judgment. (TR354-14 to 355-6).

### F.  ESA V. MERCER

Esa v. Mercer involved a claim against an actuary whose allegede  inaccurate findings resulted in ESA's loss of its Rhode Island workers' compensation policy. (TR177-23 to 178-5). ESA

claimed that as a result of the bond which it had to post for security in Rhode Island for its workers' compensation claims, ESA lost profits. (TR363-25 to 364-13). Neil Grossman, Esq., an attorney on the case, went to Rhode Island to conduct a document inspection. (TR365-1 to 6). Mr. Grossman propounded interrogatories in the case. (TR364-18 to 22). As a result of Joseph Gall's criminal conviction, defendant obtained summary judgment based on the argument that any lost profits made by Mr. Gall would have been illegal profits. (TR363-18 to 364-17).

### G. USA V. GALL

Although Caro & Graifman was not Joseph Gall's criminal defense counsel in August of 1995, Chase Caro filed a sentencing memorandum in USA v. Gall. (TR389-4 to 12). The sentencing memorandum and affidavits regarding Joseph Gall's sentencing included arguments regarding calculations of the loss for restitution in USA v. Gall. TR468-3 to 22). Mr. Caro testified at Mr. Gall's sentencing hearing. (TR144-1 to 179-12). (A copy of the sentencing hearing was admitted into evidence as plaintiff's Exhibit 5). In July of 1996, Caro & Graifman performed legal research for Mr. Gall and his criminal counsel which included having Neil Grossman, Esq. pull sixty six federal cases which were downloaded onto disks for Mr. Gall. (TR451-12 to 452-2). In explaining to the court why he performed legal services in a criminal case when he was not being paid the $40,000.00 per month on the civil cases, Mr. Caro testified

that the nature of his relationship with Mr. Gall permitted him to ask Caro & Graifman to research labor issues and to pull materials for him. (TR469-16 to 421). Mr. Caro testified an additional reason he did the criminal research was that it became clear there was going to be a direct relationship between the results in Mr. Gall's criminal and civil cases. (TR452-10 to 23).

Neil Grossman, who was associated with Caro & Graifman for three years had no financial interest in the outcome of the within litigation. (TR331-24 to 332-25). Mr. Grossman testified that he kept time records at Caro & Graifman because he had always kept time records in his prior experiences as an attorney or paralegal. (TR83-11 to 23). The time records kept by Mr. Grossman were admitted into evidence with the stipulation that if Mr. Grossman were asked about the Gall entries in his records, he would testify that he spent the enumerated time on the Gall matters. (TR351-20 to 353-21). Mr. Grossman recalled working on ESA v Damman, the Arthur Anderson cases, National Fire Insurance v. Gall, and NCCI v. Gall and NFA v. Gall. (TR337-23; TR339-16 to 24; TR346-2 to 11). In NCCI v. Gall, Mr. Grossman spent time working on objections to the stay of NCCI v. Gall. (TR365-18 to 366-18). Mr. Grossman was aware that all the attorneys at Caro & Graifman including Chase Caro, Brian Graifman, Mark Babilonia, Larry Stone, Dana Foster, Michael Sachs and Chris Lange were working on Gall matters because Caro & Graifman was a small office and the attorneys could see what

all other attorneys worked on.    (TR366-13 to 367-6).    Mr. Grossman participated in drafting the affidavit and sentencing memorandum and the affidavit of Charles Gruber filed in connection with the restitution hearing.    Mr. Grossman testified that he spent the majority of his time working on Joseph Gall's cases until Joseph Gall's sentencing at which time the work tapered off.    (TR331-1 to 10; TR31-8 to 17).    With the exception of his time records for July of 1996, Neil Grossman's time records constituted his complete time records.

Brian Graifman was a partner at Caro & Graifman from 1994 to 1997 and stated that the firm began with "no planning whatsoever" and the lawyers used boxes as desks for their laptops. (TR506-10 to 23).    During his period as partner at Caro & Graifman, he recorded his time spent on all matters in red books which contained a description of the work performed, the client for whom the work was performed and the amount of time spent on the work.    (TR506-10 to 23).    Mr. Graifman's red books were admitted into evidence subject to the stipulation that if the entry referred to a Gall matter, Mr. Graifman would testify that he performed he work stated on Mr. Gall's behalf and spent the time set forth in the records.    (TR506-24 to 513-19).    Mr. Graifman testified that all associates who worked for Caro & Graifman worked on Gall matters because the Gall cases were overwhelming.    (TR515-21 to 516-20).    Mr. Graifman knew that Mr. Gall was supposed to pay a fixed retainer every month and

that the retainer was not paid on time except "maybe the first month." (TR516-21 to 517-10).  As a result of the fact that he knew Caro & Graifman received a monthly payment rather than payment of itemized bills, Mr. Graifman did not bother to total the time on the Gall matters as he did for Caro & Graifman's other clients because "we were billing by project not time and he wasn't paying anyway." (TR520-22 to 522-9).  Mr. Graifman has no interest in any fee awards made by the court as he ceded his equity in Caro & Graifman in exc liability and was happy to get out of Caro & Graifman "with my shirt on and just my shirt."  (TR542-4 to 5).

