investments and fifteen percent interest to investor in a Ponzi scheme was not a fraudulent transfer because transferor received extinguishment of an antecedent debt and transferee received repayment of investment and reasonable interest); In re All-Type Printing, Inc., 274 B.R. 316, 324 (Bkrtcy.D. Conn. 2002) (closely held corporation's payment of retirement debt to one of its principals not a fraudulent transfer because corporation received perfectly equivalent value in exchange for payments). Caro & Graifman have established as a matter of law that the mortgage filed and recorded prior to the restitution judgment against Joseph Gall constituted equivalent value for an antecedent debt. The uncontroverted testimony of Chase Caro, Neil Grossman and Brian Graifman establish that Caro & Graifman exceeded the 13,000 hours on the more than twenty six litigated matters for Joseph Gall and his affiliated companies. Joseph Gall conceded that he was bound by the agreement to pay $100.00 per hour for legal services performed on his behalf for each attorney at Caro & Graifman. Mr. Gall and Mr. Caro agreed that the minimum time needed to service Mr. Gall and his companies would be 400 hours per month. Caro & Graifman performed an excess of 400 hours on most of the months of their thirty one month representation of Mr. Gall and his affiliated companies. Although Caro & Graifman briefly contended in their litigation with Mr. Gall that he owed market rates of $275.00 per hour in the lawsuit, the settlement amount of the lawsuit was based

on his original rate of $100.00 per hour for attorney time which was based on the prepayment of $30,000.00 which Mr. Gall only paid on time in the first month of his representation.

The rate of $100.00 per hour was reasonable because both Mr. Graifman and Mr. Caro had prior work experience at Skadden Arps Meagher & Flam, which billed between $350.00 and $500.00 per hour for Mr. Caro's services. Pepe & Hazard, the firm which represents NCCI in the within action, represented Arthur Anderson in one of the cases in which Caro & Graifman's fees are an issue. In the Arthur Anderson in which Caro & Graifman were the adversaries, Pepe & Hazard billed approximately $350,000.00 for the services in one case. Summit, Rovens & Feltzman billed Mr. Gall in excess of $2,500,000.00 for representation in NCCI v. Gall and Gall v. Arthur Anderson. Caro & Graifman's overall charge to Mr. Gall of approximately $1,300,000.00 for handling twenty six litigated matters is thus reasonable and constitutes substantial equivalent value for the mortgage of $800,000.00.

Plaintiff NCCI bases its claim that Caro & Graifman's mortgage constitutes a fraudulent conveyance on the absence of complete billable time records for the work performed for Mr. Gall. NCCI's factual contention is not completely accurate because Mr. Graifman and Mr. Grossman kept itemized time records and NCCI stipulated that Mr. Grossman and Mr. Graifman would testify to the accuracy of their billing records which were admitted into evidence by stipulation.

NCCI's argument that the absence of complete time records establishes a fraudulent conveyance ignores the United States Court of Appeals Second Circuit's holding in Joseph Brenner Assocociates, Inc. v. Starmaker Entertainment, Inc., 82 F.3d 55 (2d. Cir. 1996) which held that an attorney's failure to present monthly bills to a client for more than two years was not a valid defense to a claim against the client for counsel fees when the client could not insist on regular billing and paid the identical monthly installment payments regardless of the amounts billed.  In response to the client's objection, the attorney responded that the client did not want to receive monthly bills because of his depression.  In holding that an attorney's failure to submit bills could not constitute a defense to a breach of contract suit for outstanding bills or defeat a quantum merit claim, the court stated:

> Second, Brenner argues that Lee's failure to bill Brenner for over two years constituted a substantial breach of their retainer agreement, thus warranting recision of their contract . Although the court indicated in its opinion that Brenner did not argue breach of contract, it examined the parties' payment arrangement, nothing that it was "somewhat unusual."  lee initially informed Brenner of her hourly rate and that she billed regularly. For the first two years, regardless of the amount billed, Brenner made monthly installment payments of $2000 to $2,500, and later $1,000.  Lee admits that from October 1992 until September 1994, she did not submit a bill to Brenner, but claims that she did not do so because of Brenner's depression at the time.  Lee testified that she received payments from Brenner through March of April of 1994 and that he did not. complain about the bill. Brenner offered no evidence that he objected to his unusual billing practice until after their relationship came to an end.  We do not condone Lee's conduct.  We agree with the district court, however, that she did not

materially breach her contract with Brenner.  Moreover, we were to find a breach based on failure to bill, Lee would still be entitled to recover for her services based on quantum meruit theory.  See <u>In re Rosenman & Colin</u>, 850 F.2d 57, 63 & n. 3 (2d Cir. 1988). <u>Joseph Brenner Associates, Inc. v. Starmaker Entertainment, Inc.</u>, 82 F.3d at 57-58.

<u>Joseph Brenner Associates, Inc. v. Starmaker Entertainment, Inc.</u> mandates the rejection of NCCI's argument that an attorney's failure to present itemized bills or time records upon the request of a client can constitute a basis for a third party to allege that the failure to present bills establishes that payment of the bills is a fraudulent conveyance.  As in <u>Brenner</u>, the client specifically indicated that he did not want to receive itemized time records and wanted to pay a flat fee for all services rendered by the law firm. Joseph Gall's receipt of copies of Caro & Graifman's work product, his involvement in the work and his constant communication with Caro & Graifman about his cases provides the court with ample documentation that Caro & Graifman attorneys performed the services referred to in the testimony of Chase Caro, Brian Graifman and Neil Grossman and documented by the time records of Mr. Grossman and Mr. Graifman.  It is extremely significant that while Joseph Gall's disagreement with Summit, Rovin & Feldesman's meticulous, itemized billing records resulted in two lawsuits and a jury trial, Mr. Gall conceded the reasonable and necessity of Caro & Graifman's attorney's fees.  The testimony of Chase Caro, Brian Graifman, Neil Grossman and Joseph Gall regarding the enormous work performed by

Caro & Graifman attorneys on behalf of Mr. Gall was uncontested.
Caro & Graifman's lack of billing records which Mr. Gall never
required do not present a scintilla of the required clear and
convincing evidence that the mortgage provided by Joseph Gall to
Caro & Graifman was fraudulent.