Caro & Graifman did not present bills broken down to mr. Gall but submitted monthly statements requesting the $40,000.00 per month which was due.  (TR12-15 to 13-3; TR75-12 to 21).  Joe Gall testified that he did not require time sheets or itemized billing statements from Caro & Graifman because he was satisfied that the firm performed 400 hours per month on his cases since he personally participated in the legal work and knew that prior law firms he retained charged double or triple the amount of Caro & Graifman for the same work.  (TR60-11 to 18; TR66-25 to 67-11).  As a result of Mr. Gall's participation in his legal work he was frequently up until 11:00 PM or even 1:00 AM conferring with Caro attorneys and working on litigation documents.  (TR66-25 to 68-5; TR76-14 to 21; TR88-1 to 11).  Joe Gall would speak to Mr. Caro about his cases between eight and twelve times per day and Mr. Caro would visit Mr.

23

Gall in Connecticut a few times a week. (TR62-14 to 63-4). Mr. Gall frequently spoke to Neil Grossman about his cases on a daily basis and spoke to most of the people at Caro & Graifman pretty often. (TR68-12 to 69-2). Joe Gall received a copy of a document prepared by Caro & Graifman on his behalf and receipt of the documents satisfied him that Caro & Graifman performed 400 hours of work per month of legal work on his behalf. (TR67-16 to 24). Copies of the work performed by Caro & Graifman was kept at Mr. Gall's office and consisted of "literally hundreds of boxes." (TR88-1 to 9).

Neil Grossman and Brian Graifman kept detailed records regarding the work performed on Joseph Gall's files and the time records were admitted into evidence. (TR333-11 to 334-6; TR506-24 to 507-12). Chase Caro had kept detailed time records of time expended on Joseph Gall's matters in a laptop which was stolen in 1998 or 1999. (TR231-10 to 13). Chase Caro had partial incomplete time records diaried in diaries which marked for identification which contained approximately 2,700 hours and represented about seventy eight percent of the time he spent on Gall matters. (TR231-4 to 18; TR574-16 to 575-13). Mr. Caro arrived at estimations of the time spent by attorneys on Gall matters from a review of one hundred ninety eight boxes of documents related to Caro & Graifman's representation of Gall, reviewing Caro & Graifman's computer records which itemized and described the documents prepared by Caro &

24

Graifman which contained the word Gall and reviewing the briefs and memoranda prepared for Gall and his "to do list" which reflected his assignments to associates on the Gall cases.  (TR231-19 to 233-19; TR239-14 to 20).  The exhibit which summarized the work performed by Caro & Graifman on Gall matters which contained monthly estimates of time spent by attorneys was marked for identification as BD and Mr. Caro was permitted to read the contents of the document into evidence for the purpose of refreshing his recollection.  (TR231-15 to 241-11).  As Mr. Caro assigned all the work in the Gall cases to Caro & Graifman Associates and had knowledge of the work speed of the associates and access to the work product produced by the associates, he had an accurate basis to estimate the times spent by Caro & Graifman on the Gall cases.  (TR571-6 to 13; TR572-3 to 22).

From September 24, 1994 through October 31,1994 the first five weeks  of Caro & Graifman's existence, Caro & Graifman attorneys spent 450 hours on Joseph Gall's cases.  (TR 248-6 to 19).  The work involved in reviewing and responding to the eleven motions in National Union v. Gall, preparing for the jury trial in Summit v. Gall and commencing objections to Special Master Reif's Report. (TR146-24 to 147-8; TR246-8 to 247-9; TR251-1 to 252-11).   Mr. Caro's time estimates for September 24, 1994 through October, 2004 included 166 hours for himself and 290 hours for his partners and associates.  (TR249-18 to 23).  Mr. Caro had an independent recollection that Caro & Graifman attorneys performed 450 hours of

work on Mr. Gall's cases because he recalled meeting with Mr. Gall on October 26, 1994 and advising Mr. Gall that Caro & Graifman would have to bill 400 hours per month rather than 300 hours per month to perform the necessary work on his cases.   (TR219; TR250-9 to 18).