There exists a difference of approximately $144,000.00 between
the agreed upon debt of $646,000.00 to Caro & Graifman. An
$800,000.00 mortgage was entered into between the parties after it
became clear that Mr. Gall could not pay the settlement. Mr. Caro
and Mr. Gall explained that the difference between $646,000.00 and
$800,000.00 was to compensate Caro & Graifman for interest on past
due balances that would not be paid in the near future. In Carey
v. Mui-Hin Lau, 140 F.Supp.2d 291 (S.D.N.Y. 2001) plaintiff attorney
filed suit to collect unpaid attorney's fees and sought interest
from the client despite the absence of a provision in the retainer
agreement for interest. The court held that since an attorney
client bill is an account stated which may include interest even
though there is no express agreement to pay interest, the attorney
was entitled to interest. The court stated:

> Plaintiff claims interest of 12% per annum on defendants'
> unpaid balances from November 1, 1991 to the date of
> judgment. Although the second retainer did not provide
> for interest charges on unpaid legal fees, "[a]n account
> stated may include interest even though there was
> initially no express agreement to pay interest."
> Davidson v. Klaess, 280 N.Y. 252, 256, 20 N.E.2d 744
> (1939). When an attorney "(1) notifies the client that
> the lawyer intends to charge a reasonable interest rate
> on unpaid legal fees and (2) provides the client with a

reasonable opportunity to pay the outstanding unpaid balance before any interest accrues, it is not improper to charge interest on unpaid legal fees although the retainer agreement is silent." NYC Eth. Op.2000-2, 2000 WL 704692, at *3 (N.Y.C.Assn.B.Comm. Prof. Jud.Eth.). <u>Carey v. Mui-Hin Lau</u>, 140 F.Supp.2d at 298-299.

The agreement between Mr. Gall and Mr. Caro to increase the compensation to Caro & Graifman to reflect reasonable interest for a $650,000.00 was not fraudulent to plaintiff or any of Mr. Gall's creditors. Mr. Gall and Mr. Caro's agreement to compensate Caro & Graifman for Mr. Gall's inability to make payments constituted reasonable compensation for Mr. Gall's use of the money owed Caro & Graifman. As Caro & Graifman gave Mr. Gall an opportunity to pay his outstanding balance before he was charged interest, the agreement to pay approximately $145,000.00 in interest on balances that were long overdue met the requirements of <u>Carey v. Mui-Hin Lau</u>, 140 F.Supp.3d 291 (S.D.N.Y. 2001).

Under New York and Connecticut law, courts interpreting attorney client contracts for legal services give particular scrutiny to fee arrangements particularly if the fee agreement is modified subsequent to the commencement of the attorney client relationship. <u>King v. Fox</u>, 7 N.Y.3d 181, 851 N.E.2d 1184, 818 N.Y.S.2d 833 (2006) (ratification of fee agreement places burden on attorney to establish that acquiescence is made with full knowledge of all the material facts); <u>Baye v. Grindlinger</u>,, 78 A.D. 2d 690, 432 N.Y.S.2d 624 (2d Dept. 1980) (burden is on attorney to demonstrate the contracts made between attorney and client

71

subsequent to employment which are beneficial to the attorney are fair and reasonable and fully known by the client); <u>Updyke v. Kelly & Spellacy, P.C. v. Beckett</u>, 269 Conn. 613, 850 A.2d 145, 170 (Conn. 2004) (contract for fees between attorney and client entered into after the commencement of the attorney client relationship is closely scrutinized by the court because of the confidential nature of the attorney client relationship). As the modification of the agreement between Joseph Gall and Caro & Graifman preserved the $100.00 per hour rate initially agreed to in September of 1994, the increase in compensation to Caro & Graifman from approximately $650,000.00 to $800,000.00 based on Mr. Gall's non payment of the bills meets the close scrutiny required by New York and Connecticut law and is not unconscionable, oppressive or unfair to Mr. Gall and Mr. Gall's creditors. Moreover, as the initial agreement between Caro & Graifman provided for payment of legal fees at the rate of $100.00 per hour, the settlement between Caro & Graifman at $800,000.00 provides for compensation to Caro & Graifman at the rate of $98.18 per hour for 14,718 hours of work. As the settlement between Caro & Graifman and Mr. Gall provided for payment for an hourly rate which was less than the $100.00 per hour in the initial retainer letter, the settlement did not increase the compensation to Caro & Graifman from the initial agreement.