In November of 1994, Mr. Caro estimated that Caro & Graifman worked approximately 800 hours on Joseph Gall's cases which included time estimates of 150 hours for himself, 253 hours for Brian Graifman, 120 hours for Natalie Feinstein, 230 hours for Eva Possavino and 50 hours for Mark Babilonia.   (TR272-19 to 25).   The work performed by Caro & Graifman in November included commencement of the trial in <u>Summit v. Gall</u>, preparation of objections to Special Master Reif's report reviewing the document discovery responses in <u>NCCI v. Gall</u> and reviewing the amended complaint filed in <u>NCCI v. Gall</u>.   (TR260-17 to 261-10; 263-9 to 25; 268-12 to 269-9).

In December of 1994, Mr. Caro estimated that Caro & Graifman attorneys spent 590 hours working on Mr. Gall's matters which included estimates 180 hours for himself, 62 hours for Brian Graifman, 110 hours for Natalie Feinstein, 75 hours for Eva Possavino and 170 hours for Mark Babilonia.   (TR279-1 to 16).   The work included taking <u>Summit v. Gall</u> to verdict and filing a notice of appeal of the verdict.   (TR273-13 to 23).   The work for December included filing orders to show cause to compel Summit to release Mr. Gall's files.   (TR275-20 to 276-8).   In <u>NCCI v. Gall</u>, Caro & Graifman received seven new motions to dismiss Mr. Gall's

26

counterclaims and performed work in response to an amended complaint in NCCI v. Gall. (TR273-24 to 274-9, TR275-9 to 19; TR276-22 to 277-4). By December 19, 1994, Caro & Graifman began performing legal research for Mr. Gall's criminal counsel. (TR277-22 to 278-6).

In January of 1995, Caro & Graifman performed 544 hours of work on Mr. Gall's cases which included 170 hours for Chase Caro, 24 hours for Brian Graifman, 100 hours for Natalie Feinstein, 50 hours for Eva Possavino and 200 hours for Mark Babilonia. (TR295-9 to 17). In MCCI v. Gall, seven of the defendants filed motions to dismiss counterclaims in NCCI v. Gall (TR279-17 to 285-8). In Summit v. Gall, Caro & Graifman responded to restraining notices on Mr. Gall's companies and liens filed against Mr. Gall's New York properties. (TR284-2 to 23). In Gall v. Summit, motions were filed regarding the priority of depositions and Eva Pasovino was physically attacked by Jonathan Goodman at a deposition. (TR286-20 to 287-15).

Caro & Graifman performed 463 hours of services on Mr. Gall's cases in February of 1995 which included 110 hours for himelf, 98 hours for Brian Graifman, 70 hours for Natalie Feinstein, 65 hours for Eva Possavino and 130 hours for Mark Babilonia. (TR306-19 to 307-1). The work performed by Caro & Graifman in February of 1994 included file reviews of NCCI's files. (TR296-23 to 297-7). Natalie Feinstein and Eva Possavino (TR300-15 to 25). Natalie

Feinstein worked on the Plotsky v. ESA, a case in which an ESA employee injured outside Connecticut attempted to file a workers' compensation case in Connecticut. (TR303-6 to 304-2). In Arthur Anderson v. Gall, Mark Babilonia filed an amended complaint and provided responses to answers to interrogatories. (TR304-14 to 19).

In March of 1995, Caro & Graifman performed 583 hours of work on Mr. Gall's cases which included 190 hours for Chase Caro, 23 hours for Brian Graifman, 120 hours Natalie Feinstein, 90 hours for Eva Possavino and 160 hours for Mark Babilonia. (TR316-22 to 317-10). The work in National Union included filing briefs in opposition to motion for summary judgment on the counterclaims and reply briefs in support of motions to amend the counterclaims and opposition to sanction motions based on Mr. Gall's assertion of his Fifth Amendment right against self-incrimination as the bases to deny discovery requests. (TR307-2 to 309-2). In the National Union action, Caro & Graifman took spent two days taking the deposition of Mary Goff of MIMS and Richard Thomas of AIG which revealed the payroll information relied on by National Union and NCCI for Mr. Gall's companies. (TR307-22 to 308-5). In National Union, Natalie Feinstein and Eva Possavino reviewed National Union's claim files in New Hampshire and Delaware. (TR309-3 to 12). In the Arthur Anderson matter, Caro & Graifman moved to amend plaintiff's complaint, successfully opposed a non-suit motion based on alleged discovery violations and prepared Joseph Gall, Thomas McLaughlin for

depositions. (TR310-18 to 15; TR314-21 to 315-3). In <u>Summit v.
Gall</u>, Caro & Graifman reached an agreement regarding the amount of
interest to be posted on appeal and defeated a motion to dismiss the
appeal. (TR315-8 to 20). In Plotsky, Caro & Graifman received
discovery demands and Mr. Caro made several trips to Connecticut to
obtain responses to the discovery requests. (TR311-19 to 312-8).