III. THE CROSSED OUT PROVISION OF CARO & GRAIFMAN'S MORTGAGE WHICH STATES THAT THE MORTGAGE AMOUNT WAS $340,000.00 DOES NOT PROVIDE EVIDENCE OF A FRAUDULENT CONVEYANCE BECAUSE CROSSED OUT PROVISIONS IN A CONTRACT ARE BARRED BY THE PAROL EVIDENCE RULE

NCCI's contention that the crossed out sections of the filed mortgage indicating that the mortgage amount was $340,000.00 provides evidence that the mortgage agreement is fraudulent requires the court to ignore the effect of a cross out and the parol evidence rule. Joseph Gall and Chase Caro indicated that the crossed out number of $340,000.00 in the mortgage reflected settlement discussions between them about Caro & Graifman's debt six months earlier, but could not explain the presence of the crossed out sections in the filed mortgage. NCCI's arguments ignores the principle accepted by the courts of New York and Connecticut that crossed out portions of a document evince an intention of the parties to reject a provision which was under consideration. O'Bryan v. O'Bryan, 67 Conn. App. 51, 787 A.2d 15, 19 (2001) (crossed out section of child support agreement which provides for payment of child support to post majority age children deemed to establish that agreement could not be modified to include post majority child support). In Tamm v. Gangitano, not reported in A.2d 2001 WL 254265 (Conn. Super.), defendants in a foreclosure action claimed that a crossed out section of the mortgage agreement indicated that foreclosure would not be pursued if defendant violated the mortgage agreement. The court indicated that since crossed out sections of a contract evince the parties specific rejection of the excised term

73

and consideration of the provisions would violate the parol evidence rule, crossed out sections should not be considered as binding on parties to a contract. The court stated:

> The parol evidence rule applies equally to the defendants' argument that the excision of the sentence from paragraph ten of the agreement evidenced an agreement by the plaintiff not to resume the foreclosure action if the defendants breached the agreement. "Contracts must be construed with reference to the words which they contain, and words which have been erased or crossed our ordinarily should not be construed. However, such words have been considered in ascertaining the intention of th eparties where the contract is ambiguous." 17A. C.J.S. 353, supra § 331. The result of the excision means that the sentence is not part of the agreement. Parol evidence rule bars the introduction of the excised sentence to vary or contradict the clear and unambiguous meaning of the agreement. <u>Heyman Associates No. 1 v. Insurance Co. of Pennsylvania</u>, supra, 231 conn. 779-81. <u>Tamm v. Gangitano</u>, not reported in A.2d 2001 WL 254265 (Conn. Super.).

In the case at hand, the clear unambiguous final provisions of the mortgage agreement indicate that the agreed upon number for the mortgage was $800,000.00. The mortgage note which contains no crossed out provisions indicates that the debt secured by the mortgage was $800,000.00. As crossed out provisions of agreements are not considered evidential as a result of the parol evidence rule, the cross out provisions do not provide competent, clear and convincing evidence that the mortgage between Joseph Gall and Caro & Graifman is fraudulent. Moreover, if Caro & Graifman accepted $340,000.00 as a settlement of Joseph Gall's bills for legal fees, Caro & Graifman would receive a total of $986,138.57 for 14,705 hours of work. If the mortgage were $340,000.00, Caro & Graifman's

74

hourly rate for services rendered to Mr. Gall would be $67.00 per hour. As $67.00 per hour would be preposterously low compensation for a New York attorney and would be thirty three percent less than the $100.00 per hour compensation agreed to in Chase Caro's letter of September 24, 1994, the crossed out portion of the mortgage agreement which identifies the mortgage amount as $340,000.00 is clearly a mistake which should be ignored.

IV.  NCCI CANNOT ESTABLISH THAT THE MORTGAGE AND NOTE BETWEEN CARO & GRAIFMAN WAS NOT MADE IN GOOD FAITH BECAUSE CARO & GRAIFMAN IS NOT AN INSIDER TO JOSEPH GALL AND HIS COMPANIES

NCCI alleges that the mortgage between Caro & Graifman should be invalidated because Caro & Graifman is an insider of Joseph Gall and his affiliated companies. Although some New York courts have invalidated conveyances to third parties for equivalent consideration on grounds that the insider status of the transferee demonstrated that the transaction was not made in good faith, the New York courts have limited the definition of insiders to shareholder, corporate officers, employees and relatives of the transferor. Dixie Yarns, Inc. v. Forman, 906 F.Supp. 929, 837 (S.D.N.Y. 1995)(closely held corporation's conveyance to individuals in family corporation who were shareholders, officers or directors of the corporation prior to the entry of judgment against corporation demonstrated lack of good faith because of the insider status of transferees); Mega Personal Lines Inc. v. Halton, 9 A.d.3d 553, 780 N.Y.S.2d 409 (3d. Dept. 2004) (corporation's transfer of

75

assets to major shareholder in corporation would constitute lack of good faith because of insider status of transferee); Southern Industries Inc. v. Jeremiah, 66 A.D.2d 178, 411 N.Y.S.2d 945 (2d Dept. 1978) (corporation's transfer of all its assets which brought $60,000.00 at a public auction to a director in exchange for cancellation of valid $150,000.00 antecedent debt invalidated because of the insider status of the transferee). Williams v. Fox, 227 A.D.2d 909, 643 N.Y.S.2d 270 (4th Dept. 1996) (corporation's transfer of its assets to President and principal shareholder deemed a fraudulent transfer pursuant to New York Debtor & Creditor Law § 272 because of the insider status of transferee). There are no cases which refer to retained professionals as insiders. In In re Investors Funding Corp. of New York Securities Litigation v. Dansker, 566 F.Supp. 193 (D.C.N.Y. 1983), the court rejected a contention that payments for legal services constituted fraudulent transfers. In holding that payments to legal professionals are not fraudulent transfers, the court stated:

> The twenty-seventh claim for relief alleges that between 1972 and 1974 Carro Spanbock was the recipient of fraudulent transfers totaling nearly $650,000.00. See Complaint ¶¶ 242, 536. the Trustee has neither alleged in the Complaint nor argued in his motion papers that these transfers were other than payments to Carro Spanbock for legal services. Unlike the allegations against Katz & Co., there is no claim that Carro Spanbock was paid by IFC for services that it never performed or that it performed for someone other than IFC. Accordingly, in view of this court's prior ruling that fraudulent transfers under both the Bankruptcy Act and New York law do not encompass payments to a professional for services which failed to meet professional standards

of performance, the Trustee's twenty-seventh claim for relief is dismissed against Carro Spanbock. <u>In re Investors Funding Corp. of New York Securities Litigation v. Dansker</u>, 566 F.Supp. at 201-202.