In April of 1995, Caro & Graifman performed 471 hours of work
on Mr. Gall's cases which included 150 hours by Chase Caro, 41 hours
for Brian Graifman, 60 for Natalie Feinstein, 150 for Eva Possavino
and 80 for Mark Babilonia. (TR319-22 to 320-6). All the attorneys
at Caro & Graifman continued to work on the dispositive motions to
dismiss counterclaims. (TR317-12 to 16). In April of 1995, Caro
& Graifman prepared the appellate brief in <u>Summit v. Gall</u>. (TR317-
17 to 318-1). In <u>Gall v. Summit Weldings</u>, briefs were exchanged on
discovery disputes. (TR318-2 to 6). In the Arthur Anderson cases,
Caro & Graifman worked with Tom McLaughlin to oppose an order of
compliance sought by Arthur Anderson with respect to discovery
obligations. (TR318-22 to 22). Caro & Graifman sought additional
information about the financial dealings of the defendants and
Arthur Anderson. (TR318-20 to 319-21).

In May of 1995, Caro & Graifman worked a total of 395 hours on
Mr. Gall's files which included 75 hours for Chase Caro, 41 hours
for Brian Graifman, 70 hours for Natalie Feinstein, 40 hours for
Taryn Harry, 80 hours for Eva Possavino and 89 hours for Mark

Babilonia.    (TR325-2 to 11).    In <u>NCCI v. ESA</u>, Caro & Graifman received more dispositive motions for summary judgments and all the attorney at the firm continued working on opposition to the dispositive motions.    (TR320-7 to 22).    Mr. Caro and Mr. Graifman continued to work on the Rule 11 motion in National Union NCCI which was based on plaintiffs' alleging that Mr. Gall did not provide sufficient information for a payroll audit on his company despite the fact they had actually conducted an audit.    (TR323-15 to 24).

In Arthur Anderson, Caro & Graifman moved to quash a subpoena of plaintiffs' financial information and successfully defeated a non-suit motion.    (TR324-23 to 325-1).    In <u>Gall v. Summit Rovins</u>, Caro & Graifman took the depositions of Summit partners Messrs. Persky, McCallion, Summit and Amabile after moving before Judge DeGrass to compel the depositions.    (TR323-25 to 324-11).    In <u>LFA v. NCCI</u>, Caro & Graifman filed objections to the Magistrate's recommendation plaintiffs' complaint be withdrawn with prejudice or dismissed on summary judgment.    (TR324-12 to 22).      In July of 1995, Caro & Graifman worked approximately 441 hours on Joseph Gall's cases and the total included 121 hours for Chase Caro, 5 hours for Brian Graifman, 50 hours for Taryn Harry, 140 hours for Eva Possavino and 125 hours for Mark Babilonia.    In <u>NCCI v. Gall</u> and <u>National Union v. ESA</u>, all the attorneys at Caro & Graifman worked on opposition to the dispositive motions to dismiss the

counterclaims of Joseph Gall and his related companies. (TR384-4 to 387-1). In Summit v. Gall, Caro & Graifman finalized a settlement in which plaintiff received $295,000.00 despite the fact that the judgment amount with interest was $416,000.00. (TR347-6 to 18). In LFA v. NCCI, Caro & Graifman continued to work on objections to rulings made by Magistrate Judge Martinez which recommended the entry of summary judgment and the denial of a motion to dismiss the case without prejudice. (TR387-18 to 388-8). In Arthur Anderson, plaintiffs successfully opposed a non-suit motion based on plaintiffs' alleged failure to provide discovery. (TR388-9 to 389-3).

In August of 1995, Caro & Graifman worked approximately 436 hours on Mr. Gall's cases which included 95 hours for Chase Caro, 16 hours Brian Graifman, 50 hours for Taryn Harry, 140 hours for Eva Possavino, and 135 hours for Mark Babilonia. (TR391-13 to 22). In August of 1995, Mr. Caro and Mr. Babilonia finalized the Rule 11 motion in National Union v. Gall which required review of ESA's document productions going back to 1990 and 1991. (TR389-4 to 11). Caro & Graifman continued to oppose motions to dismiss the counterclaims in the National Union case. (TR389-24 to 390-3). Caro & Graifman moved for reconsideration of the stay entered in the NCCI, National Union and LFA cases. (TR389-3). In support of the motion to obtain relief from the stays, Chase Caro and Eva Possavino reviewed 46 cases throughout the country in which stays were

31