Neither Chase Caro nor Brian Graifman were shareholders and/or employees of any of Mr. Gall's affiliated companies. Mr. Graifman and Mr. Caro had no business dealings with Mr. Gall except for their retention by Mr. Gall as outside counsel in civil and criminal matters. Caro & Graifman had no involvement in any of Mr. Gall's criminal activities which were primarily Mr. Gall's misrepresentations to insurance companies about the payroll in his employee leasing companies. No shareholder or employee of Caro & Graifman is related to Mr. Gall. Caro & Graifman had to file suit against Mr. Gall to attempt to collect monies for legal services which remain unpaid eleven years after Mr. Gall's criminal conviction. An attorney who represents a client on a regular basis does not qualify as an insider since the term has been uniformly limited to shareholder, officers, relatives and employees of transferors. NCCI's intention that an attorney who performs legal work for a client with serious civil and criminal legal problems should be considered an insider would jeopardize the ability of people with serious criminal and legal problems to obtain competent counsel since the consequence of being accorded insider status would impair an attorney's ability to get paid. A defendant in a civil action has the constitutional right to appointed counsel if the allegations in the civil lawsuit can provide a basis for

criminal liability. NCCI's argument that attorneys for individuals such as Mr. Gall whose status and conduct as a civil defendant provided a basis for criminal convictions should be accorded insider status would result in governmental responsibility for many civil defendants legal fees and would convert many millionaires who are civil defendants into public charges. NCCI has no legal basis to contend that Caro & Graifman is an insider to Mr. Gall and his affiliated companies.

V.    CARO & GRAIFMAN HAS NO LEGAL RESPONSIBILITY FOR ANY MISREPRESENTATIONS MADE BY MR. GALL IN HIS FINANCIAL STATEMENT SUBMITTED TO THE UNITED STATES DEPARTMENT OF PROBATION

NCCI has presented evidence that Joseph Gall intentionally misrepresented his financial condition by omitting references to Caro & Graifman's note and mortgage in his financial statement to the United States Department of Probation. Mr. Gall's misrepresentations to the United States Department of Probation have no legal significance because Caro & Graifman had no involvement in the preparation and filing of Mr. Gall's financial statement and a transferee who receives bona fide consideration as a result of a conveyance has no legal responsibility for the criminal or fraudulent acts of the transferor. In re Sharp International Corp. v. State Street Bank & Trust Co., 403 F.3d 43 (2d Cir. 2005), State Street Bank and Trust Company determined through independent investigation that shareholders in a corporation to which State Street loaned money were fraudulently looting the corporation by

depositing borrowed money in their personal accounts. Instead of advising the corporation's other creditors about the illegal activity, State Street Bank & Trust Co. quietly required the shareholders to repay their debt to State Street Bank & Trust and assisted the shareholders in obtaining additional credit from unwitting lending institutions.

Creditors who claimed damages caused by State Street's failure to notify them about the criminal fraud of its creditor argued that the payments made to State Street should be considered a fraudulent conveyance. The court rejected the contention that State Street owed a fiduciary duty to co-creditors which required them to advise of the fraudulent conduct of its borrower. The court stated:

> State Street had no affirmative duty under New York law to inform Sharp, Sharp's existing creditors, or Sharp's prospective creditors of the Spitzes' fraud. See Bank Leumi Trust Co. v. Block 3102 Corp., 180 A.D.2d 588, 589, 580 N.Y.S.2d 299, 301 (1st Dept. 1992) ("The legal relationship between a borrower and a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower..."). In re Sharp International Corp. v. State Street Bank & Trust Co., 403 F.3d at 52, fn. 2.

State Steet conclusively establishes that Caro & Graifman owed no fiduciary duty to co-creditor NCCI. Despite the absence of any fiduciary duty to NCCI, the facts in the within case demonstrate that Chase Caro as an officer of the court took affirmative steps to notify NCCI about the mortgage. As a result of Chase Caro's action, all Mr Gall's co-creditors and the Court had notice of the mortgage between Mr. Gall and Caro & Graifman. (See transcript of

restitution hearing of July 24,1997, TR 56-13 to 63-3). The transcript of the restitution hearing in U.S.A. v. Gall was admitted into evidence by stipulation as plaintiff's exhibit number 12.). As a result of Mr. Caro's frankness and candor, NCCI was able to protect its rights and file a timely, challenge to the mortgage as a fraudulent conveyance. As a result of Mr. Caro's frankness and candor, any potential prejudice cause by Mr. Gall's misrepresentation and deception was eliminated. To invalidate a mortgage given to Caro & Graifman as bona fide consideration for prior legal services because of Mr. Gall's misrepresentations would impermissibly visit the sins of the litigant on the attorney.

VI. CARO & GRAIFMAN COMMITTED NO ETHICAL IMPROPRIETIES IN CONTINUING TO REPRESENT JOSEPH GALL AFTER INITIATING A LAWSUIT FOR LEGAL FEES BECAUSE JOSEPH GALL SIGNED A VALID CONFLICT WAIVER AND THE LAWSUIT SETTLEMENT ELIMINATED ANY CONFLICT

NCCI has alleged that Caro & Graifman maintained an impermissible conflict of interest by continuing to represent Mr. Gall after the firm filed suit to collect legal fees. Mr. Caro testified that as Mr. Gall was on trial in his criminal case before the court and had no money to pay another attorney funds to pursue the civil cases and it would be impossible for substitute counsel to become familiar with the gargantuan case load of Mr. Gall, withdrawal was not possible because there was no way he could comply with Rule of Professional Conduct 1.16(1) which limits withdrawal to circumstances in which it "can be accomplished without material adverse effect on the client." (TR182-19 to 183-4). Mr. Gall

80

confirmed that he asked Caro & Graifman not to withdraw from his cases because of the harm withdrawal would cause to his cases. (TR71-8 to 73-3). Mr. Gall signed four conflict waivers which were admitted into evidence as defendants' Exhibit BC. (See TR72-6 to 9). Mr. Gall and Mr. Caro testified that the lawsuit was settled shortly after suit was filed. (TR72-17 to 19; TR184-10 to 185-7).

In Hotel Prince George Affiliates v. Maroulis, 194 A.D. 440 599 N.Y.S. 2d. 27 (1993) an attorney represented partners of a corporation in an accounting action in which one of the partners had allegations of wrongdoing against the attorney. The attorney secured conflict waivers from all the partners in the corporation including the partner who made the allegations of wrongdoing. The partner subsequently withdrew the allegations of wrongdoing against the attorney, but defense counsel moved to disqualify the attorney from representation of the partners based on an impermissible conflict of interest. The court concluded that the conflict waiver signed by all the partners and the withdrawal of the allegations of wrongdoing by the one partner against the attorney precluded adverse counsel from arguing that the representation was barred by an impermissible conflict of interest. The court stated:

> However, in view of the fact that plaintiff in Action No. 2 has agreed to drop allegations of personal wrongdoing against Bert which created the potential conflict of interest preventing Berg from representing other partners in these lawsuits, there no longer exists a sufficient reason to deny these parties their choice of counsel,

especially where they have submitted consents to having
Berg represent them, and have been made aware of any
potential conflict (see <u>S & S Hotel Ventures Ltd.
Partnership v. 777 S.H. Corp.</u>, 69 N.Y.2d 437, 515
N.Y.S.2d 735, 508 N.E.2d 647; <u>Rowe v. De Jesus</u>, 106
A.D.2d 284, 482 N.Y.S.2d 291). The motion to strike said
allegations in Action No. 2 should also be granted.

There was no impermissible conflict of interest in Caro &

Graifman's continuation of representation of Mr. Gall and his

affiliated companies. As in <u>Hotel Prince</u>, the proceeding which

formed the bases of the alleged conflict of interest was eliminated

within approximately 30 days of the lawsuit when Mr. Caro and Mr.

Gall settled the lawsuit. Moreover, Mr. Gall signed four separate

conflict waivers and urged Mr. Caro to continue his representation

of him because withdrawal would have caused irreparable harm since

Mr. Gall had no funds to obtain substitute counsel and the cost of

procuring separate counsel would have been prohibitive even if Mr.

Gall had the funds. Moreover, the purpose of conflict of interest

rules is to assure that a client receives zealous representation.

Although Mr. Caro faced financial ruination because of Mr. Gall's

inability to pay Caro & Graifman fees which he agreed to pay, Mr.

Gall's inability to pay never caused Caro & Graifman to abandon

their dedication to Mr. Gall's cases. Despite the fact that Mr.

Caro helped Mr. Gall obtain a $400,000 loan for the express purpose

of paying Caro & Graifman and Mr. Gall used the loan to pay his

criminal counsel, Mr. Caro honored Mr. Gall's request to continue

his representation to avoid damage to Mr. Gall. Mr. Caro continued

to work on Mr. Gall's cases without compensation subsequent to the April 24, 1997 mortgage. Although Mr. Caro might have successfully moved to be relieved as counsel when he filed suit against Mr. Gall, Mr. Gall as a convicted *pro se* defendant would have been in a vulnerable situation if the motion had been granted. NCCI should not be permitted to utilize Rules of Professional Conduct for advantage in civil litigation when the alleged violation of conflict of interest rules which were waived by Mr. Gall and eliminated by the settlement between Mr. Gall and Caro & Graifman benefitted Mr. Gall by assuring him of continued representation in complex civil litigation. The alleged conflict of interest by Mr. Caro and Caro & Graifman provides no legal bases to invalidate the mortgage between Caro & Graifman and Joseph Gall.

VII. CARO & GRAIFMAN IS ENTITLED TO INTEREST ON THE EIGHT HUNDRED THOUSAND DOLLAR MORTGAGE BECAUSE CONNECTICUT AND NEW YORK LAW ENTITLE A MORTGAGOR TO INTEREST AT STATUTORY RATES IF THE MORTGAGE IS NOT PAID ON DEMAND

Caro & Graifman is entitled to interest on the sums secured by the mortgage between C&G and Gall because Connecticut and New York law entitle a mortgagor to the statutory rate of interest if the mortgage is payable on demand. In Peoples Savings Bank v. Corrado, 198 A.2d 209 (1964), plaintiff foreclosed on a note secured by a mortgage which provided for interest but did not state the specific interest rate. Defendant contended that the absence of an interest rate in the mortgage agreement deprived plaintiff of the right to collect interest. In rejecting defendant's contention, the court

held that the interest rate set by:

> As we understand the defendant's claim, it is that the failure to set out specifically in the mortgage deed the rate of interest charged and the failure to state the date of maturity render the mortgage invalid as to the defendant because it would be impossible to ascertain from the land records the precise amount of the debt due. General Statutes § 37-1, which sets the interest rate at 6 percent a year where the agreement makes no other provision, has to be read in the contract in this case; v. Benedict & Co., 127 Conn. 291, 293, 16 A.2d 593; and therefore it fixes the applicable rate of interest. Perry v. Cohen, 125 Conn. 457, 460, 11 A.3d 804. Peoples Savings Bank v. Corrado, 198 A.2d at 210.

The version of CGSA § 37-1 in effect at the time the mortgage between Caro & Graifman and Gall was executed states:

> (a). The compensation for forbearance of property loaned at a fixed valuation, or for money, shall, in the absence of any agreement to the contrary, be at the rate of either per cent a year; and, in computing interest, three hundred and sixty days may be considered to be a year.
>
> (b). Unless otherwise provided by agreement, interest at the legal rate from the date of maturity of a debt shall accrue as an addition to the debt.

In Hustnar v. Schetter, 284 A.D. 2d 499, 728 N.Y.S.2d 479 (A.D. 2 Dept. 2001), plaintiff filed suit on three notes payable on demand which did not contain a specified rate of interst. When plaintiff moved for summary judgment, the motion court did not award any interest to plaintiff because the promissory notes did not specify that the payee was entitled to any interest. In reversing, the Appellate Division recognized that New York law provided for the payment of interest at the New York statutory judgment rate if a promissory note which is payable on demand does not specify a

specific rate of interest.  The court stated:

> The Supreme Court erred, however, in failing to award the plaintiff interest on the three notes from the date she demanded payment until the date of judgment.  Where a note provides for specified interest rate, that rate shall be applied (see, Uniform Commercial Code § 3-122[4]).  If a note does not have an interest provision, but is payable on demand, interest accrues from the date of the demand (see, <u>Van Vliet v. Kanter</u>, 139 App. Div. 1903, 124 N.Y.S. 63), and the rate of interest to be applied is the statutory rate for judgment (see, Uniform Commercial Code §§ 3-118[d], 3-122[4]).  The first note, payable on demand, provided that interest be paid on the note at the specified rate.  The second and third notes were payable on demand but did not include an interest provision.  Accordingly, the Supreme Court erred in failing to award interest on all three notes from the date payment was demanded until the date of the judgment. <u>Hustnar v. Schetter</u>, 728 N.Y.S.2d at 481.

In the case at hand, both the mortgage and the promissory note refer to an unspecified interest rate which was to be in effect prior to any litigation on the validity of the mortgage if the mortgagor could not pay the mortgage debt on demand.  In his deposition, Gall testified that he understood that he had an obligation to pay interest on the mortgage and promissory note if Caro & Graifman "couldn't collect it immediately or in the six month period." Although the mortgage modification between Caro & Graifman and Gall which provided for a specified rate of ten percent per annum was executed on October 23, 1997, subsequent to the judgment for restitution against Joseph Gall, the mortgage and promissory note which refer to interest predate the judgment of restitution. On the basis of <u>Peoples Savings Bank v. Corrado</u> and <u>Hustnar v. Schetter</u>, the laws of Connecticut and New York clearly entitle a

mortgagee to interest at a statutory rate if a promissory note provides for interest but does not specify a rate.

Interest in this within action is required because Gall's balance owed to Caro & Graifman at the time of execution of the mortgage note was $655,000.00. At the agreed upon rate of payment between Gall and Caro & Graifman of $40,000.00 per month and 7.5 percent for ordinary expenses, Gall was more than a year behind in his payments to Caro & Graifman and Caro & Graifman continued to work on his files without full payment despite the fact that Gall's financial and legal difficulties made payment to Caro & Graifman in the immediate future impossible. Interest on unpaid legal fees are permissible even if the client does not expressly agree to pay interest providing that the attorney notifies the client of his intent to charge interest and provides the client with a reasonable opportunity to pay the overdue balance. Cary v. Nui Hin Lau, 140 F.Supp. 2d 291, 298-299 (S.D.N.Y. 2001). In the case at hand, the client has consented to the payment of interest at a reasonable rate. The court should thus endorse the contract between Caro & Graifman and Gall.

VIII. CARO & GRAIFMAN IS ENTITLED TO PREJUDGMENT INTEREST BECAUSE CONNECTICUT AND NEW YORK LAW ENTITLE A PARTY TO PREJUDGMENT INTEREST ON UNPAID CONTRACTUAL OBLIGATIONS

Caro & Graifman is entitled to prejudgment interest on the counterclaim because both Connecticut and New York law provide for the award of prejudgment interest on contractual obligation.

C.G.S.A. § 37-3a (statute provides for ten percent prejudgment interest in contract actions); <u>Killion v. Davis</u>, 69 Conn. App. 366, 793 A.2d 1237 (Conn. App. 2002) (employees who filed suit for breach of contract because of failure of employer to pay a bonus entitled to interest because employers nonpayment constituted detention of money by employer); <u>Milazzo v. Schwartz</u>, 44 Conn. App. 402, 690 A.3d 401 (Conn. App. 1997), certif. Denied 240 Conn. 926, 692 A.2d 1282 (1997) (trial court properly awarded prejudgment interest to defaulting mortgagee because failure to pay mortgage constituted wrongful detention of money from mortgagee); <u>Krol v. Goldring</u>, 38 Conn. Sup. 610, 458 A.2d 15 (Conn. Super. 1982)(plaintiff who filed breach of contract action against home inspection company because of failure to advise of extensive defects on his home entitled to prejudgment interest because award of interest was within equitable discretion of the trial court).  In <u>Millazo v. Schwartz</u>, 44 Conn. App. 402, 690 A.2d 401 (Conn. App. 1997), plaintiff sold a meat packing business to defendant and the purchase price of the business was secured by a mortgage and promissory note.  The trial court contended that the defendant was estopped from pursuing special defenses and awarded plaintiff damages and interest.  The court held that the award of prejudgment interest pursuant to C.G.S.A. § 37-3a is discretionary and the standard the court should apply is whether a litigant's acts wrongfully deprived the prevailing party of the use of money.  The court concluded that the failure to make payments

pursuant to a mortgage agreement constituted wrongful detention of money and entitled the mortgagor to interest. Articulating the rational for its decision, the court stated:

> The allowance of prejudgment interest under § 37-3a is a matter within the discretion of the trial court... This allowance turns on whether the detention of the money is or is not wrongful under the circumstances..." (Citations omitted; internal quotation marks omitted.) Patron v. Konover, 35 Conn. Ap. 504, 517, 646 A.2d 901, cert. denied, 231 Conn. 929, 648 A.2d 879 (1994).
>
> After a hearing on January3, 1996, the trial court awarded prejudgment interest to the plaintiff. The defendants did not appear at the hearing and did not contest the award until this appeal. We conclude that the trial court properly determined that the defendants breached the agreement by not paying amounts due pursuant to the mortgage notes and, therefore, that the detention of the money was wrongful. Accordingly, we conclude that the trial court did not abuse. Millazo v. Schwartz, 690 A.2d 690 A.2d at 404.

Under New York law, interset on contractual obligation is mandatory rather than discretionary. C.P.L.R. § 5001(a); Spodek v. Park Property Development Assoc., 96 N.Y.2d 577, 759 N.E. 2d 760, 783 N.Y.S. 2d 674 (Ct. App. 2001) (party entitled to statutory nine percent rate of interest established by C.P.L.R. § 5001(a)); 155 Henry Owners Corp. V. Lovlyn Realty Co., 231 A.D.2d 599, 647 N.Y.S.2d 30 (A.D. 21 Dept. 1996) (plaintiff who filed suit for breach of contract to install replacement windows entitled to prejudgment interest from earliest date of party's ascertainable loss). The New York courts do not require a party to demonstrate "wrongful detention of money to establish entitlement to prejudgment interest, but consider prejudgment interest as "a means of

indemnifying an aggrieved person." <u>Mohassel v. Fenwick</u>, 5 N.Y.3d
544 A.32 N.E.2d 1175, 799 N.Y.Supp 758, 762, citing <u>Matter of</u>
<u>Aurecchione v. New York State Div. Of Human Rights</u>, 98 N.Y.2d 21,
27, 744 N.Y.S. 2d 349, 771 N.E.2d 231 (2002) [citation and internal
quotation marks omitted]).    The mandatory award of prejudgment
interest in contract actions is apparent from the plain and ordinary
language of C.P.L.R. § 5001(a) which states:

> Actions in which recoverable. Interest shall be
> recovered upon a sum awarded because of a breach of
> performance of a contract, or because of an act or
> omission depriving or otherwise interfering with title
> to, or possession or enjoyment of, property, except that
> in an action of an equitable nature, interest and the
> rate and date from which it shall be computed shall be in
> the court's discretion.

In the case at hand, Caro & Graifman is entitled to interest
regardless of whether the court utilizes the mandatory standard of
New York or the discretionary standard of Connecticut.    As Caro &
Graifman was entitled to payment for the legal work performed for
Gall, the faiure of Gall to pay his legal bills constitutes the
wrongful detention of money identical to the non payment of money
of the mortgage in <u>Millazo v. Schwartz</u>, the controlling Connecticut
precedent on a mortgagee's entitlement to prejudgment interest upon
a mortgagor's default of payment.    Moreover, the actions of
plaintiff NCCI in filing the within lawsuit have wrongfully detained
Caro & Graifman's use of money.    If NCCI had not filed the within
lawsuit, Caro & Graifman could have sold the mortgage in 1997
because the mortgage of eight hundred thousand dollars was

approximately twenty five percent of the approximately three million

two hundred thousand dollars which accrued from the sale of the Gall

properties in 2007. Any factual and legal judgment which determines

that Caro & Graifman's mortgage constituted bona fide consideration

for an antecedent debt provides absolute support for the proposition

that the within lawsuit wrongfully detained money from Caro &

Graifman. Caro & Graifman is entitled to prejudgment interest

pursuant to C.G.S.A. § 39:3(a) or C.P.L.R. § 5001(a).

IX. THE MORTGAGE MODIFICATION AGREEMENT IS NOT A FRAUDULENT
TRANSFER BECAUSE IT DECREASED JOSEPH GALL'S INTEREST OBLIGATIONS TO
CARO & GRAIFMAN

Plaintiff NCCI contends that the mortgage modification

agreement between Joseph Gall and Caro & Graifman is a fraudulent

conveyance because it provided for interest to Caro & Graifman which

the initial mortgage did not include. As shown by proposed

conclusion of law number seven, NCCI's argument is incorrect because

the mortgage and mortgage note referred to interest if payment was

not made on demand and the law of Connecticut and New York provide

for inclusion of the statutory judgment rate for interest if a

mortgage or note does not provide for a specific rate. The mortgage

was executed between Caro & Graifman and Mr. Gall on April 30, 1997

and the parties agreed that the mortgage was not paid despite Mr.

Caro's request for payment. Pursuant to the original mortgage

agreement, interest would be due on April 30, 1997. The mortgage

modification agreement provided that interest would not commence

until November 1, 1997. The mortgage modification agreement thus increased the funds available to NCCI and thus did not transfer funds in violation of the restitution order.

The mortgage modification agreement provides for interest to accrue from November 1, 1997 which was the New York judgment rate at the time of the execution of the original mortgage. As there were sixty days remaining in 1997, interest due for Caro & Graifman for 1997 is calculated by multiplying 60/365 (.0164) X $800,000.00 X .10 which equals $13,072.00. For 1998 through 2007, interest is due at $80,000.00 per year and equals $800,000.00. The total amount of interest due Caro & Graifman pursuant to the mortgage agreement is $813,072.00. The total amount due Caro & Graifman exclusive of counsel fees pursuant to the mortgage is $1,613,072.00. Interest is continuing to accrue as of January 2008.

X.    CARO & GRAIFMAN IS ENTITLED TO COUNSEL FEES PURSUANT TO THE TERMS OF THE MORTGAGE AGREEMENT

Connecticut and New York law permit enforcement of contractual provisions in mortgages for payment of counsel fees and costs by a defaulting mortgagee. Kingsland Group, Inc. v. JB Satcin Realty Corp., 16 A.D.3d 380, 792 N.Y.S.2d 506, 508-509 (2d Dept. 2005); NE Leasing LLC v. Palletta, 89 Conn.App. 766, 877 A.2d 840 (Conn.App. 2005); Atlantic Mortgage & Investment Corp. v. Stephens Corp., 86 Conn.App. 126, 860 A.2d 751, 758-759 (Conn.App. 2004). Counsel fees are subject to a separate application which must be filed forthwith prior to judgment. In the motion, Caro & Graifman will claim 435.3

hours of counsel fees for the services of Ronald M. Gutwirth, Esq. at the rate of $250.00 an hour for a total rate of $108,825.00. Itemized disbursements will be claimed in the amount of $1,259.67. As the contract clearly provides for counsel fees which are secured by the mortgage and the services are reasonable, Caro & Graifman's claim for counsel fees is required.

XI.  THE COURT HAS JURISDICTION OVER CARO & GRAIFMAN'S COUNTERCLAIM BECAUSE THE ISSUES INVOLVED IN THE COUNTERCLAIM ARE IDENTICAL TO THE ISSUES INVOLVED IN NCCI'S FRAUDULENT CONVEYANCE ACTION

A federal court has ancillary jurisdiction over attorney fee claims which are related to the issues in an affirmative claim. Joseph Brenner Assoc., Inc. v. Starmaker Entertainment Inc., 82 F.3d 55, 58-59 (2d Cir. 1996); Cluett, Peabody & Co. v. CPC Acquisition Co., 863 F.2d 251 (2d Cir. 1988); National Equipment Rental Ltd. v. Mercury Typesetting Co., 323 F.2d 784 (2d Cir. 1963). The issue in NCCI's affirmative claim and Caro & Graifman's counterclaim is identical because a factual and legal finding regarding whether Caro & Graifman's mortgage is bona fide consideration for an antecedent debt requires a determination about the reasonableness and legitimacy of Caro & Graifman's legal fees charged to Joseph Gall and his affiliated companies. As the issue regarding Caro & Graifman's 'legal fees has been before the within court and the New York State courts for approximately eight years, the principle of judicial economy requires the court to decide the issue. Moreover, since Chase Caro's ability to make restitution in an unrelated

92

criminal case would be affected by the court's refusal to exercise ancillary jurisdiction, the refusal to exercise ancillary jurisdiction would cause extreme hardship to Mr. Caro, the sole principal in Caro & Graifman who has an interest in the fee award. NCCI can afford additional delay in the within case while Mr. Caro cannot.

NCCI has always insisted that the United States District Court for the District of Connecticut is the appropriate forum for resolving the legitimacy of Caro & Graifman's fees. As a result of NCCI's contention that United States District Court of Connecticut is the appropriate forum for resolving Caro & Graifman's fee dispute, NCCI successfully moved to stay the New York State Supreme Court action and successfully opposed Caro & Graifman's motion to dismiss the within action based on the pendency of the New York State Supreme Court action. It is axiomatic under New York and Connecticut law that the doctrine of judicial estoppel. Maas v. Cornell University, 94 N.Y.2d 87, 721 N.E.2d 966 (1999) (tenured professor who filed plenary action against university for failure to observe procedures and breach of contract could not seek conversion of his action to Article 78 proceeding when he successfully resisted university's motion to convert the action into an Article 78 proceeding); Leonia Bank v. Kouri, 3A.D.3d 213, 772 N.Y.S.2d 251, 255-256 (A.D. 1 Dept. 2004) (debtor who argued that she had no ownership interest in property but was a mortgagee in

93

property could not allege that she had an ownership interest in property in a subsequent lawsuit filed by judgment creditor); <u>Black v. White & Case</u>, 288 A.D.2d 407, 721 N.Y.S.2d 44, 45-46 (A.D. 1 Dept. 2001) (plaintiff who obtained divorce decree on the basis of separation agreement prepared by law firm barred by judicial estoppel from suing law firm for malpractice based on preparation of the separation agreement); <u>All Terrain Properties, Inc. v. Hoy</u>, 265 A.D. 2d 87, 705 N.Y.S.2d 350, (A.D. 1 Dept. 2000) (President of corporation which obtained forbearance on note until default of a recasted note barred by judicial estoppel from objecting to default judgment based on his signing of the notes in an action to enforce personal guarantee of the note). <u>Neiman v. Yale University</u>, 270 Conn. 244, 851 A.2d 1165, 1170 (2004) (university professor judicially estopped from asserting simultaneously that employment handbook was and was not a contract). Plaintiff's objection to the court's jurisdiction over Caro & Graifman's counterclaim was first advanced after summations in the within case. Judicial estoppel and judicial economy bar plaintiff from cherry picking the United States District as the jurisdiction to rule on its affirmative claim and denying the court's jurisdiction  to rule on the validity of a related counterclaim.

CONCLUSION

Based on the foregoing findings of fact and conclusions of law, the court should (1) dismiss plaintiff's complaint asserting that the mortgage of Caro & Graifman is a fraudulent conveyance; (2) award judgment in favor of Caro & Graifman in the amount of $1,613,072.00 and order the release of said monies from the interest bearing account of Carolyn R. Naranjo, Esq.; (3) award counsel fees and costs in the amount of $108,825.00 and disbursements in the amount of $1,259.67 and award release of said monies from the interest bearing account of Carolyn r. Naranjo, Esq.

Respectfully submitted,

/s/ Ronald M. Gutwirth

RONALD M. GUTWIRTH
Attorney for Defendant
Counterclaimant Caro &
Associates

Dated:    January 4, 2008

95